IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS MARTIN on behalf of himself and others similarly situated,<br>　　Plaintiff,<br>　　　　v.<br><br>CCH, INCORPORATED,<br>　　Defendant. | )<br>)　1:10-cv-3494<br>)　Judge Dow<br>)<br>)　Magistrate Judge Ashman<br>)<br>)<br>)　JURY DEMANDED |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE
SURREPLY IN OPPOSITION TO CCH'S
<u>MOTION TO DISMISS</u>**

Plaintiff respectfully requests that this Court grant plaintiff leave to file the incorporated surreply in further opposition to CCH's motion to dismiss, because CCH's reply brief raises new arguments, and misstates and/or miscomprehends plaintiff's theory.

　　1.　　<u>Email vs. Website Visit</u>.  CCH incorrectly argues in its reply brief that material differences exist between accessing its website, and opening its unsolicited advertising emails, because cookies are treated differently in these two scenarios.  This is not true.  Once a recipient unknowingly opens a CCH email, he is *automatically and unknowingly taken to CCH's website*.  The special jpeg images in CCH's emails download from CCH's website.  The embedded code for one such image is:

**http://www.cchsfs.com/email/images/sfs_temp_banner_2.jpg**

This secret visit to CCH's website is the invasion of privacy of which this suit complains, and permits information regarding one's location and actions to be gathered places a cookie on the hard drive of the recipient, which also permits CCH to monitor the recipient's future actions. The subversive nature of CCH's information gathering means that plaintiff and the class visited

1

CCH's website without knowing it.  Had the subject line not omitted this powerful purpose of the emails, the recipients would have been able to make an informed choice.

2. Indeed, such secret website/email information gathering is distinct from profiling arising out of typical "click" visits to CCH's website because web surfers ostensibly know that they are visiting CCH's website; email recipients like plaintiff have no idea.

3. <u>Misleading Email Analogies</u>:  CCH also argues that its use of tracking devices in its emails is as benign as sending registered mail, and is akin to plaintiff's counsel requesting a return receipt in an email as part of this litigation.  This argument turns the CAN SPAM ACT and IEMA prohibitions on their head.

4. Emails between plaintiff's counsel and defense counsel are regulated by neither the CAN SPAM ACT nor the IEMA.  Unlike CCH's emails, they are not unsolicited advertisements, and plaintiff and defense counsel have an ongoing professional relationship.  Indeed, counsel's relationship sometimes even becomes decidedly personal when exchanging pleasantries about each others' families or the weather in the federal courthouse elevator or on the telephone.

5. Further, plaintiff's counsel has no pecuniary or online profiling interest in any information obtained through return receipts, like CCH does.  Nor are email return receipt requests surreptitious: the recipient has informed control over whether she wants to provide the requested information.

6. Although they may provide a sender like CCH with similar information similar to that which it learns through emails like Exhibits A and B, "snail mail" return receipts, such as certified mail, the recipient has knowledge that there will be a return receipt, and there is less probability of wide-spread abuse because certified mail costs several dollars per item.  Once

2

startup and infrastructure costs have been paid, email and internet information harvesting is free. This is probably why sail mail is not regulated like the CAN SPAM ACT and IEMA regulate email. Regardless, snail mail and non-advertising emails are not at issue in this case. The bottom line is that telling a half-truth in the descriptive subject line of an unsolicited advertising email is deceptive and misleading, and violates the IEMA.

7. <u>Heightened Pleading Standard</u>. Ignoring multiple references to deceptive and misleading allegations in the Amended Complaint, CCH also argues that plaintiff's opposition brief "for the first time" makes allegations of fraud, and that Fed.R.Civ.P. 9(b) requires dismissal. Such an argument raised for the first time in a reply brief is improper, and should be disregarded.

8. However, if the Court finds it appropriate to consider this argument, the Amended Complaint is compliant with Rule 9(b). As to the IEMA count, the Amended Complaint alleges <u>who</u> and <u>where</u> at ¶¶5, 6 & 23; <u>what</u> and <u>how</u> at ¶¶ 7-12, 18-20, Ex. A & B; <u>when</u> at ¶ 7, 8. Plaintiff attaches the allegedly illegal emails. Ex. A & B. If the Court finds it wanting, plaintiff requests leave to replead.

9. <u>Damages</u>. Finally, CCH argues (again for the first time) that plaintiff has not "shown any damages." Such an argument is improper in a reply brief, and should be disregarded. There is no requirement that a plaintiff "show" damages in order to state a claim for relief in federal court. And if there were, plaintiff has alleged at least five types of damages in paragraph 18 of the complaint, the most important of which is a material invasion of privacy, which was explained in detail in plaintiff's opposition brief.

10. The motion to dismiss should be denied, and the discovery stay should be lifted.

3

WHEREFORE, plaintiff respectfully requests that this Court grant plaintiff leave to file the incorporated surreply in further opposition to CCH's motion to dismiss, because CCH's reply brief misstates and/or miscomprehends plaintiff's theory.

                                                 Respectfully submitted,

                                                 <u>Alexander H. Burke</u>
                                                 Counsel for plaintiff

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com