IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS MARTIN on behalf of himself and others similarly situated,<br>    Plaintiff,<br><br>    v.<br><br>CCH, INCORPORATED,<br>    Defendant. | )<br>)  1:10-cv-3494<br>)<br>)<br>)  Judge Dow<br>)<br>)  Magistrate Judge Ashman<br>)<br>)  JURY DEMANDED<br>) |

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff respectfully requests that this Court compel defendant to properly respond to discovery in this case. In support of this motion, plaintiff states:

Defendant CCH, Incorporated ("CCH") is engaged in an aggressive advertising campaign directed at plaintiff and others (with whom it does not have a previous relationship) to sell its tax preparation software and other products. This lawsuit challenges two unsolicited advertising emails CCH sent pursuant to the Illinois Electronic Mail Act, 815 ILCS 511/1 et seq., Exhibits A and B, and an unsolicited autodialed and prerecorded telephone call to plaintiff's cellular telephone pursuant to the Telephone Consumer Protection Act.

There is apparently a problem with CCH's electronic records and/or recordkeeping, because its discovery responses deny knowledge as to whether it ever called anyone at all with its in-house autodialer, and has refused to provide discovery as to even the most basic information regarding the equipment's use. In this day and age of electronically stored information ("ESI"), the notion that a company using sophisticated telephone equipment has no records or data concerning that equipment seems unlikely.

Indeed, CCH has refused to provide any discovery materials or information in this case at all, except to disclose Brian Holbrook, the "Director of Operations."[1] The story began to unfold through Rule 37 discovery talks. Despite CCH's non-responses, <u>Exhibit C</u>, defense counsel has indicated during several meet and confer talks the process by which autodialed calling campaigns works is as follows: a sales agent decides that a calling campaign is appropriate, and designs a "sequence" or query from the company's database. Counsel has explained that the sales agent then walks over to Mr. Holbrook and orally describes the group of persons the sales agent wants in the calling campaign. Mr. Holbrook then programs the dialer, and the dialer makes the appropriate telephone calls.

The (A) list of persons CCH called using its dialer is only the beginning of the discovery that plaintiff needs to prove his case. Additionally, plaintiff has requested documents and information concerning (B) the affirmative defenses CCH has raised or plans to raise, (C) how its dialer and prerecorded message system works (D) information regarding the plaintiff, and (E) materials bearing on willfulness and (F) other background information regarding the defendant, such as its organizational structure and insurance policies and documents.

This motion is organized so each section below corresponds to one of the above categories, and identifies the requests that fall within the categories, and explains why the materials and information should be produced.

**I. The Parties Met and Conferred, and Have Reached an Impasse.**

Plaintiff has satisfied his Fed.R.Civ.P. 37 and Local Rule 37.2 "meet and confer" duties. Because defendant claims it has very limited records, plaintiff notes that he included a document preservation demand in the complaint, which was served upon CCH on June 16, 2010. Plaintiff received CCH's

---

[1] Of course, although requested, discovery responses do not tell plaintiff that Mr. Holbrook is in charge of the dialer--defense counsel opted to notify plaintiff of this on the telephone during Rule 37 talks, instead.

Fed.R.Civ.P. 26(a)(1) disclosures on about September 7, 2010. The disclosures did not include any insurance policy. Plaintiff sent the email attached as <u>Exhibit D</u>, to which CCH never responded.

Plaintiff issued his first discovery requests discovery on July 26, 2010. Defendant asked for an extension, with the justification that it was too difficult to cull responses for such voluminous requests within thirty days, and the parties agreed to a 30 day extension of time for defendant to respond. Defendant responded on September 29, 2010. <u>Exhibit C</u>.

The parties then began the arduous process of setting a date for a discovery conference. Defendant never seemed to be available to talk about the case, and refused to meet in-person, as plaintiff repeatedly suggested. The parties had a telephonic discovery conference on October 19 and 22, 2010, each of which lasted over an hour. CCH has taken the position that it does not need to attempt to respond to requests it sees as overly burdensome. As a follow-up to the conference, as requested by CCH, plaintiff sent the email attached as <u>Exhibit E</u>. CCH agreed to provide supplemental responses to some, but not all, of the requests, but indicated that it could not commit to a date-certain for such responses, because Mr. Holbrook was "unavailable." Defense counsel would not tell plaintiff's counsel when Mr. Holbrook would be available.

Plaintiff thus suggested at the end of the October 22, 2010, conference that the parties talk on the telephone on October 28, 2010 at 2:00 pm, to discuss the status of defendant's revised responses. Defense counsel refused to even schedule a follow-up telephone conference. Plaintiff called October 28, 2010 at 2:00 pm, and did not receive a response phone call until approximately 7:00 pm, Friday October 29, 2010, when counsel indicated that CCH would be producing responses. More than two weeks later, no supplemental responses have been produced.

Defendant has also requested a protective order be entered before it produces any documents at all. Plaintiff objected and asked why a protective order was needed, and defendant did not provide

3

a substantive response. Nevertheless, plaintiff worked diligently with defense counsel to reach agreement about a protective order, so that the documents could be produced. Plaintiff's counsel believes the parties have reached agreement as to the protective order attached as Exhibit H, except that CCH objects to the statement in paragraph 2 that "Nothing herein shall expand or restrict the scope of materials that may be designated as confidential pursuant to Fed.R.Civ.P. 26(c), and applicable caselaw." Plaintiff maintains that no protective order should be entered. However, if the Court finds that a protective order is appropriate, then the form attached as <u>Exhibit F</u> should be entered. As is evident from the above, defendant has done everything in its power to prevent plaintiff from obtaining even the most basic information about its dialer practices. Plaintiff therefore moves to compel.

**II. Discovery Standard Generally**

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Rules have broadened the scope of discovery to "any matter, not privileged, that is relevant to the claim or defense of any party…. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

"[T]he discovery-deposition provisions of the Federal Rules, were intended to insure 'proper litigation' by making the trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963) (internal citations and quotations omitted). Furthermore, complete interrogatory responses may help the parties avoid unnecessary depositions and further cost to the parties. *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 307-308 (S.D.N.Y. 1982).

4

Compelling production of materials sought promotes justice and quick resolution a matter. *Yancey v. Hooten*, 180 F.R.D. 203 (D.Conn. 1998) (compelling discovery in FDCPA case). *Lucas v. GC Services*, 226 F.R.D. 328 (N.D.Ind. 2004) (FDCPA 1692g action) (sister case lost merits on appeal) compelling all discovery requests as sanction. "The defendants do not get to determine unilaterally the scope and timing of discovery." *Lucas* at 331. Compelling production of the materials plaintiff seeks herein will promote swift and just resolution of this case.

### III. Discovery Sought and Why

#### A. Class Information and List

The first category of information plaintiff seeks is a class list and records of calls, or information that will lead to creation of such. Such requests are appropriate at this juncture in the case because it is well-established that a plaintiff may take discovery on class certification issues, including the class list, before a class has been certified. 2003 Advisory committee note to Fed.R.Civ.P. 23(c)(1)(A); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890 (7th Cir. 1981); *Accord, Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571-72 (2d Cir. 1982); *Dillon v. Bay City Construction Co., Inc.*, 512 F.2d at 804 (4th Cir. 1979); *Pittman v. E.I. duPont de Nemours & Co., Inc.*, 552 F.2d 149, 150 (5th Cir. 1977), *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 214 (N.D.Ill. 2002) (FDCPA Case); *Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 341( N.D.Ill. 2001) (FDCPA case); *Nash v. City of Oakwood*, 90 F.R.D. 633, 636-637 (S.D. Ohio 1981); *National Org. for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980); also see *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, n.13 (1978).

Furthermore, a party may not use difficulties in organizing its records to prevent the adverse party from properly litigating its case. Kozlowski v. Sears Roebuck & Co., 73 F.R.D. 73, 76 (D.Mass. 1976)("To allow a defendant whose business generates massive records to frustrate discovery by

creating an inadequate filling system [here, by not creating an adequate indexing system], and then claiming undue burden, would defeat the purposes of the discovery rules.").

The following requests relate to these topics:

**Int. 3.      Identify the intended recipient, all communications (attempted and completed) to and from this person, and from what sources you obtained the personal information (including email and phone number) for the following persons:  All persons with addresses in Illinois, Indiana or Wisconsin, who defendant or some person on its behalf called on their cell phone using an automatic telephone dialing system and/or prerecorded voice message, where the recipient had not provided CCH its prior express consent to receive such, where the call was made at any time between and including June 8, 2006 to June 8, 2010.**

**Doc. Req. 37.      Your entire file, including any documents or data that show consent or lack thereof to receive calls made with your Predictive Dialer, Prerecorded Message, automatic telephone dialing system or using artificial or prerecorded voice calls on their cellular telephone, or advertising emails, for the following sets of persons:**
**B:  All persons with addresses in Illinois, Indiana or Wisconsin, who defendant or some person on its behalf called on their cell phone using an automatic telephone dialing system and/or prerecorded voice message, where the recipient had not provided CCH its prior express consent to receive such, where the call was made at any time between and including June 8, 2006 to June 8, 2010.**

**Doc Req. 12.      All records of outgoing calls made with either an automatic dialing system or prerecorded or artificial voice since April 28, 2005.**

Because defendant has indicated that it has "no idea" who it called, when, plaintiff expects that ESI will be important in formulating the class list in this case.  Plaintiff requests that the Court order CCH to work to produce as complete responses as possible to these requests, and cooperate with plaintiff in working to obtain the most accurate list of phone numbers called practicable and possible.

Plaintiff has spoken with several potential ESI experts, none of whom feel comfortable being retained until they know the nature of defednant's dialer, database and telephone

6

equipment, hardware and software. As explained below, CCH has refused to provide even this basic information.

Plaintiff has formally requested a detailed description of the efforts that defendant has made to obtain this information, and CCH has not indicated one way or the other whether it would do so, other than a cursory, telephonic description, with no technical detail. Plaintiff also requests that the Court compel defendant to explain these efforts, why it believes them to be adequate, and reveal all results that have been returned as a result of the efforts.

### B. Affirmative Defenses

CCH has asserted six affirmative defenses, including one that appears to say that CCH had plaintiff and the class members' "prior express consent" to use the proscribed equipment. See Answer [Docket Item 19] at pp. 11-12, and defense 3. Plaintiff has requested that CCH disclose the information and documents that relate to these affirmative defenses:

> **Int. 4.** **If you contend that you had prior express consent to call any person responsive to the previous interrogatory using an automatic telephone dialing system or prerecorded or artificial voice message, explain why, and identify all documents, facts and law that support or refute this contention for each person specifically. Cite to bates numbers. If you are not in custody, possession or control of any responsive materials or information, identify all such materials and their believed location and custodian.**
>
> **Int. 11.** **Identify all facts and law you contend support any defense or affirmative defense you have raised or will raise in this case, as to plaintiff and any putative class member.**
>
> > **A complete answer will at least: explain the defense, cite the facts the support the defense (including citation to bates number, or descriptions of the location and custodian for documents that are not produced), and identify each person(s) with information regarding the defense and state what information each person has.**
>
> **Doc. Req. 7.** **All documents concern any person whose cell phone you called using your Predictive Dialer and/or Prerecorded Message (including all documents that relate to, show or refute any claim of prior express consent) for persons with**

7

>**addresses in Illinois, Indiana or Wisconsin, who you or some person on your behalf called using an automatic telephone dialing system and/or prerecorded voice message, where the recipient had not provided you his prior express consent to receive such, where the call was made at any time between and including June 8, 2006 to June 8, 2010.**
>
>>**A reminder: for all requests herein: If you contend that providing a complete response is impracticable or impossible, please provide the most complete response as possible, explain what components or responsive information or documents is missing, and why you contend production of those materials is impossible or impracticable.**
>
>**Doc. Req. 38.        All documents that support or refute any defense you have raised or intend to raise in this case.[2]**

CCH objected to each of these requests, contending that it does not have to produce such. CCH is wrong. Fed.R.Civ.P. 26(b)(1) provides:

>Unless otherwise limited by court order, the scope of discovery is as follows:
>
>Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or **defense** -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. [Emphasis added.]

All courts to have considered this issue have rejected defendant's position, and have found that the probative value of this information exceeds any burden upon the defendant in obtaining such. *Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500 (N.D.Ill. Dec. 16, 2009)(Nolan, J.) Fed.R.Civ.P. 72 objections overruled in toto, 2010 WL 308975 (N.D.Ill. Jan 13, 2010)(Guzman, J.); *Fike v. The Bureaus, Inc.*, 1:09-cv-2558, transcript of proceedings (Nov. 11, 2009)(Keys, J.) Appendix 1; *Balbarin v. North Star Capital Acquisition, LLC*, 1:10-cv-1846 (Nov. 9, 2010)(Cox, J.) Appendix 2.

Although it asked for a stay of discovery regarding the IEMA claim, CCH has not requested a stay or protective order as to requests asking about its affirmative defenses, and has not made any

---

[2] This list is not exhaustive. Other requests that relate to defendant's affirmative defenses include interrogatory 10, and document requests 8, 10, 11 and 35

8

attempt to show how burdensome responding might be. Instead, it has refused to provide information.

Defense counsel indicated during Rule 37 talks that CCH's affirmative defense as to plaintiff is that plaintiff provided CCH "prior express consent" to receive autodialed and prerecorded telephone calls on his cell phone because CCH obtained plaintiff's cell phone number from the Internal Revenue Service. While plaintiff contests that merits of this defense, he, and the class, are entitled to know what documents and information relate to it.

The same goes for CCH's other five affirmative defenses, most of which do not make sense. For example, CCH states in affirmative defense 1 that any violation was the result of some third party's actions or omissions. However, CCH's response to document request number 30, asking for "documents … concerning any third party involved with the making of telephone calls using Predictive Dialers and/or Prerecorded Messages" is "none." How could this be? Major corporations do not operate on a "wink and a handshake" as this discovery response suggests. And who is this alleged third party? Third party involvement and liability having to do with a sophisticated computer system like a dialer and prerecorded message leaves at least a data trail, and more likely a contract. After all, a claim for contribution is not available for federal statutory claims unless there is some contractual indemnity. *Shurland v. Bacci Cafe & Pizzeria on Ogden Inc.*, 259 F.R.D. 151 (N.D.Ill. 2009).

Defendant which has already used up nearly one-third of the discovery period stonewalling, should be compelled to produce full and final responses to each of these requests.

**C. Information Concerning CCH's Equipment and Procedures.**

Plaintiff issued several requests that were aimed at learning more about CCH's dialer and prerecorded messages, and the practices and procedures surrounding such. These requests include:

**Int. 5.** Identify and explain all written and unwritten policies, practices and procedures concerning use of Predictive Dialers and Prerecorded Messages, going back to when you began considering the use of such, and ending on June 9, 2010.

**Doc. Req. 5.** All documents evincing, or relating to, any policies, practices or procedures concerning who you, or any person on your behalf, calls or called using a Predictive Dialer or Prerecorded Message.

**Doc Req. 3.** A copy of the recording for any telephone call to 630-479-3271, and any for the call to any person responsive to interrogatory 3.

**Doc. Req. 13.** All contracts and communications with any third party concerning the making of autodialed calls or prerecorded messages, or the sending of advertising emails to Illinois residents.

**Doc. Req. 15.** All documents, contracts, emails or agreements concerning use of your Predictive Dialer or Prerecorded Message.

**Doc. Req. 17.** Please do a manual and computer search (irrespective of date) for all documents (including but not limited to: emails memos, communications or things) relating to TCPA compliance without regard to timeframe.

**Doc. Req. 18.** All manuals, communications and other documents relating to telephony hardware, software and other telephone equipment.

**Doc. Req. 19.** All manuals, communications and other documents relating to telephony hardware, software and other telephone equipment.

**Doc Req. 22.** All invoices for telephony equipment or software, including but not limited to Predictive Dialers, Prerecorded Messages, automatic dialing systems and artificial or prerecorded voice messages.

**Doc. Req. 20.** All studies, reports, statistics or other data compilations you have access to that concern the use of your Predictive Dialer or Prerecorded Messages.

During discovery talks, CCH's lawyers told plaintiff that it did not understand what plaintiff was asking for in these requests. Although plaintiff explained to defense counsel that it would be hard to make these requests any simpler, he tried to explain in more detail.

Knowing what personnel, hardware, equipment and software are involved in the autodialing and prerecorded message process is essential to this case. This is particularly true

here, because defendant has claimed that it does not know who it called, when, using its dialer. For example, plaintiff indicated that identification of the defendant's dialer/database and other equipment, along with a description of how these interacted would be responsive to interrogatory 5. Although it promised to supplement, CCH never has.

### D. Information Concerning Plaintiff.

Although the crux of its "consent" argument likely has something to do with some relationship it believes it has with plaintiff, CCH has apparently taken the position that it does not have to provide any information it has concerning the plaintiff. It is reasonable and appropriate for a plaintiff to ask the other party what information and documents it has concerning the plaintiff. This is information that Martin would have asked for regardless of whether this case was a class action and regardless of whether he had any claims at all under the IEMA.

The requests relating to plaintiff include:

**Doc. Req. 1.** **All documents, records, data, recordings and other materials relating to plaintiff, or which are indexed, filed or retrievable under plaintiff's name or any number, symbol, designation or code (such as an account number or Social Security number) assigned to plaintiff, the phone number 630-479-3271, or the email address n.m.martin@hotmail.com.**

**Doc. Req. 2.** **All documents transmitted to any third party as to any account or other designation associated with plaintiff, the phone number 630-479-3271, or the email address n.m.martin@hotmail.com. Please include the "form" for any letter, email or document which you sent but for which you do not have a precise copy.**

CCH has indicated that it would produce certain materials responsive to these requests if a protective order, but has not been reasonable in negotiating the protective order, and has not explained why such information is a trade secret, and should be subject to confidentiality. Plaintiff moves to compel complete responses to these requests.

11

**E. Materials Bearing on Willfulness**

Plaintiff has asked for treble damages for himself and the class pursuant to 47 U.S.C. §227(b)(3). Plaintiff's position is that such damages are governed by the TCPA, which defines "willful" as, "the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation…" 47 U.S.C. § 312(f)(1); *Sengenberger v. CCS, Inc.*, 2010 WL 1791270 (N.D.Ill. May 5, 2010); *Baltimore-Washington Telephone Co. v. Hot Leads Co., LLC*, 584 F.Supp.2d 736, fn3. (D.Md. 2008); *Charvat v. Ryan*, 116 Ohio St. 3d 394, 399, 879 N.E.2d 765, 771 (Ohio Ct. App. 2007)(noting the "low threshold" for proving willfulness); *Clark v. Red Rose, Inc.*, 2004 WL 1146679, at *2 (Ohio Mun. Trial Ct. May 3, 2004) (ordering maximum TCPA damages). Plaintiff expects that defendant will argue that its actions were not willful, and that some other, more difficult standard should apply.

Of course, information regarding a party's knowledge of the law is is relevant to a determination of willfulness in most cases. *Claffey v. River Oaks Hyundai, Inc.*, 494 F.Supp.2d 976, 978-79 (N.D.Ill. 2007) ("Evidence of a party's actions and intentions is unquestionably relevant in determining whether that standard is met in a particular case.") Absent some stipulation that the easier standard identified above applies, or a court order in this case holding such, plaintiff must prepare to prove a more difficult, knowing violation standard. Plaintiff issued the following requests regarding willfulness:

> **Doc. Req. 23.** A copy of the complaint for any lawsuit against you for violation of the TCPA or any law that governs the sending of advertising emails.
>
> **Doc. Req. 24.** A copy of any written complaint and your response (formal or informal) you or your attorneys have ever received that complains about violations of the TCPA or laws that govern the sending of advertising emails, including but not

**limited to calls using your Predictive Dialer and Prerecorded Messages, without regard to date.**

**Doc. Req. 25.    All documents from any source that concern the legality or propriety of making telephone calls to debtors using your Predictive Dialer, Prerecorded Message, an autodialer or a prerecorded or artificial voice.**

**Doc. Req. 26.    All documents (irrespective of date) that discuss defendant's compliance or lack of compliance with the Telephone Consumer Protection Act.**

**Doc. Req. 31.    All documents concerning or relating to any effort, ever, by you to determine a process, policy or practice whereby you could use your Predictive Dialer or Prerecorded Message, and still comply with the TCPA.**

**Doc. Req. 32.    All documents concerning or relating to any effort, ever, by you to determine a process, policy or practice whereby you could send advertising emails and still comply with state of federal laws that govern such, including but not limited to the CAN SPAM ACT, and the IEMA.**

**Doc. Req. 35.    All documents relating to the creation or maintenance by defendant of policies, practices or procedures adapted to avoid using your Predictive Dialer or Prerecorded Messages in calling persons who did not consent, or revoked consent, to be called on their cellular telephones, without regard to date.**

**Doc. Req. 39.    A copy of all publications, white papers, seminars, updates you have published or issued since January 1, 1990 that concern compliance with marketing laws, the TCPA or email marketing laws. For example, the publication that is mentioned in the press release on CCH.com, "CCH Offers Comprehensive, New Privacy Law Resource: CCH Privacy Law in Marketing" would be responsive, as would the 2000 version of this, or related documents, and all updates thereto.**

CCH objected to each of these as not relevant, burdensome and vague, but agreed to go back and reexamine numbers 25 and 26. This has not happened. These requests are fully reasonable, and plaintiff requests that the Court compel defendant to provide full responses.

### F.    Other Documents and Information.

Some discovery requests do not fall within the categories above. For example, plaintiff requested a copy of defendant's insurance policy and any documents concerning whether this

13

case was covered. Defendant did not provide this information in its Fed.R.Civ.P. 26(a)(1) disclosures, and has refused to provide it subsequently too. See Doc. Req. 38.

Similarly, plaintiff asked for organizationally charts of the defendant, both of its corporate structure, and of its personnel, in order to better understand the leadership hierarchy and how CCH is organized. Doc. Req. 27-28. Defendant has improperly refused, stating that production of such documents is irrelevant. Plaintiff moves to compel.

Plaintiff issued interrogatory 7 asking defendant to identify the location of any information or materials that are responsive to these requests, but have not been produced. Interrogatory 7 is thus akin to a "super Rule 26(a)(1) disclosure, which asks for the defendant to specifically identify responsive materials, If the documents or information is being withheld because of objections, the interrogatory would include these materials, too, and would expect defendant to produce a document look like a privilege log, so that plaintiff can understand the "universe" of information or documents, and issue third party subpoenas, if necessary.

Finally, despite having been asked for such several times, defendant has not produced any privilege log at all, which results in waiver of privilege. Fed.R.Civ.P. 26(b)(5), *Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500 (N.D.Ill. Dec. 16, 2009). *Ner-Tamid Congregation of North Town v. Krivoruchko*, 2009 WL 152587, 08 C 1261 (N.D.Ill. Jan. 22, 2009); *Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D.Ill. 2008). The attorney-client privilege has been waived, so all responsive documents and information should be produced, without regard to privilege.

**CONCLUSION**

WHEREFORE, plaintiff respectfully requests that this Court compel defendant to respond to discovery.

Respectfully submitted,

/s/ Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com