# Exhibit A

███████

| | |
|---|---|
| **From:** | CCH Small Firm Services [smallfirmservices@cchsfs.com] |
| **Sent:** | Tuesday, December 29, 2009 8:56 PM |
| **To:** | ████████████████████ |
| **Subject:** | Buy now, pay Feb. 15 |

To ensure delivery to your inbox, please add smallfirmservices@cchsfs.com to your address book.





www.cchsfs.com

Dear Tax Professional,

Still undecided on your tax software for this season? We can help.

Buy any **ATX™** or **TaxWise®** tax package by Dec. 31 and:

- **Don't pay until Feb. 15, 2010.** You'll have client fees coming in by then. All we ask is that you pay shipping, handling and state taxes, if applicable, when you order.

- **If you're not completely satisfied, return your software by Jan. 20, 2010 and pay nothing more** (and we'll refund your state tax, if you paid it).

- **You'll know all of your costs up front.** There are no extra or hidden fees. Our tax programs differ only in the number and types of forms they contain. But every package includes client organizers, customizable client letters and features which other companies don't provide or include only at an extra charge.

Which of our programs should you consider? That depends on your practice. Unlike other software companies, we don't believe that one size fits all.

**ATX:** With more than 10,000 federal, state and local forms, ATX is tailored to the small professional practice with a wide range of clients who have personal and business interests in

Call us today at **1-800-743-5480**. Our software consultants are available from 8:30 a.m. to 5:30 p.m. Eastern time, Monday through Friday.

**We'll get you up and running quickly.** Most of our tax packages include **FREE Orientation** to help you convert your client data, set up your software and get off to a smooth start.

**Here's what our customers say:**

"I selected ATX for the price and the fact that it could do so much."
**-- Howard Lancaster, CPA**

Click here for more customer comments about ATX.

"[TaxWise is] very accurate, very easy to use, easy to teach people how to use it.."
**-- Raul Encarnacion**

Click here for more customer comments about TaxWise.

many states. ATX offers the best value available in the industry today.

**TaxWise:** For more than 24 years, TaxWise has been the unchallenged leader for high-volume tax businesses, particularly those with multiple offices offering bank products. And TaxWise is the only professional tax program to both display and print more than 50 federal tax forms in Spanish, and include Spanish context-sensitive help as well.

Let us help you decide. Call **1-800-743-5480** today and talk with one of our expert software consultants about the product that's best for your practice. (We've even been known to recommend competitors' products when ours don't fit.)

Please give us a call today so we can help you get one more important decision out of the way this year.

Sincerely,

Rusty Tillman
Vice President, Sales
CCH Small Firm Services

PS – If you offer bank products, rest assured that we will be working with all four RAL banks – SBBT, Chase, Republic and River City. So you can select the bank you already know rather than working with someone new.

Shipping and handling and applicable sales tax are due at time of order. Shipping and handling fees are non-refundable. Other limitations may apply. Click here for full details.

© 2009 CCH Small Firm Services. All rights reserved.

This email address is not monitored on a regular basis. Please contact customer support, sales, or renewals departments with your respective inquiries. If you do not wish to receive unsolicited marketing messages from CCH Small Firm Services, please click "Unsubscribe".

CCH Small Firm Services
6 Mathis Drive NW
Rome, Georgia 30165 USA

# Exhibit B

**From:** CCH Small Firm Services [smallfirmservices@cchsfs.com]
**Sent:** Thursday, January 07, 2010 5:59 PM
**To:**
**Subject:** Offer extended - Buy now, pay Feb. 15

To ensure delivery to your inbox, please add smallfirmservices@cchsfs.com to your address book.





Call us today at **1-800-743-5480**. Our software consultants are available from 8:30 a.m. to 5:30 p.m. Eastern time, Monday through Friday.

**Here's what our customers say:**

"I selected ATX for the price and the fact that it could do so much."
**-- Howard Lancaster, CPA**

Click here for more customer comments about ATX.

"TaxWise is very accurate, very easy to use, and easy to teach people how to use…"
**-- Raul Encarnacion**

Click here for more customer comments about TaxWise.

www.cchsfs.com

Dear Tax Professional,

Still undecided on your tax software for this season? We can help.

Buy any **ATX™** or **TaxWise®** tax package by Jan. 15 and:

- **Don't pay until Feb. 15, 2010.** You'll have client fees coming in by then. All we ask is that you pay shipping, handling and state taxes, if applicable, when you order.

- **If you're not completely satisfied, return your software by Feb. 1, 2010 and pay nothing more** (and we'll refund your state tax, if you paid it).

- **You'll know all of your costs up front.** There are no extra or hidden fees. Our tax programs differ only in the number and types of forms they contain. But every package includes client organizers, customizable client letters and features which other companies don't provide or include only at an extra charge.

Which of our programs should you consider? That depends on your practice. Unlike other software companies, we don't believe that one size fits all.

**ATX:** With more than 10,000 federal, state and local forms, ATX is tailored to the small professional practice with a wide range of clients who have personal and business interests in

many states. ATX offers the best value available in the industry today.

**TaxWise:** For more than 24 years, TaxWise has been the unchallenged leader for high-volume tax businesses, particularly those with multiple offices offering bank products. And TaxWise is the only professional tax program to both display and print more than 50 federal tax forms in Spanish, and include Spanish context-sensitive help as well.

Let us help you decide. Call **1-800-743-5480** today and talk with one of our expert software consultants about the product that's best for your practice. (We've even been known to recommend competitors' products when ours don't fit.)

Please give us a call so we can help you get ready for tax season.

Sincerely,

Rusty Tillman
Vice President, Sales
CCH Small Firm Services

Shipping and handling and applicable sales tax are due at time of order. Shipping and handling fees are non-refundable. Other limitations may apply. Click here for full details.

© 2010 CCH Small Firm Services. All rights reserved.

This email address is not monitored on a regular basis. Please contact customer support, sales, or renewals departments with your respective inquiries. If you do not wish to receive unsolicited marketing messages from CCH Small Firm Services, please click "Unsubscribe".

CCH Small Firm Services
6 Mathis Drive NW
Rome, Georgia 30165 USA

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | 1: 10-cv-3494 |
| v. | ) ) | Judge Dow |
| CCH, INCORPORATED, | ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUESTS FOR ADMISSION

Defendant CCH, Incorporated responds to the following requests for admissions submitted by Plaintiff Nicholas Martin:

1.      CCH, or some party on its behalf, sent an email that looked like Exhibit A to n.m.martin@hotmail.com on December 29, 2009.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

2.      CCH, or some party on its behalf, sent an email that looked like Exhibit A to n.m.martin@hotmail.com on January 7, 2010.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

3.      Exhibit A is an unsolicited marketing message.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

4.      Exhibit B is an unsolicited marketing message.

**RESPONSE**:  Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

5.      Exhibit A is an advertisement.

**RESPONSE**:  Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

6.      Exhibit B is an advertisement.

**RESPONSE**:  Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

7.      You did not have plaintiff's express consent to send Exhibit A to plaintiff.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

8.      You did not have plaintiff's express consent to send Exhibit B to plaintiff.

**RESPONSE**:  Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

9.      Exhibit A, as sent, contained internet devices or code that permits CCH to monitor data concerning receipt of Exhibit A.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

10.    Exhibit B, as sent, contained internet devices or code that permits CCH to monitor data concerning receipt of Exhibit B.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

11.    You called plaintiff at 630-479-3271, on May 31, 2010, using a prerecorded message.

**RESPONSE**: Defendant does not have sufficient information to admit or deny this Request, and therefore denies same.

12.    The call to plaintiff at 630-479-3271 on May 31, 2010, was dialed by an automatic telephone dialing system.

**RESPONSE**: Defendant does not have sufficient information to admit or deny this Request, and therefore denies same.

13.    The call to plaintiff at 630-479-3271 on May 31, 2010, was not dialed by a human being.

**RESPONSE**: Defendant does not have sufficient information to admit or deny this Request, and therefore denies same.

14.    You did not have plaintiff's express consent to send him Exhibit A.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

15.    You did not have plaintiff's express consent to send him Exhibit B.

3

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

      16.    You and plaintiff had no prior existing personal relationship before you sent Exhibit A.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

      17.    You and plaintiff had no prior existing personal relationship before you sent Exhibit B.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

      18.    You and plaintiff had no prior existing personal relationship before you sent Exhibit A.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

      19.    You and plaintiff had no prior existing personal relationship before you sent Exhibit B.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

      20.    You sent Exhibit A to more than 100 Illinois residents with whom you did not have a prior personal or business relationship, where the message was sent between and including June 8, 2010 and June 8, 2007.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

21. You sent Exhibit B to more than 100 Illinois residents with whom you did not have a prior personal or business relationship, where the message was sent between and including June 8, 2010 and June 8, 2007.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

22. You sent advertising emails to more than 1,000 Illinois residents with whom you did not have a prior personal or business relationship, where the message was sent between and including June 8, 2010 and June 8, 2007.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

23. You or someone on your behalf called more than 1,000 persons with Illinois, Indiana or Wisconsin cell phone numbers using a Predictive Dialer between June 8, 2006 and June 8, 2010.

**RESPONSE**: Defendant does not have sufficient information to admit or deny this Request, and therefore denies same.

24. You or someone on your behalf called more than 1,000 persons with Illinois, Indiana or Wisconsin cell phone numbers using a Prerecorded Message between June 8, 2006 and June 8, 2010.

**RESPONSE**: Defendant does not have sufficient information to admit or deny this Request, and therefore denies same.

Date:  September 29, 2010

Respectfully submitted,

David L. Hartsell
Susan E. Groh
MCGUIREWOODS LLP
77 W. Wacker Drive
Suite 4100
Chicago, Illinois 60601
T: (312) 849-8100
F: (312) 849-3690
dhartsell@mcguirewoods.com
sgroh@mcguirewoods.com

## CERTIFICATE OF SERVICE

I, Susan E. Groh, certify that on September 29, 2010, I served this document via email and US Mail delivery to:

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
ABurke@BurkeLawLLC.com

Susan E. Groh

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

NICHOLAS MARTIN, on behalf of himself )
and others similarly situated,            )
                                          )
            Plaintiff,                    )      1: 10-cv-3494
                                          )
        v.                                )      Judge Dow
                                          )
CCH, INCORPORATED,                        )
                                          )
            Defendant.                    )
                                          )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S INTERROGATORIES

Defendant CCH, Incorporated responds to the following interrogatories submitted by

Plaintiff Nicholas Martin:

1.    Identify the intended recipient, all communications to and from this person
(attempted and completed), and from what sources you obtained the personal information (e.g.
name, address, email, if any) for each of the following persons:

> All persons with Illinois addresses who were sent an unsolicited advertising email by or
> on behalf of defendant, where the email was sent at any time between and including June
> 8, 2007 and June 8, 2010, where the recipient and CCH did not have a prior or existing
> business or personal relationship at the time the email(s) were sent.

**ANSWER**:  Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay

Discovery, Defendant does not answer this Interrogatory as it relates to Plaintiff's Illinois

Electronic Mail Act Claim.

2.    If you contend that the sending of any unsolicited advertising email to any person
responsive to the previous interrogatory was privileged or permissible (for example, you contend
there was a prior or existing business or personal relationship or (ii) the email was sent at the
request of or with the express consent of the recipient), please explain why, and identify all
documents, facts and law that support or refute this contention for each person specifically.

Cite to bates numbers. If you are not in custody, possession or control of any responsive
materials or information, identify all such materials and their believed location and custodian.

**ANSWER**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Interrogatory as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

3.     Identify the intended recipient, all communications (attempted and completed) to and from this person, and from what sources you obtained the personal information (including email and phone number) for the following persons:

> All persons with addresses in Illinois, Indiana or Wisconsin, who defendant or some person on its behalf called on their cell phone using an automatic telephone dialing system and/or prerecorded voice message, where the recipient had not provided CCH its prior express consent to receive such, where the call was made at any time between and including June 8, 2006 to June 8, 2010.

**ANSWER**: Defendant specifically objects that this Interrogatory is vague, unduly burdensome, and undefined. Defendant further objects that this Interrogatory is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Interrogatory is premature in that no class has been certified.

4.     If you contend that you had prior express consent to call any person responsive to the previous interrogatory using an automatic telephone dialing system or prerecorded or artificial voice message, explain why, and identify all documents, facts and law that support or refute this contention for each person specifically.

Cite to bates numbers. If you are not in custody, possession or control of any responsive materials or information, identify all such materials and their believed location and custodian.

**ANSWER**: Defendant specifically objects that this Interrogatory is vague, unduly burdensome, and undefined. Defendant further objects that this Interrogatory is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Interrogatory is premature in that no class has been certified.

5.     Identify and explain all written and unwritten policies, practices and procedures concerning use of Predictive Dialers and Prerecorded Messages, going back to when you began considering the use of such, and ending on June 9, 2010.

**ANSWER**: Defendant specifically objects that this Interrogatory is vague, unduly burdensome, undefined, and immaterial. Defendant further objects that this Interrogatory is irrelevant and

2

seeks information not reasonably calculated to lead to admissible evidence. Defendant further

objects that this Interrogatory is premature in that no class has been certified.

      6.    Identify and explain all written and unwritten policies, practices and procedures concerning use of email advertising, going back to when you began considering the use of such, and ending on June 9, 2010.

**ANSWER**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay

Discovery, Defendant does not answer this Interrogatory as it relates to Plaintiff's Illinois

Electronic Mail Act Claim.

      7.    Identify and state the location and the person who has possession, custody or control of any document, data or information responsive to any discovery request in this case, that is not being produced because of any objection, privilege, or because you contend that such is not within your possession, custody or control.

**ANSWER**: Defendant states that, at this time, no documents are being withheld on the basis of

any objection or privilege, and Defendant does not contend, at this time, that there are documents

not within its possession, custody, or control.

      8.    State the name, employer, most current home address, title and job description of each person (including present or former third parties, companies, officers and/or employees) who is responsible for your Predictive Dialer(s), Prerecorded Messages, telephony systems and operations, and state specifically what that person's duties are.

**ANSWER**: Defendant identifies Brian Holbrook, Director of Operations.

      9.    State the name, employer, most current home address, title and job description of each person (including present or former third parties, companies, officers and/or employees) who is responsible for your email advertising, and state specifically what that person's duties are.

**ANSWER**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay

Discovery, Defendant does not answer this Interrogatory as it relates to Plaintiff's Illinois

Electronic Mail Act Claim.

      10.    Identify and explain the basis for any claim that any violation alleged in the complaint was unintentional and/or resulted from an error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. Identify what procedures exist, how they are maintained, how they are adapted to avoid the matters complained of and why the alleged

violations happened despite the procedures. Please answer this interrogatory specifically for each putative class member.

**ANSWER**: Defendant specifically objects that this Interrogatory is overly broad, unduly burdensome, and vague. Defendant further objects that this Interrogatory is irrelevant, immaterial, and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Interrogatory is premature in that no class has been certified.

11. Identify all facts and law you contend support any defense or affirmative defense you have raised or will raise in this case, as to plaintiff and any putative class member. A complete answer will at least: explain the defense, cite the facts the support the defense (including citation to bates number, or descriptions of the location and custodian for documents that are not produced), and identify each person(s) with information regarding the defense and state what information each person has.

**ANSWER**: Defendant specifically objects that this Interrogatory is overly broad, unduly burdensome, compound, and vague. Defendant further objects that this Interrogatory seeks information protected by the attorney-client privilege and work product doctrine. Defendant further objects that this Interrogatory is premature in that no class has been certified. Investigation continues.

12. With respect to each expert, retained or nonretained, whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

**ANSWER**: Defendant will identify any experts consistent with the scheduling order in this case and the applicable Federal Rules of Civil Procedure.

Date: September 29, 2010                    Respectfully submitted,

_____

David L. Hartsell
Susan E. Groh
MCGUIREWOODS LLP
77 W. Wacker Drive
Suite 4100
Chicago, Illinois 60601
T: (312) 849-8100
F: (312) 849-3690
dhartsell@mcguirewoods.com
sgroh@mcguirewoods.com

5

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746, I, _Brian Halbrook_ , declare under penalty of perjury that the foregoing Defendant's Responses to Plaintiff's Interrogatories are true and correct to the best of my knowledge.

Executed on September 29, 2010.



## CERTIFICATE OF SERVICE

I, Susan E. Groh, certify that on September 29, 2010, I served this document via email and US Mail delivery to:

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
ABurke@BurkeLawLLC.com

Susan E. Groh

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NICHOLAS MARTIN, on behalf of himself   )
and others similarly situated,   )
                         )
      Plaintiff,            )     1: 10-cv-3494
                         )
        v.              )     Judge Dow
                         )
CCH, INCORPORATED,       )
                         )
      Defendant.         )
                         )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUESTS TO PRODUCE

Defendant CCH, Incorporated responds to the following requests to produce submitted by

Plaintiff Nicholas Martin:

1.    All documents, records, data, recordings and other materials relating to plaintiff, or which are indexed, filed or retrievable under plaintiff's name or any number, symbol, designation or code (such as an account number or Social Security number) assigned to plaintiff, the phone number 630-479-3271, or the email address n.m.martin@hotmail.com.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to

Stay Discovery, Defendant does not answer this Request to the extent that it relates to Plaintiff's

Illinois Electronic Mail Act Claim. To the extent this Request relates to Plaintiff's TCPA claim,

Defendant states that, upon entry of a protective order, it will produce responsive documents.

2.    All documents transmitted to any third party as to any account or other designation associated with plaintiff, the phone number 630-479-3271, or the email address n.m.martin@hotmail.com. Please include the "form" for any letter, email or document which you sent but for which you do not have a precise copy.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to

Stay Discovery, Defendant does not answer this Request to the extent that it relates to Plaintiff's

Illinois Electronic Mail Act Claim. To the extent this Request relates to Plaintiff's TCPA claim,

Defendant states: none.

3.     A copy of the recording for any telephone call to 630-479-3271, and any for the call to any person responsive to interrogatory 3.

**RESPONSE**: Defendant specifically objects to this Request as unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Request is premature in that no class has been certified.

4.     A copy of all unsolicited email advertisements you or someone on your behalf has sent to persons in Illinois between June 8, 2007 and June 8, 2010.

**RESPONSE**:  Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

5.     All documents evincing, or relating to, any policies, practices or procedures concerning who you, or any person on your behalf, calls or called using a Predictive Dialer or Prerecorded Message.

**RESPONSE**:  Defendant specifically objects to this Request as unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Request is premature in that no class has been certified.

6.     All documents evincing, or relating to, any policies, practices or procedures concerning who you, or any person on your behalf, send or sent advertising emails.

**RESPONSE**:  Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

7.     All documents concern any person whose cell phone you called using your Predictive Dialer and/or Prerecorded Message (including all documents that relate to, show or refute any claim of prior express consent) for persons with addresses in Illinois, Indiana or Wisconsin, who you or some person on your behalf called using an automatic telephone dialing system and/or prerecorded voice message, where the recipient had not provided you his prior

express consent to receive such, where the call was made at any time between and including June 8, 2006 to June 8, 2010.

**RESPONSE**: Defendant specifically objects to this Request as unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Request is premature in that no class has been certified.

8. All documents that show your prior or existing business or personal relationship, or the absence of such, as to any person that falls within the following set:

All persons with Illinois addresses who were sent an advertising email by or on behalf of defendant, where the email was sent at any time between and including June 8, 2007 and June 8, 2010.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

9. All documents that show that any email you sent to any person in the following set was sent at the request of, or with the express consent of, the recipient:

All persons with Illinois addresses who were sent an advertising email by or on behalf of defendant, where the email was sent at any time between and including June 8, 2007 and June 8, 2010.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

10. For each person identified in response to interrogatories 1 and 3, please provide any and all documents, data or things that relate to the nature of your relationship with such person, including for example, the individual's consent to receive autodialed or prerecorded telephone calls on a cellular telephone, express consent to receive advertising emails, and that show a preexisting relationship between you and the called party.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request to the extent that it relates to Plaintiff's

Illinois Electronic Mail Act Claim. To the extent that this Request relates to Plaintiff's TCPA claim, Defendant specifically objects to this Request as it is unduly vague, overly broad, burdensome, and duplicative of other discovery responses. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Request is premature in that no class has been certified.

11.     For each putative class member as the classes are defined in the Complaint, produce all documents that demonstrate that defendant had prior express consent to call such person through use of an automatic telephone dialing system, and\or using an artificial or prerecorded voice, or send advertising emails to such person.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request to the extent that it relates to Plaintiff's Illinois Electronic Mail Act Claim. To the extent that this Request relates to Plaintiff's TCPA claim, Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Request is premature in that no class has been certified.

12.     All records of outgoing calls made with either an automatic dialing system or prerecorded or artificial voice since April 28, 2005.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Request is premature in that no class has been certified.

13.     All contracts and communications with any third party concerning the making of autodialed calls or prerecorded messages, or the sending of advertising emails to Illinois residents.

4

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request to the extent it relates to Plaintiff's Illinois Electronic Mail Act Claim. To the extent that this Request relates to Plaintiff's TCPA claim, Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Request is premature in that no class has been certified.

14. The complete personnel record for any employee or executive responsive to any interrogatory herein.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, undefined, immaterial, and harassing. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence.

15. All documents, contracts, emails or agreements concerning use of your Predictive Dialer or Prerecorded Message.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence.

16. All documents, contracts, emails or agreements concerning use of your advertising emails.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

17. Please do a manual and computer search (irrespective of date) for all documents (including but not limited to: emails memos, communications or things) relating to TCPA compliance without regard to timeframe.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence.

18.    All manuals, communications and other documents relating to telephony hardware, software and other telephone equipment.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence.

19.    All manuals, communications and other documents relating to telephony hardware, software and other telephone equipment.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence.

20.    All studies, reports, statistics or other data compilations you have access to that concern the use of your Predictive Dialer or Prerecorded Messages.

**RESPONSE** Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence.

21.    All studies, reports, statistics or other data compilations you have access to that concern advertising emails. A complete response would include but not be limited to aggregate or specific data concerning what emails were opened, from what IP address emails were opened and other such data.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

22.    All invoices for telephony equipment or software, including but not limited to Predictive Dialers, Prerecorded Messages, automatic dialing systems and artificial or prerecorded voice messages.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence.

23.    A copy of the complaint for any lawsuit against you for violation of the TCPA or any law that governs the sending of advertising emails.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence.

24.    A copy of any written complaint and your response (formal or informal) you or your attorneys have ever received that complains about violations of the TCPA or laws that govern the sending of advertising emails, including but not limited to calls using your Predictive Dialer and Prerecorded Messages, without regard to date.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request to the extent it relates to Plaintiff's Illinois Electronic Mail Act Claim. To the extent this Request relates to Plaintiff's TCPA claim, Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further specifically objects to this Request on the bases that it seeks confidential information and seeks information potentially protected by the attorney-client privilege information and work-product doctrine.

25.    All documents from any source that concern the legality or propriety of making telephone calls to debtors using your Predictive Dialer, Prerecorded Message, an autodialer or a prerecorded or artificial voice.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. .

26. All documents (irrespective of date) that discuss defendant's compliance or lack of compliance with the Telephone Consumer Protection Act.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence.

27. All organizational charts of defendant showing personnel.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence.

28. All organizational charts of defendant showing ownership and/or corporate structure, including all affiliates.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence.

29. All documents, contracts and communications concerning any third party involved with the sending of advertising emails, or collection of data regarding advertising emails.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

30. All documents, contracts and communications concerning any third party involved with the making of telephone calls using Predictive Dialers and/or Prerecorded Messages.

**RESPONSE**: None.

31. All documents concerning or relating to any effort, ever, by you to determine a process, policy or practice whereby you could use your Predictive Dialer or Prerecorded Message, and still comply with the TCPA.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Request is premature in that no class has been certified.

32. All documents concerning or relating to any effort, ever, by you to determine a process, policy or practice whereby you could send advertising emails and still comply with state of federal laws that govern such, including but not limited to the CAN SPAM ACT, and the IEMA.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

33. All insurance policies that could possibly afford any coverage with respect to the matters complained of in this case together with all correspondence accepting or declining coverage or reserving rights with respect thereto.

**RESPONSE**: Upon the entry of a protective order, Defendant will produce the insurance policies identified in its Rule 26(a)(1) Disclosures.

34. All statistics, studies and/or reports concerning the use of your Predictive Dialer or Prerecorded Message in the past four years.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Request is premature in that no class has been certified.

35. All documents relating to the creation or maintenance by defendant of policies, practices or procedures adapted to avoid using your Predictive Dialer or Prerecorded Messages in calling persons who did not consent, or revoked consent, to be called on their cellular telephones, without regard to date.

**RESPONSE**: Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks

information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Request is premature in that no class has been certified.

36.     All documents relating to the creation or maintenance by defendant of policies, practices or procedures adapted to avoid violating any laws that govern the sending of electronic mail advertisements, without regard to date.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request as it relates to Plaintiff's Illinois Electronic Mail Act Claim.

37.     Your entire file, including any documents or data that show consent or lack thereof to receive calls made with your Predictive Dialer, Prerecorded Message, automatic telephone dialing system or using artificial or prerecorded voice calls on their cellular telephone, or advertising emails, for the following sets of persons:

A:     All persons with Illinois addresses who were sent an unsolicited advertising email by or on behalf of defendant, where the email was sent at any time between and including June 8, 2007 and June 8, 2010, where the recipient and CCH did not have a prior or existing business or personal relationship at the time the email(s) were sent.

B:     All persons with addresses in Illinois, Indiana or Wisconsin, who defendant or some person on its behalf called on their cell phone using an automatic telephone dialing system and/or prerecorded voice message, where the recipient had not provided CCH its prior express consent to receive such, where the call was made at any time between and including June 8, 2006 to June 8, 2010.

**RESPONSE**: Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request to the extent it relates to Plaintiff's Illinois Electronic Mail Act Claim. To the extent this Request relates to Plaintiff's TCPA claim, Defendant specifically objects that this Request is unduly vague, overly broad, burdensome, and undefined. Defendant further objects that this Request is irrelevant and seeks information not reasonably calculated to lead to admissible evidence. Defendant further objects that this Request is premature in that no class has been certified.

38.     All documents that support or refute any defense you have raised or intend to raise in this case.

**RESPONSE**: Defendant specifically objects to this Request on the bases that it is unduly vague, overbroad, and burdensome. Defendant further objects that this Request seeks confidential information and seeks information protected by the attorney-client privilege and work-product doctrine.

39.     A copy of all publications, white papers, seminars, updates you have published or issued since January 1, 1990 that concern compliance with marketing laws, the TCPA or email marketing laws. For example, the publication that is mentioned in the press release on CCH.com, "CCH Offers Comprehensive, New Privacy Law Resource: CCH Privacy Law in Marketing" would be responsive, as would the 2000 version of this, or related documents, and all updates thereto.

**RESPONSE**:  Pursuant to the Court's August 24, 2010 Order granting Defendant's Motion to Stay Discovery, Defendant does not answer this Request to the extent it relates to Plaintiff's Illinois Electronic Mail Act Claim.  To the extent this Request relates to Plaintiff's TCPA claim, Defendant specifically objects to this Request on the bases that it is unduly vague, overly broad, burdensome, irrelevant, immaterial, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.

Date:  September 29, 2010                    Respectfully submitted,

David L. Hartsell
Susan E. Groh
MCGUIREWOODS LLP
77 W. Wacker Drive
Suite 4100
Chicago, Illinois 60601
T: (312) 849-8100
F: (312) 849-3690
dhartsell@mcguirewoods.com
sgroh@mcguirewoods.com

## <u>CERTIFICATE OF SERVICE</u>

I, Susan E. Groh, certify that on September 29, 2010, I served this document via email and US Mail delivery to:

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
ABurke@BurkeLawLLC.com

Susan E. Groh

# Exhibit D

## Alex Burke

| | |
|---|---|
| **From:** | Alex Burke <ABurke@BurkeLawLLC.com> |
| **Sent:** | Wednesday, September 08, 2010 4:58 PM |
| **To:** | David Hartsell (dhartsell@mcguirewoods.com); Groh, Susan E. (SGroh@mcguirewoods.com) |
| **Subject:** | Fed.R.Civ.P. 26(a)(1) Disclosures |
| **Attachments:** | Martin v CCH 26a1 Disclosures.pdf |

David and Susan,

Attached are plaintiff's Fed.R.Civ.P. 26(a)(1) disclosures.

We have received CCH's initial disclosures, and find them to be deficient.  Please revise the disclosures so that they conform to the Rule.  Specifically:

Section A, Individuals with Knowledge:  Please revise to specify individuals who likely have discoverable information related to the disputed facts of the lawsuit (including any defenses), along with their address and telephone number, and the subject of information for which these persons have information.  Of course, you need not provide this information for plaintiff.

Section B, Documents:  No documents have been described by "category and location," and no documents have been produced.  Please specify the categories of documents and their location, or just produce the documents.  According to David's remarks in open court, we understand that CCH is in possession, custody and control of most of what will be responsive here; the description "all documents related to the Plaintiff Nicholas Martin" and Documents related to the operation of the dialer" is not a fair description of any materials at all.

Section D, Insurance:  Thank you for providing the insurance coverage limits for the several insurance policies.  Please produce the policies themselves as required by the Rule.

I ask that you please suggest a date-certain by which this information can and will be produced by next Monday, September 13, 2010.

Alex

BURKE LAW OFFICES, LLC

155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

The information transmitted through this communication is intended only for the addressee and may contain confidential and/or privileged material. Any unauthorized interception, review, retransmission, dissemination, or other use of, or taking of any action upon this information by persons or entities other than the intended recipient is prohibited and may subject the unauthorized person or entity to criminal or civil liability. If you received this communication in error, please contact us immediately at (312) 729-5288, and delete the communication from any computer or network system.  This message is not intended to create an attorney-client relationship.  Unless you have entered into a written, signed document entitled "Authorization" with Burke Law Offices, LLC, the firm does not represent you.

# Exhibit E

# Alex Burke

| | |
|---|---|
| **From:** | Alex Burke <ABurke@BurkeLawLLC.com> |
| **Sent:** | Monday, October 25, 2010 6:27 PM |
| **To:** | Groh, Susan E.; David Hartsell |
| **Subject:** | CCH  Discovery |
| **Attachments:** | 11-13-09 FIKE v THE BUREAU (09 2558 (keys) Transcript with page numbers.pdf; ORDER Judge Guzman's order overruling objections.pdf; 11-13-09 FIKE v THE BUREAU (09 2558 (keys) Transcript with page numbers.pdf; ORDER Judge Guzman's order overruling objections.pdf |

Susan,

This summarizes our conversation of Tuesday and Friday, pursuant to Rule 37. Let me know if I get anything wrong. As I indicated, despite that you objected to scheduling a follow up call as "unnecessary," I will be calling to follow up on our conversation next Thursday at 2:00pm.  If CCH is refusing to provide any information on any ground, please specify what it is not producing, and explain why.  Supplemental interrogatory responses should thus be complete, and verified.

This email goes through the requests one-by-one, and recites our position, and the resolution of our discovery talks.  Let me know if I got anything wrong:

## Class List and Phone Calls

**Int. 3.**      **Identify the intended recipient, all communications (attempted and completed) to and from this person, and from what sources you obtained the personal information (including email and phone number) for the following persons:  All persons with addresses in Illinois, Indiana or Wisconsin, who defendant or some person on its behalf called on their cell phone using an automatic telephone dialing system and/or prerecorded voice message, where the recipient had not provided CCH its prior express consent to receive such, where the call was made at any time between and including June 8, 2006 to June 8, 2010.**

**Doc. Req. 37.**      **Your entire file, including any documents or data that show consent or lack thereof to receive calls made with your Predictive Dialer, Prerecorded Message, automatic telephone dialing system or using artificial or prerecorded voice calls on their cellular telephone, or advertising emails, for the following sets of persons:**
   **B:  All persons with addresses in Illinois, Indiana or Wisconsin, who defendant or some person on its behalf called on their cell phone using an automatic telephone dialing system and/or prerecorded voice message, where the recipient had not provided CCH its prior express consent to receive such, where the call was made at any time between and including June 8, 2006 to June 8, 2010.**

We understand from discovery talks that CCH does not believe any list of persons it called or attempted to call (partial or complete) is possible to create.  Please confirm or refute this, and provide a detailed explanation of what equipment was used to make any calls during the class period, what ESI exists or existed that may tend to assist in producing or recreating a response to this interrogatory.  Please also explain in detail what efforts have been made, by whom, to obtain or recreate any data that may be responsive to these requests.

We expect to hire an expert to go through these materials.  It is therefore necessary to know what ESI exists and what efforts have been made so that we can better understand how to go about finding someone who can help.  For example, David, you mentioned that the dialer itself and backup tapes had been investigated.  Please indicate what precisely has been done, and the results of the investigation.  If there are other sources for relevant ESI that may help the parties compile a complete or partial response to this interrogatory, such as emails or memos, please identify these, too.

For example, I wonder if you have attempted to obtain recreate the data that was transferred between the dialer and the database it was querying? How do these two communicate? There is likely ESI created when queries are made by the dialer, and when the database transmits a set of telephone numbers to the dialer.

**Doc Req. 12.        All records of outgoing calls made with either an automatic dialing system or prerecorded or artificial voice since April 28, 2005.**

We understand that CCH has objected to this because it does not understand what we are asking for. We want any record of any call having been made during the time period identified. The would not only include dialer records, but would also include other dialer output (such as data regarding how many calls in a campaign connected, which or how many numbers were "bad" numbers), phone records (whether or not they are itemized) emails or other communications involving sales agents or other employees who may have requested that a dialing campaign be performed.

**<u>Prior Express Consent</u>**

**Int. 4.        If you contend that you had prior express consent to call any person responsive to the previous interrogatory using an automatic telephone dialing system or prerecorded or artificial voice message, explain why, and identify all documents, facts and law that support or refute this contention for each person specifically. Cite to bates numbers. If you are not in custody, possession or control of any responsive materials or information, identify all such materials and their believed location and custodian.**

**Int. 10.        Identify and explain the basis for any claim that any violation alleged in the complaint was unintentional and/or resulted from an error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. Identify what procedures exist, how they are maintained, how they are adapted to avoid the matters complained of and why the alleged violations happened despite the procedures. Please answer this interrogatory specifically for each putative class member.**

**Int. 11.        Identify all facts and law you contend support any defense or affirmative defense you have raised or will raise in this case, as to plaintiff and any putative class member. A complete answer will at least: explain the defense, cite the facts the support the defense (including citation to bates number, or descriptions of the location and custodian for documents that are not produced), and identify each person(s) with information regarding the defense and state what information each person has.**

**Doc. Req. 7.        All documents concern any person whose cell phone you called using your Predictive Dialer and/or Prerecorded Message (including all documents that relate to, show or refute any claim of prior express consent) for persons with addresses in Illinois, Indiana or Wisconsin, who you or some person on your behalf called using an automatic telephone dialing system and/or prerecorded voice message, where the recipient had not provided you his prior express consent to receive such, where the call was made at any time between and including June 8, 2006 to June 8, 2010.**
**A reminder: for all requests herein: If you contend that providing a complete response is impracticable or impossible, please provide the most complete response as possible, explain what components or responsive information or documents is missing, and why you contend production of those materials is impossible or impracticable.**

**Doc. Req. 10.        For each person identified in response to interrogatories 1 and 3, please provide any and all documents, data or things that relate to the nature of your relationship with such person, including for example, the individual's consent to receive autodialed or prerecorded telephone calls on a cellular telephone, express consent to receive advertising emails, and that show a preexisting relationship between you and the called party.**

**Doc. Req. 8.        All documents that show your prior or existing business or personal relationship, or the absence of such, as to any person that falls within the following set:**

**All persons with Illinois addresses who were sent an advertising email by or on behalf of defendant, where the email was sent at any time between and including June 8, 2007 and June 8, 2010.**

**Doc. Req. 11.        For each putative class member as the classes are defined in the Complaint, produce all documents that demonstrate that defendant had prior express consent to call such person through use of an automatic telephone dialing system, and\or using an artificial or pre-recorded voice, or send advertising emails to such person.**

**Doc. Req. 35.        All documents relating to the creation or maintenance by defendant of policies, practices or procedures adapted to avoid using your Predictive Dialer or Prerecorded Messages in calling persons who did not consent, or revoked consent, to be called on their cellular telephones, without regard to date.**

**Doc. Req. 37.        Your entire file, including any documents or data that show consent or lack thereof to receive calls made with your Predictive Dialer, Prerecorded Message, automatic telephone dialing system or using artificial or prerecorded voice calls on their cellular telephone, or advertising emails, for the following sets of persons:  B:   All persons with addresses in Illinois, Indiana or Wisconsin, who defendant or some person on its behalf called on their cell phone using an automatic telephone dialing system and/or prerecorded voice message, where the recipient had not provided CCH its prior express consent to receive such, where the call was made at any time between and including June 8, 2006 to June 8, 2010.  A reminder:  for all requests herein:  If you contend that providing a complete response to any request is impracticable or impossible, please provide the most complete response as possible, explain what components or responsive information or documents is missing, and why you contend production of those materials is impossible or impracticable.**

**Doc. Req. 38.        All documents that support or refute any defense you have raised or intend to raise in this case.**

We understand from discovery talks that CCH intends to argue that plaintiff consented to receive autodialed and prerecorded calls because CCH obtained his cell phone number from the IRS.  Please explain this in detail in a verified interrogatory response, citing to documents that support or refute CCH's contention.

Please also produce all documents that have to do with this defense (e.g. the IRS source document or data where CCH obtained plaintiff and other persons' info), and the law upon which CCH intends to rely.  Please also respond as to the class members.  After all, this is CCH's affirmative defense, and we are entitled to discovery as to what CCH believes will "end the case."  *Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500 (N.D.Ill. Dec. 16, 2009); Judge Guzman sua sponte rejection of Fed.R.Civ.P. 72 objection (without briefing), attached.  Also see, transcript of proceedings in front of Judge Keys, attached.  Fed.R.Civ.P. 26(b)(1) provides:  "Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or **defense** -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  [Emphasis added.].  See also, *Morris v. Swank Educ., Enters.*, case no. 04 C 50056, 2004 U.S. Dist. LEXIS 16655 (N.D. Ill. Aug. 20, 2004); *Thomas v. Bowman Heintz Boscia & Vician, P.C.*, 2008 WL 5070471 (S.D.Ind. Nov. 26, 2008); *EEOC v. Bloomin' Apple Rockford I, LLC*, case no. 04 C 50375, 2006 U.S. Dist. LEXIS 2708 (N.D. Ill. Jan. 24, 2006); *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 617 (N.D.Cal. 2006); cf. *Martinez v. Baldwin Steel Co.-Chicago Div.*, 2000 WL 1029228 (N.D.Ill. July 26, 2000) (holding that affirmative defenses were waived because they were raised at the eleventh hour of discovery period).

I am not aware of any case that has held that a party is not required to explain or produce documents regarding its affirmative defense. If you are aware of any refuting or tending to refute the authority cited here, I am interested in seeing it.  Otherwise, please produce the requested materials.

Although we want these materials for everyone called, we note that none of this information has been provided as to the plaintiff, individually, either.  My notes indicate that CCH has agreed to provide responses to at least document requests 10 and 11, as to plaintiff.  This would be a good start.

\*\*\* Please be advised that we will seek to bar any documents, information or other materials relating to any affirmative defense that has not been timely, properly and completely disclosed. \*\*\*

**Autodialer/prerecorded message policies, practices and procedures**

**Int. 5.      Identify and explain all written and unwritten policies, practices and procedures concerning use of Predictive Dialers and Prerecorded Messages, going back to when you began considering the use of such, and ending on June 9, 2010.**

**Doc. Req. 5.  All documents evincing, or relating to, any policies, practices or procedures concerning who you, or any person on your behalf, calls or called using a Predictive Dialer or Prerecorded Message.**

CCH has apparently taken the position that these requests are so broad it does not know what we want to see. We disagree, but are willing to specify some items that we consider responsive to this interrogatory in order to assist CCH. My notes indicate that the parties "agreed to disagree" about interrogatory 5, but below is another attempt to obtain information.

A full response would include a description of how CCH comes to make calls using its dialer and prereocrded messages, for example. David outlined this in our discovery talk last Tuesday: a "sales agent" decides that a dialing campaign is appropriate, and figures out what criteria he wants to use with the dialer. The sales agent then takes his criteria to Brian Holbrook, the person who operates the dialer. Mr. Holbrook creates a "script" for a query to the database, and the database communicates with the dialer to tell the dialer which telephone numbers fall within the script, and the dialer makes the calls.

Also responsive to this request would be any policies, practices or procedures (if any) for complying with any "do not call" rules or regulations, and policies, practices and procedures to comply with laws and regulations that require that a company making telemarketing calls keep track of the calls made. If there is a third party that defendant uses to query what telephone numbers are on any do not call list, that company should have been revealed pursuant to this interrogatory, and pursuant to interrogatory 8.

Other subjects that may be responsive to this request are policies, practices or procedures relating to the following subjects: dialer document data destruction or retention, email data destruction and retention, statistics or reports that the dialer creates regarding, for example, the connect rate for calls or how effective the dialer has been. Please supplement the responses to these requests.

**Catchall**:
**Int. 7.      Identify and state the location and the person who has possession, custody or control of any document, data or information responsive to any discovery request in this case, that is not being produced because of any objection, privilege, or because you contend that such is not within your possession, custody or control.**

I crafted this interrogatory after reviewing Rules 26(b) and 33(a). Fed.R.Civ.P. 26(b)(1) states:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — **including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.**

This interrogatory asks exactly what Rule 26(b)(1), entitled "Scope in General" contemplates. Similarly, Rule 33(a)(2) provides: "(2) Scope. An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed.R.Civ.P. 33(a)(2).

As indicated on the telephone, this interrogatory asks for CCH to identify all responsive materials that it knows about, but is not producing. Because we did not receive any documents at all, there should be a long list of responsive

materials. For example, you have indicated that CCH has data concerning the plaintiff, but have not produced such. Although an elementary example, this would be responsive to this interrogatory. While I understand that CCH has objected to responding to the interrogatory, arguing that it is overly burdensome, we respectfully submit that the burden would be substantially lessened if CCH were to have provided full responses to our discovery requests in the first place. Please take this interrogatory seriously, and provide a complete response.

**Materials Concerning Plaintiff**:

**Doc. Req. 1.** **All documents, records, data, recordings and other materials relating to plaintiff, or which are indexed, filed or retrievable under plaintiff's name or any number, symbol, designation or code (such as an account number or Social Security number) assigned to plaintiff, the phone number 630-479-3271, or the email address n.m.martin@hotmail.com.**

**Doc. Req. 2.** **All documents transmitted to any third party as to any account or other designation associated with plaintiff, the phone number 630-479-3271, or the email address n.m.martin@hotmail.com. Please include the "form" for any letter, email or document which you sent but for which you do not have a precise copy.**

These materials would all be discoverable in a TCPA case, regardless of whether there was a second count under the IEMA. Please supplement your responses to include any information that CCH has regarding plaintiff. You have indicated that nothing has been withheld, but we do not have anything. Please make a complete production, including materials that relate to CCH's emails to plaintiff, because these materials may bear on any prior express consent for plaintiff.

**Other Materials**

**Doc Req. 3.** **A copy of the recording for any telephone call to 630-479-3271, and any for the call to any person responsive to interrogatory 3.**

As I explained on the telephone, we request the recording(s) that were used on May 31, 2010, along with all other recordings used during the class period.

**Doc. Req. 14.** **The complete personnel record for any employee or executive responsive to any interrogatory herein.**

You indicated CCH would stand on its objection for this one. As clarification, we requested this information to learn more about Mr. Holbrook and any other person who is relevant to the case.

**Dialer/Prerecorded Message Materials**

**Doc. Req. 13.** **All contracts and communications with any third party concerning the making of autodialed calls or prerecorded messages, or the sending of advertising emails to Illinois residents.**

Again, as I explained, we are looking for materials concerning the dialer and prerecorded messages. Therefore, any contract or communication with any third party concerning these subjects would be responsive. We would imagine, for example, that Mr. Holbrook has communicated with third parties regarding the dialer, including whatever company sold CCH the dialer, about operation of the dialer or support or maintenance thereof. There is also likely a contract between CCH and some company regarding support of the dialer, and an invoice for the dialer itself.

**Doc. Req. 15.** **All documents, contracts, emails or agreements concerning use of your Predictive Dialer or Prerecorded Message.**
**Doc. Req. 17.** **Please do a manual and computer search (irrespective of date) for all documents (including but not limited to: emails memos, communications or things) relating to TCPA compliance without regard to timeframe.**

We believe that there are likely emails or memos involving sales agents (or others who work with dialing campaigns), or Mr. Hobrook, that concern use of the dialer. These materials may help us compile a class list, and may shed light on the willfulness of CCH's violations. Also, any manuals or other materials concerning the dialer itself, and its interaction with CCH's database would be responsive. There also are likely call-back materials or data, and do-not-call data, which will show persons who were called and responded to CCH, either positively or negatively.

We understand that CCH is "standing" on its relevance, burdensome and class objections as to numbers 15 and 17. Please let me know if this is not the case in light of this explanation. Please also revisit the response to number 30 in light of this explanation.

**Doc. Req. 18.        All manuals, communications and other documents relating to telephony hardware, software and other telephone equipment.**
**Doc. Req. 19.        All manuals, communications and other documents relating to telephony hardware, software and other telephone equipment.**
**Doc Req. 22.        All invoices for telephony equipment or software, including but not limited to Predictive Dialers, Prerecorded Messages, automatic dialing systems and artificial or prerecorded voice messages.**

And, of course, we are interested in manuals, communications and other documents regarding CCH's dialer, as well as its database used along with the dialer, in document requests 18 and 19, and invoices concerning the dialer or prerecorded message in request 22. For example, there should be an invoice for the initial purchase of the dialer, and ongoing support thereof. If an actor was used to make the recording, there are documents and materials concerning that, as well. There should be scripts for any prerecorded messages used.

**Doc. Req. 20.        All studies, reports, statistics or other data compilations you have access to that concern the use of your Predictive Dialer or Prerecorded Messages.**

We asked for these materials because many dialers generate reports that show their effectiveness and connect-rate, and other data about their use. This kind of data will assist in determining how many persons were called and if enough were called to justify treating this case as a class action.

## Willfulness Materials

We have asked for materials that bear on whether CCH's violations were willful. The following requests are aimed specifically at learning what knowledge of the TCPA's prohibitions CCH had. Our position is that 47 USC 312(f) applies, and that willfulness does not depend upon knowledge of the law. However, we anticipate that CCH will argue that some other standard applies for willfulness, and therefore we must seek materials about its knowledge that it was violating the TCPA.

**Doc. Req. 23.        A copy of the complaint for any lawsuit against you for violation of the TCPA or any law that governs the sending of advertising emails.**
**Doc. Req. 24.        A copy of any written complaint and your response (formal or informal) you or your attorneys have ever received that complains about violations of the TCPA or laws that govern the sending of advertising emails, including but not limited to calls using your Predictive Dialer and Prerecorded Messages, without regard to date.**
**Doc. Req. 25.        All documents from any source that concern the legality or propriety of making telephone calls to debtors using your Predictive Dialer, Prerecorded Message, an autodialer or a prerecorded or artificial voice.**
**Doc. Req. 26.        All documents (irrespective of date) that discuss defendant's compliance or lack of compliance with the Telephone Consumer Protection Act.**

Susan, you agreed to talk to your client about producing materials responsive to numbers 23 and 24. Please supplement accordingly. You decided to stand on the objections to 25 and 26. Also responsive to this request would be any regulatory materials regarding CCH's dialer or prerecorded messages.

**Doc. Req. 31.** All documents concerning or relating to any effort, ever, by you to determine a process, policy or practice whereby you could use your Predictive Dialer or Prerecorded Message, and still comply with the TCPA.
**Doc. Req. 32.** All documents concerning or relating to any effort, ever, by you to determine a process, policy or practice whereby you could send advertising emails and still comply with state of federal laws that govern such, including but not limited to the CAN SPAM ACT, and the IEMA.
**Doc. Req. 35.** All documents relating to the creation or maintenance by defendant of policies, practices or procedures adapted to avoid using your Predictive Dialer or Prerecorded Messages in calling persons who did not consent, or revoked consent, to be called on their cellular telephones, without regard to date.
**Doc. Req. 39.** A copy of all publications, white papers, seminars, updates you have published or issued since January 1, 1990 that concern compliance with marketing laws, the TCPA or email marketing laws. For example, the publication that is mentioned in the press release on CCH.com, "CCH Offers Comprehensive, New Privacy Law Resource: CCH Privacy Law in Marketing" would be responsive, as would the 2000 version of this, or related documents, and all updates thereto.

In attempting to cooperate and receive some response, we are willing to narrow request 31 to 5 years. We understand that CCH intends to "stand" on its objections and refusal to provide any response to any other of these requests.

**Insurance Policies**
**33.** All insurance policies that could possibly afford any coverage with respect to the matters complained of in this case together with all correspondence accepting or declining coverage or reserving rights with respect thereto.

We understand that CCH claims that all contracts with third parties, including its insurance carriers, are trade secrets, and that plaintiff is therefore not entitled to see the insurance policies. CCH has indicated that it "stands" upon that objection, which seems contrary to Fed.R.Civ.P. 26(a)(1). Please reconsider your position and produce the entire insurance policies and other documentation that are relevant to this case.

**Organizational Charts**
We issued the following document requests in order to learn about the defendant's structure, and personnel organization. For example, a personnel chart will likely show Mr. Holbrook, and then tell us who is his boss, and who he supervises. You have decided to stand on your objections to these requests as irrelevant, burdensome and inappropriate until a class is certified.

**Doc. Req. 27.** All organizational charts of defendant showing personnel.
**Doc. Req. 28.** All organizational charts of defendant showing ownership and/or corporate structure, including all affiliates.

I understand that CCH is standing on its vagueness, breadth, burdensome and "undefined" objections for number 27, and that it will get back to me as to number 28.

I will call Susan on Thursday, October 28, 2010, at 2:00 to check on the status of CCH's supplemental responses, if any, to these requests. If you require further explanation or still do not understand what we are looking for, please itemize such at that time.

Alex Burke

Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)

ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

The information transmitted through this communication is intended only for the addressee and may contain confidential and/or privileged material. Any unauthorized interception, review, retransmission, dissemination, or other use of, or taking of any action upon this information by persons or entities other than the intended recipient is prohibited and may subject the unauthorized person or entity to criminal or civil liability. If you received this communication in error, please contact us immediately at (312) 729-5288, and delete the communication from any computer or network system. This message is not intended to create an attorney-client relationship. Unless you have entered into a written, signed document entitled "Authorization" with Burke Law Offices, LLC, the firm does not represent you.

# Exhibit F

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case 1:10-cv-3494 |
| v. | ) ) | Judge Dow |
| CCH, INCORPORATED, | ) ) | Magistrate Judge Ashman |
| Defendant. | ) ) | |

**PROTECTIVE ORDER**

IT IS HEREBY ORDERED THAT:

1. This Protective Order shall govern the production, use and handling of confidential documents and information produced by any party in any form in the above-captioned litigation (collectively "Material"). Any party or nonparty may designate as "Confidential" any documents, information or other things that contain proprietary business information not previously made available to the public, with the exception of documents heretofore produced in discovery by either party, which any party or nonparty contends should be protected from disclosure pursuant to this Order ("Protective Order"). Such documents, information and other things are referred to herein as "Confidential Information." Nothing herein shall expand or restrict the scope of materials that may be designated as confidential pursuant to Fed. R.Civ.P. 26(c), and applicable caselaw.

2. Any party, or non party producing or filing a document or thing in this proceeding may designate it at the time of its production as subject to this Protective Order shall designate Material as Confidential Information by typing or stamping on each page so designated (without obscuring or defacing the Material) "Confidential," "Confidential Subject to Protective Order" or

words of similar import ("Basic Confidential Information").  The Parties agree to exercise good faith in evaluating whether materials should receive any Confidential Material designation pursuant to this Protective Order.

a.  Should any Party, counsel for any Party, or any person or entity not a party to this action who obtains access to any Confidential Material make copies or duplicates of any Confidential Material, or any portion thereof, and if the Confidential Material designation is not clearly reproduced on the copies or duplicates as a result of the copying process, then the appropriate designation, Basic Confidential Material, as the case may be, shall in that event also be stamped or affixed to such copies or duplicates, and the references in this Protective Order to Confidential Material shall be deemed to include and to apply to such copies or duplicates.

b.  Should any Party, counsel for any Party, or any person or entity not a party to this action who obtains access to Confidential Material make extracts or summaries of such Confidential Material, such extracts or summaries shall also be stamped with the appropriate designation. Such extracts or summaries shall also constitute Confidential Material even if the extracts or summaries are not marked with a Confidential designation, and the references in this Protective Order to Confidential Material shall apply to such extracts or summaries.  This provision shall not include the notes of counsel.

c.  This Protective Order shall apply to all Confidential Material so designated whether produced informally or in response to formal discovery requests, subpoenas or at deposition.

3.      All Confidential Material subject to this Protective Order shall be used by the persons to whom it is disclosed solely for the prosecution and/or defence of the above-captioned action, captioned *Martin v. CCH, Incorporated*, Court Case No. 10-3494, (hereinafter, "litigation"); it shall not be used by such persons for any other purpose not directly related to the litigation of this matter, and at no time shall any Confidential Material be provided to any representative of the electronic, digital or print media, excluding those persons designated as experts and consultants pursuant to paragraphs 6(d).  The Confidential Material shall not be used by any persons to whom disclosures are made, other than by the party that produced it, for business or competitive purposes or in any other litigation.

4.      If, at any time, a Party disagrees with or challenges the grounds or basis for the designation of any document or information as Basic Confidential Material, that Party shall nevertheless treat and protect such Material in accordance with this Protective Order until and unless all Parties shall have agreed in writing, or an order of the Court shall have been entered which provides that such challenged Confidential Material may be used or disclosed in a manner different from that specified in this Protective Order. In the event of such a disagreement, the Party challenging the designation will have the burden of pursuing any relief desired.  After a party has designated a document as confidential, the parties shall meet and confer regarding any challenged designation, and the producing party shall timely provide to the challenging party all basis for any challenged designation, upon written request.

5.      Nothing in this Protective Order shall preclude any party from seeking and obtaining, upon a showing of good cause, additional protection with respect to the confidentiality of documents or other information, including, but not limited to, additional restrictions on disclosure to the parties herein.

6. Basic Confidential Material and its contents may only be disclosed to the following persons and subject to the following conditions:

a. Counsel of record for the parties to this litigation, now or in the future, their respective associates, partners, law clerks, paralegals, legal assistants, secretaries, and other support staff who are actively engaged in assisting such attorneys in the prosecution or defense of this litigation; provided, however, that the employees of such counsel to whom such access is permitted shall, prior to such access or disclosure, be advised of the provisions of this Protective Order and shall be instructed to comply with it;

b. The Parties, officers and current employees, including in-house counsel, of the Parties (or parent or affiliated company of a Party) whose knowledge of such information is necessary to enable the Parties to prepare for trial, to try this proceeding, to engage in appellate proceedings herein, or whose duties reasonably require access to Confidential Material for legal, financial, or insurance reporting obligations;

c. Insurers, reinsurers, and auditors of a Party;

d. Independent experts and consultants retained in this litigation by a Party or the attorneys for a Party, provided, however, that the experts or consultants to whom such access is permitted shall, prior to such access or disclosure, be advised of the provisions of this Protective Order and shall be instructed to comply with it;

e. Deposition reporters and their support personnel for purposes of preparing deposition transcripts;

4

f.      Any witness in a deposition in this litigation, where Confidential Material is relevant to the subject matter of which the deponent would be likely to have knowledge, provided, however, that any such witness, shall, prior to any disclosure, prior to such access or disclosure, be advised of the provisions of this Protective Order and shall be instructed to comply with it;

g.      The author(s), sender(s), addressee(s) and copy recipient(s) of the Basic Confidential Material;

h.      The person(s) mentioned in any document or tangible material designated as Basic Confidential Information, provided, however, that only that portion of the Basic Confidential Information which directly pertains to such person(s) shall be disclosed to them;

i.      The judge, jury, clerk, other personnel in the department to which this action is or may be assigned, other court personnel, and persons present in the courtroom during the trial of this matter;

j.      Any discovery referee or settlement conference officer assigned to this matter;

k.      Percipient witnesses called to testify at trial, but only for purposes of such trial testimony.

7.      Unless the Court orders otherwise, Confidential Material may be filed or lodged with the Court in this action, or offered as evidence at trial in this action, for any purpose without placing the Confidential Material under seal, unless the Court grants an order sealing that Confidential Material.

a.      Counsel for any Party that intends to file or lodge with the Court any Confidential Material, or to offer any such Confidential Material as evidence at trial, shall notify counsel for all other Parties and (as applicable) any non-party witness that produced the Confidential Material of such intended use sufficiently early to permit them to file and obtain a ruling on a motion prior to such use.

b.      Alternatively, a party that wishes to file such materials under seal may file a motion to do so.

8.      If any Basic Confidential Material or its contents is presented at, or is the subject of inquiry during, a deposition, counsel for the party whose Confidential Material is to be disclosed or inquired into shall notify the deposition reporter to separately transcribe the portion of the deposition testimony during which Confidential Material is discussed or referred to. That portion of the deposition which may reveal Confidential Material or its contents shall be conducted (unless otherwise agreed to by counsel for all Parties in writing or upon the record of the deposition) under circumstances such that only the deposition reporter and persons duly authorized hereunder to have access to such Confidential Material, as the case may be, shall be present. The transcript of such portion of the deposition itself shall be deemed, as appropriate, Basic Confidential Material, and such portion of the deposition transcript shall be separately transcribed and stamped with the appropriate legal legend as specified in Paragraph 2, above. This Protective Order does not preclude presenting the original of the transcript in its entirety to the deponent for review, correction and signing, nor does it preclude delivery by the reporter of copies of deposition transcripts containing or annexing Confidential Material, in their entirety and marked with the legend or legends provided above, to outside counsel for the Parties to this

Protective Order, which transcripts shall then be maintained by such outside counsel in accordance with the provisions of this Protective Order.

9.     Before disclosing Confidential Material to any persons (other than pursuant to paragraphs 6(a), (b), (f), (g) and (h) hereof) authorized to receive it under paragraphs 6 of this Protective Order, counsel shall provide a copy of this Protective Order to such persons, shall advise them that they are governed by its provisions and shall instruct them not to use the Confidential Material in any manner contrary to the terms of this Protective Order. Counsel shall cause each such person(s) to execute a copy of the "Consent to be Bound," the form of which is attached hereto as Exhibit "A," prior to providing such person any confidential material.

10.     This Protective Order shall be without prejudice to the rights of the parties to apply to the Court for additional, different or removal of protection if they deem it necessary to do so.  The terms of this Protective Order shall not affect the right of any person to seek and secure greater protection for particularly sensitive information or to seek whatever further relief is available under the Federal Rules of Civil Procedure and Federal Rules of Evidence, or other law.

11.     This Protective Order shall continue in full force and effect with respect to all Confidential Material, whether or not offered into evidence at trial, until another order modifies, supersedes or terminates it, and shall be enforceable as any other order of the Court.  At the conclusion of this litigation (including appeal), all such Confidential Material shall be returned to the Party who produced it and no party, expert, consultant or any other person or entity to whom such Confidential Material was produced shall retain any copies or any such Confidential Material, except that counsel for each Party may maintain one copy of all documents containing Confidential Material for the purpose of maintaining complete and accurate files of the action.

7

Notwithstanding the foregoing, a Party shall not be required to destroy copies of any Confidential Material preserved or recorded within any computerized storage device or component (including hard drive or database) or saved automatically to standard back-up or archival systems in each case in compliance with normal document retention policies, provided that the receiving Party and its representatives will not access, view, or use any such Confidential Material , except as may be required by law or a court rule or process. No party to this litigation shall not be in violation of this paragraph until the designating counsel has made a written demand for the return or destruction of materials, and the receiving has refused.

12.     This Protective Order is without prejudice to the right of any party to object to the discovery, production and/or admissibility of any information, document or evidence on grounds other than confidentiality or to bring before the Court at any time the question of whether any particular information is or is not relevant to any issues in, or to the subject matter of, this litigation, and such right is hereby expressly reserved. The designation of such information as Confidential Material pursuant to this Protective Order shall not be construed as an admission of the relevance of such Confidential Material in the litigation.

13.     Nothing contained herein shall prevent any party from using or disclosing its own Confidential Material without having to comply with the terms of this Protective Order.

14.     The Court shall retain jurisdiction to make such amendments, modifications, deletions and additions to this Protective Order as the Court may from time to time deem necessary or appropriate.

15.     This Protective Order shall remain in force and effect until another order, if any, modifies, supersedes or terminates it, and shall be enforceable as any other order of the Court.

16.     Notwithstanding whether this Protective Order becomes an order of the Court, or is modified by the Court, the Parties are bound by the terms of the Protective Order until such time as it is superseded by Order of the Court.

November ___, 2010

## **[PROPOSED] ORDER**

Defendant's motion for protective order is hereby granted.  IT IS SO ORDERED.

Dated: _____, 2010

_____
THE HONORABLE ROBERT M. DOW JR.

United States District Court Judge

## EXHIBIT "A"

## FORM OF CONSENT TO BE BOUND

I, _____, declare as follows:

1. I have been provided with a copy of the Protective Order Re: Confidentiality of Documents and Information issued in this action, and have read and understand its terms.

2. I hereby consent to be bound by the terms of the Protective Order. I further consent to the jurisdiction of the United States District Court, Northern District of Illinois for the purposes of any proceeding to enforce the terms of the Protective Order or to punish the breach thereof.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

Executed on _____, 20_ at _____.
                (date)                        (city and state)

\19654171.1

# Appendix 1

1

2                    IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
3                            EASTERN DIVISION

4    TODD FIKE, on behalf of          )
     himself and others similarly     ) Docket No. 09 C 2558
5    situated,                        )
                                      ) Chicago, Illinois
6                    Plaintiffs,      ) November 13, 2009
                                      ) 9:30 a.m.
7              v                      )
                                      )
8    THE BUREAUS, INC.,               )
                                      )
9                    Defendant        )

10
                        TRANSCRIPT OF PROCEEDINGS
11               BEFORE THE HONORABLE ARLANDER KEYS

12
     PRESENT:
13
     For the Plaintiff:        ALEXANDER H. BURKE
14                             Burke Law Offices, LLC
                               155 North Michigan Avenue
15                             Suite 9020
                               Chicago, Illinois  60601
16

17   For the Defendant:        PETER E. PEDERSON, JR.
                               Hinshaw & Culbertson LLP
18                             222 North LaSalle Street
                               Suite 300
19                             Chicago, Illinois  60601-1081

20   (TRANSCRIBED FROM ELECTRONIC RECORDING.
      PLEASE SUPPLY CORRECT SPEAKER  IDENTIFICATION)
21

22   Court Reporter:           Lois A. LaCorte
                               219 South Dearborn  Room 1918
23                             Chicago, Illinois 60604
                               (312) 435-5558
24

25

[1]

1          THE CLERK:  09 C 2558, Fike v The Bureaus.

2          THE COURT:   Good morning, counsel.

3          MR. BURKE:   Good morning, Judge, Alexander Burke for

4    the plaintiff.

5          THE COURT:   Good morning, Mr. Burke.

6          MR. PEDERSON:  Good morning your Honor, Pete Pederson

7    for defendant.

8          THE COURT:   Good morning, Mr. Pederson.  We have The

9    Bureaus' motion to compel and also plaintiff has a motion to

10   compel, right, Mr. Burke?

11         MR. BURKE:   That's right, Judge.

12         THE COURT:   Let's talk about plaintiff's -- first of

13   all, the defendant's motion to compel, isn't that moot now.

14         MR. BURKE:   I think so, Judge.  We provided the

15   signature under oath that they asked for.  Mr. Fike went to his

16   cell phone carrier and obtained all the records that he could

17   going through 2007 and those have been produced The Bureaus.  If

18   The Bureaus wants more records, they can subpoena them and we

19   certainly won't oppose that, but my understanding and my client's

20   understanding is that we have provided everything that he is able

21   to obtain.

22         And then as to the interrogatory response that they

23   want, I think Mr. Fike has given everything, all the information

24   he knows in response to the interrogatory.

25         MR. PEDERSON:  Well, your Honor, there were three

1 aspects of the motion to compel.  We sought Mr. Fike's signature

2 under oath.  That was provided, it's moot.  We also sought the

3 phone bills.  So far we have the phone bills for May 2007 to May

4 2008 and then September 2008 through January 2009, which was the

5 period -- the last period when the phone calls by TBI were made.

6 There is a gap from May 2008 to September 2008.  We haven't

7 received those phone bills.

8          THE COURT:  It's those three, May, June -- four months

9 there.

10          MR. PEDERSON:  Right.  So that aspect of the motion to

11 compel isn't moot.  And then we have also requested contacts

12 between Mr. Fike and the original creditor.  We have a very bare

13 bones response in the original interrogatory answer, which says

14 "I remember scheduling the dentist appointment and making certain

15 payments."  We would like the actual cancelled checks and any

16 written communication between the creditor and Mr. Fike because

17 the checks and the written communications would go to whether Mr.

18 Fike provided the phone number, his cell phone number to the

19 creditor, which would constitute consent under the TCPA.

20          THE COURT:  Do you agree with that, Mr. Burke?

21          MR. BURKE:  Well, I take issue with the comments about

22 what constitutes consent.  I don't know about the cancelled

23 checks.

24          THE COURT:  Do you agree if he contacted, if your

25 client contacted the creditor by cell phone, that that is consent

[3]

1  for him to be contacted by the creditor by phone?

2         MR. BURKE:  I certainly do not agree with that, Judge.

3  In fact, in our response to the motion to compel, we cited a

4  footnote in the FCC order which is controlling on the merits of

5  this case that says that that, expressly says that that is not

6  consent under the TCPA.

7         THE COURT:  Okay.  Still we're talking about discovery

8  here, not about the ultimate, whether it's going to get it into

9  evidence.

10        MR. BURKE:  I agree, Judge.  I didn't know about this

11  gap in the records.  I know that Mr. Fike went and tried to find

12  his phone records and he got everything he could get.  I'll go

13  back to him and see if he can get this gap.  We will try to get

14  that gap.  As far as cancelled checks, I haven't spoken with him

15  about the cancelled checks.  We can see if he can find the

16  cancelled checks.  Otherwise, we will subpoena the cancelled

17  checks.

18        THE COURT:  Okay.  Now, with regard to the motion to

19  compel filed by the plaintiff, you raise the consent defense, but

20  you claim that you don't have to produce evidence on the defense

21  unless the class is certified.  You're absolutely wrong on that

22  one.  You're not going anywhere with that one.  You claim that in

23  your opinion it's never going to be certified, the class is never

24  going to be certified and that you're producing the evidence

25  that's being sought here prior to any, in view of the fact that

1  it's not going to be certified, it's too burdensome, and you

2  shouldn't have to do it.  That is not the law in this area.

3      You have to -- it's going to be up to Judge Dow at some

4  point to decide whether the class is going to be certified and

5  one of the issues is going to be whether there was consent,

6  right, of the class -- of the putative class?

7      MR. PEDERSON:  I don't disagree with most of what your

8  Honor said.  I think the thrust of the motion was that discovery

9  on the merits of a class claim is improper if the plaintiff fails

10  to make a threshold showing that the class is suitable for class

11  certification, and plaintiff has not cited a single case which

12  has certified for class treatment the theory under the TCPA that

13  Mr. Fike brings.

14      When a debt collector is making auto dialed and

15  prerecorded message calls to consumers, those calls will comply

16  with the TCPA unless the consumer never provided his cell phone

17  number to the creditor.  But the court cannot without conducting

18  mini trials into the dealings between each potential class member

19  and the creditor figure out whether the class member actually

20  provided his number to the creditor and thereby consented, and

21  this individual question precludes certification under Rule

22  23(b)(3) and it also precludes identification of the class.

23      So the argument was that he has not shown a case that's

24  prima facie capable of being certified under Rule 23, therefore,

25  merits based discovery on the class claim is inappropriate.

[5]

1          THE COURT:   But you're claiming that this, what he is
2  seeking is going to the merits of the claim.
3          MR. PEDERSON:   It goes to whether they consented and so
4  it's not, it doesn't go to the question of numerosity or the
5  typicality, it goes to the question of whether these individuals
6  are subject to a defense that can only be proven through a mini
7  trial, which would preclude class certification.   And in many
8  cases the evidence concerning consent is in the hands of third
9  parties and therefore, we are not required under the discovery
10 rules to produce that information as it's not in our possession
11 or control.
12         THE COURT:   Well, who has it?
13         MR. PEDERSON:   It would be in the hands of --
14         THE COURT:   The client, right?
15         MR. PEDERSON:   It would be in the hands of the creditors
16 and the class members.
17         THE COURT:   Well, do you know who the class members
18 are?
19         MR. PEDERSON:   No, your Honor, we don't because we can't
20 generate a list of individuals who received calls on their cell
21 phones without having consented to the calls.
22         THE COURT:   Well, how does the plaintiff find out who
23 the class members are if you don't produce discovery to them
24 regarding --
25         MR. PEDERSON:   We can produce a list of numbers with the

1  relevant area codes that we contacted during the time frame, but

2  we can't provide a list of numbers that we contacted where the

3  individual did not consent to be contacted because we don't have

4  information about the dealings between each class member and the

5  creditor.

6       So we could produce an overinclusive list of individuals

7  who were contacted, period, but many of those individuals will

8  not be class members because they consented to receive calls or

9  because the call was actually placed to a land line rather than a

10 cell phone.

11      THE COURT:  Can't you find out which ones of them

12 consented and did not consent?  I know it's burdensome, but can't

13 you do it?

14      MR. PEDERSON:  Not without an extremely burdensome and

15 time-consuming investigation into the dealings between every

16 class member and the creditor, and under the discovery rules, we

17 aren't required to go out and obtain information in the hands of

18 third parties, we're only required to turn over information in

19 our control.  If we turn over the information in our control, the

20 list will be overinclusive.

21      THE COURT:  Well, somebody has got to -- I know you

22 feel like you're between a rock and a hard place here, but on the

23 one hand, the plaintiff is entitled to know which of the

24 individuals on your list consented.  They shouldn't have to --

25 say there are a thousand people on your list.  They shouldn't

 1  have to interview all thousand of those people to determine

 2  whether they are properly part of this class because they

 3  consented when you could get that information easier from your

 4  records.

 5          MR. PEDERSON:  Your Honor, our records won't disclose in

 6  all cases whether the consumer consented to be contacted because

 7  that information will be in the hands of the creditor, and the

 8  Chaveriat opinion that we cited in our brief states that the

 9  litigant is not required to produce information that is in the

10  possession or control of a third party.  The litigant has a duty

11  to produce information in its own possession or control.

12          In that case the plaintiffs had hired an engineering

13  contractor or some scientific contractor to do I believe soil

14  chemistry assessments.  They were requested in discovery to

15  produce certain information in that contractor's possession.

16  They failed to produce it and the district court entered a

17  sanction against them for failing to produce it.  The Seventh

18  Circuit reversed on the ground that the information in the

19  contractor's possession was not in the possession of the

20  plaintiffs and therefore, they could not be -- they could not be

21  sanctioned for failing to produce information in the third

22  party's possession.

23          And this is a similar case where is evidence related to

24  consent is in the possession of a third party and therefore, we

25  are not -- we have no duty and we have no ability to produce that

1   information.

2   　　　　THE COURT:   So under the ruling on the Chaveriat,

3   wasn't it?

4   　　　　MR. PEDERSON:  Chaveriat.

5   　　　　THE COURT:   You as a debt collector have no duty to

6   insure that the creditor that you represent here --

7   　　　　MR. PEDERSON:  That's correct.

8   　　　　THE COURT:   What does the plaintiff do here, make the

9   creditor also a defendant in this case?

10  　　　　MR. PEDERSON:  Well, your Honor, it goes to the

11  impracticality of handling this case on a class basis because the

12  information concerning whether potential class members have valid

13  claims is distributed across many parties.  It could be in the

14  hands of the creditor, it could be in the hands of the consumer.

15  In some cases the consumer might expressly consent to TBI and

16  there will be a notation in the database, but none of these

17  evidence -- none of the categories of evidence of consent can be

18  resolved in a straightforward manner for the entire class.  It

19  would have to be -- the question of consent would have to be

20  resolved for each class member individually.

21  　　　　THE COURT:   Okay, then you're arguing against

22  certification.

23  　　　　MR. PEDERSON:  Correct.

24  　　　　THE COURT:   But what does -- what would Mr. Burke say

25  to try to refute that --

[9]

1          MR. PEDERSON:  Well, your Honor --

2          THE COURT:   When you make that argument if he doesn't

3    have some evidence from you?

4          MR. PEDERSON:  Your Honor, what we could do is produce a

5    sample of our database on a random sample of class members and

6    that would include the information in our database about those

7    individual class members.  But it would be improper I think for

8    the court to order us to produce the complete universe of

9    information in our possession and all 7,000 potential class

10   members when such production would be overinclusive because maybe

11   some of the individuals are not members of a class either because

12   they did not receive calls on their cell phones or because they

13   consented.

14         THE COURT:   Well, what does the plaintiff -- not just

15   Mr. Burke, but what does a plaintiff do in that situation, just

16   simply back away and say "Since they won't give it to us, we will

17   just voluntarily dismiss this" or how does he prove it?

18         MR. PEDERSON:  Your Honor --

19         THE COURT:   He can't prove it.

20         MR. PEDERSON:  Well, plaintiff can make the argument

21   that the court should disregard the question of consent and

22   presume --

23         THE COURT:   I don't think that's going to fly.

24         MR. BURKE:  I think the defendant is making that

25   argument, that you should disregard the question of consent.

[10]

1     MR. PEDERSON:  And the other argument the plaintiff can

2  make is that the, a production of a random sample of potential

3  class members would show that the question of consent does not

4  prevent the class from being certified.

5     THE COURT:  And you would oppose that argument, of

6  course.

7     MR. PEDERSON:  We would oppose that argument.  But we

8  think, your Honor, if you order us to produce the complete

9  universe of information on all potential class members or on a

10  random sample of class members, we will argue vigorously to Judge

11  Dow that consistent with the other cases that have examined this

12  type of theory, the question of consent precludes class

13  certification.

14     THE COURT:  Yes, it precludes class certification, but

15  it doesn't preclude discovery.  It doesn't preclude discovery.

16  This case has not been bifurcated, first of all, so you talk

17  about merits versus class certification issues.  That's not --

18  you're not going to get anywhere with that.

19     The issue is that the plaintiff is going to have to show

20  how many or approximately how many of the individuals whom you

21  have attempted to collect from actually consented to your taking

22  your cell phone call.  He has got to prove that.  How does he

23  prove that if you don't give him the information, the evidence on

24  it that you have because he has nothing?

25     MR. PEDERSON:  My response to that, your Honor, is that

1 the plaintiff cannot prove on a class wide basis for all class

2 members whether consent was given without mini trials on the

3 question of consent.  And that precludes class certification.

4        It doesn't matter, your Honor, what information we give

5 Mr. Fike in response to this court's order on the pending motion.

6 Mr. Fike will be unable as a matter of law to resolve this

7 question on a class wide basis such that a class can be certified

8 under Rule 23.

9        THE COURT:  Mr. Burke, you agree, right?

10       MR. BURKE:  Well, if they withdraw their consent

11 defense, if it doesn't matter what information they give me,

12 that's fine.  You know, if they say "We have nothing and we're

13 not providing anything," I think the class will be certified

14 because they have no consent defense.

15       We're -- I don't think they have any evidence and I

16 don't think they can get any.  I mean, Mr. Fike did not consent.

17 They got his, they got his cell phone number from a third-party

18 skip trace company and we have asked subsequently in discovery

19 for all the people they got phone numbers from the skip trace

20 company and there is some law on that too.

21       But the bottom line as to the consent issue is that they

22 brought an affirmative defense of prior express consent.  They

23 have the burden of proof on this defense and we have asked, we

24 have asked for the evidence.

25       THE COURT:  And I think that's really the bottom line

[12]

1  here, counsel.  You have raised an affirmative defense of consent

2  as to some of these people.  You're not saying that everybody

3  consented, are you?

4        MR. PEDERSON:  We don't know, your Honor.

5        THE COURT:   You don't know if they did or not?

6        MR. BURKE:  That raises Rule 11 implications, Judge.

7        THE COURT:   How can you consistent with Rule 11 make

8  that defense if you don't know?

9        MR. PEDERSON:  Well, your Honor, it's a fact of modern

10 life that people use their cell phones.

11       THE COURT:   And you're probably right.

12       MR. PEDERSON:  As the default means of communication.

13 For example, in my own case, your Honor, I haven't had a land

14 line since I think 2000.  So every creditor I deal with I provide

15 my cell phone number to, and under the FCC ruling I'm deemed to

16 consent to receive auto dialed and prerecorded message calls on

17 my cell phone.  So it's reasonable to assume that a very

18 substantial percentage of the debtors who were contacted by TBI

19 did in fact consent by providing their number either to TBI or

20 the creditor.

21       And if your Honor orders us to produce information on

22 the class members or the potential class members, of course, we

23 will comply with your Honor's order.  Our argument is at the end

24 when the smoke settles, Mr. Fike will be unable to provide Judge

25 Dow with the means of resolving the question of consent on a

[13]

1  class wide basis such that the class will be certified.

2        THE COURT:   And that happens a lot, that we order stuff

3  to be produced and in the final analysis they can't use it so

4  they lose.

5        MR. PEDERSON:  I would just ask, your Honor, that

6  instead of ordering TBI to produce the complete universe of

7  information on all potential class members, many of whom will not

8  be members of the class because they consented or they were

9  contacted on a land line rather than a cell phone, that your

10 Honor order TBI to produce information on a random sample of the

11 potential, the 7,200 potential class members that TBI has

12 identified based on a database search.

13       THE COURT:   But in this kind of case I don't think

14 sampling -- I have done sampling in cases, but this is probably

15 not one that I would want to, want to have engaged in sampling.

16 So I know it is somewhat burdensome for you, but I think it can

17 be done, and more importantly, without you producing something to

18 them, you know, with regard to your affirmative defense of

19 consent, you know, they're going to have a tough time trying to

20 prosecute this case.

21       I don't care who wins the case, it doesn't matter to me,

22 but at least you have got to give the plaintiff an opportunity to

23 go to the next level, that is, to argue for certification of the

24 class.  And if they don't -- if they can't -- if they can't give

25 some indication to the district court as to the number of those

1  people who did not give consent, well, then that's their case.

2  And you claim that they're never going to be able to do it

3  because these are individualized assessments that have to be

4  made, and you may or may not prevail on that.

5      But we are talking about discovery here and even though

6  it might be costly, time-consuming, I don't know how

7  time-consuming it is because I have listened to you two lawyers

8  making your arguments, but nobody has come forward from your

9  company to tell me exactly what they have to do to get all this

10  information.  I can't just accept your representations in that

11  regard.  I saw the affidavit that was filed by, what's her name?

12      MR. PEDERSON:  Marian Sangalang.

13      THE COURT:  But I think it can be done, it can be done.

14  It may be rather burdensome and I, you know, I recognize that in

15  these kinds of cases that the kind of discovery that's being

16  sought could influence a defendant to try to settle the case

17  rather than litigate it.  I know that's an argument that comes

18  down, but I think this is a legitimate area that the plaintiff

19  should be able to get information from, and to the extent that

20  you have it, you will have to give it up.  And that is with

21  regard to the -- Mr. Burke, what was it particularly that you

22  were asking for?

23      MR. BURKE:  It's on page 6 of our motion.  We're asking

24  for responses to those particular interrogatories and document

25  requests:  Interrogatory 4, 9, 10 -- there should be some overlap

1 with these -- document requests 3, 4, 5, 6, 28 and misnumbered

2 28 -- pardon me, misnumbered 12 that I renumbered 28A.

3       THE COURT:  Okay.  I have reviewed those and I don't

4 see how you can get around not having to respond to those and

5 that's going to be my order.

6       MR. PEDERSON:  Well, your Honor, we will comply with the

7 court's order.  It would be helpful for us to know exactly what

8 information we are required to produce so that we can comply with

9 the order.  Are you ordering production of the evidence of

10 consent in TBI's possession relating to all potential class

11 members?

12       THE COURT:  Right.  The class members there are limited

13 to Illinois, right?

14       MR. BURKE:  That's correct, Judge.  I think that we

15 during the talks, the Rule 37 talks we narrowed that a little bit

16 more.

17       MR. PEDERSON:  The class definition was modified, your

18 Honor.  It now covers only individuals who had 312 and 773 area

19 code numbers.

20       MR. BURKE:  That's correct, Judge, but I take issue with

21 the 7,000 number that Ms. Sangalang put in her affidavit.

22       THE COURT:  Is there more?

23       MR. BURKE:  There absolutely is more, your Honor.

24 That's apparently the number of persons that were, that TBI left

25 prerecorded messages for, but they haven't provided the number

[16]

1  for the number of people that they called that they're auto

2  dialing.

3        MR. PEDERSON:  Your Honor, the estimate of 7,200 was for

4  the number of prerecorded message calls to accounts with 773 and

5  312 area code numbers.  They did not include --

6        THE COURT:   The auto dial, you did not include that?

7        MR. PEDERSON:  We did not include auto dialed calls

8  where there would have been a collection agent available to take

9  the call if a live human being answered.

10        THE COURT:   She is not saying that you can't retrieve

11  that information.

12        MR. PEDERSON:  No, we didn't say that, your Honor.

13        MR. BURKE:  They just ignored it.

14        THE COURT:   And auto dial of course, that's a real

15  problem for you.

16        MR. PEDERSON:  Your Honor, I don't want to retread

17  ground or replow ground we have already plowed.  The difficulty

18  with a production for all individuals who received calls is that

19  many individuals had land lines that were called and our

20  information does not in all cases show whether the call was

21  placed to a land line or a cell phone.

22        So if your Honor orders us to produce evidence of

23  consent on all individuals who received either auto dialed or

24  prerecorded message calls during this time period, many of these

25  individuals will not be members of the class because of the

1  question of consent, which we have already gone over, but also

2  because we don't know whether the phone is a land line or a cell

3  phone, which I think would also counsel in favor of doing a

4  sample of, a production on a sample of class members rather than

5  the complete universe.

6          THE COURT:  Well, a sample we're not going to do.  Mr.

7  Burke.

8          MR. BURKE:  I agree, a sample won't give me what I'm

9  entitled to, I think, under the discovery rules.  You know, I

10  think this goes back to the possibility of Rule 11.  I mean, if

11  they have no idea which numbers they called that were cell phone

12  numbers, I look forward to telling the jury that.  But how can

13  they raise a defense in the case if they don't even know the

14  first step, they don't know who falls into the first step of

15  their defense?  I think there is a problem here.

16          THE COURT:  I don't want to tread on their Rule 11, but

17  I understand what you're saying.  I have read it.

18          MR. PEDERSON:  We have already addressed that, your

19  Honor.  We know for a certainty that many of these individuals

20  did give their cell phone numbers so there will have been

21  consent.

22          THE COURT:  I don't think that argument is going to win

23  for you that well, you know, considering modern day technology,

24  more than likely some of them did give their consent.  That's not

25  to get you anywhere.  But that's a Rule 11 issue.  I don't want

[18]

1 to deal with that at this point.

2          You're going to have to do better.  You're going to have

3 to -- you have an affirmative defense.  Either you can withdraw

4 your defense, I know you're not going to do that, I don't blame

5 you, or you've got to produce evidence to support it.

6          MR. BURKE:  And, Judge, I just wanted to mention that

7 unlike the Chaveriat case that was cited by the defendant, we

8 issued interrogatories asking for not only information that is in

9 their possession, but information that they know about that

10 supports their defense.  So I just wanted to mention during this

11 hearing that The Bureaus isn't limited to just information that's

12 in their possession, but anything that they know about must be

13 disclosed.

14          THE COURT:  Well, if that's the way it's worded.

15          MR. BURKE:  Absolutely.

16          THE COURT:  But you understand now what they're looking

17 for?

18          MR. PEDERSON:  I understand that your Honor is ordering

19 us to produce --

20          THE COURT:  Right.

21          MR. PEDERSON:  -- evidence in our possession related to

22 the question of whether potential class members --

23          THE COURT:  Evidence that you have.

24          MR. BURKE:  That they know about, that supports their

25 defense.

1        THE COURT:   I don't agree that in the context of this

2  particular case that you're not required to produce evidence that

3  might be in possession of third parties, third parties here being

4  your client, that is, the creditors.  I don't read Chaveriat or

5  whatever that case is, I didn't read that as in the context of

6  this case as allowing you to simply sit on your hands or go to

7  the client and get things.  I didn't read it that way at all.

8        So I'm going to order you to comply, respond to all of

9  the outstanding discovery and that is both the interrogatories

10 and documents.  Are there interrogatories in it also?

11       MR. BURKE:  Yes.

12       THE COURT:   All right.  And with regard to the costs

13 here, I think because there could have been some confusion,

14 counsel, as to what your responsibilities are in this particular

15 case, I'm going to deny the fees and costs without prejudice.

16 Let your client know that if we have to revisit the issue again

17 I'll allow Mr. Burke to renew the motion.

18       Okay, the fees and costs sanctions are denied without

19 prejudice, give you some incentive to try to get your clients

20 to -- I know your clients -- you're an officer of the court --

21 your clients don't take to turn over stuff, but you know that

22 they have to and you have to, as their lawyer you have to

23 convince them that it's the right thing to do or they could have

24 sanctions as well.

25       MR. PEDERSON:  Your Honor, we will fully comply with

1  your Honor's order and our obligations under the Federal Rules of

2  Civil Procedure.

3       I do need some clarification about the production you're

4  ordering.  My understanding was that you were ordering the

5  production of the information in our possession.

6       THE COURT:  You keep saying "possession."  That's not

7  the word.  I mean, you have -- if this information is in the

8  possession of your client, then you have to give it to them.

9       MR. PEDERSON:  We will produce that information, your

10  Honor.  My point is that we do not have the power or the duty to

11  produce the information in the creditors' possession related to

12  the question of consent.  In Chevariat it speaks expressly to

13  this question.

14       THE COURT:  Your client, the creditor is your client in

15  this case.

16       MR. PEDERSON:  And Chevariat deals with this fact

17  pattern.  It says that the existence of a contractual

18  relationship between a litigant and a third party does not

19  obligate the litigant to produce information in litigation that

20  is in the possession of the third party.

21       THE COURT:  Your client is not a typical third party,

22  though.

23       MR. PEDERSON:  In the Chevariat case, though --

24       THE COURT:  You work for that client.

25       MR. PEDERSON:  My client typically has some type of

[21]

1  ongoing relationship where they will collect receivables for the

2  creditors, but there is no attorney-client relationship.  It's

3  not like they are fiduciaries necessarily.  The Chevariat case

4  dealt with an expert for the plaintiffs and the plaintiffs failed

5  to produce information in the expert's possession.  Judge Posner

6  writing for the Seventh Circuit said that the plaintiff had no

7  duty to produce information in the expert's possession simply

8  because the expert might have given the plaintiff that

9  information if the plaintiff had requested.  It's because the

10 possibility that a party might be able to obtain information from

11 a third party does not mean that the plaintiff or the litigant

12 actually has the control over that information, it means the

13 opposite because it's just that there is a mere possibility that

14 the party to the litigation can obtain the information from the

15 third party.  This is the holding of the Chevariat case.

16      So under this case law, we -- our client has no ability

17 and no duty to produce evidence in the hands of third parties,

18 the creditors in this case.

19      THE COURT:   So in theory you as the debt collector can

20 bury your head in the sand and say "We don't have to give

21 anything." Go after these guys.  They are the guys who did the

22 phone calls to the plaintiff.

23      MR. PEDERSON:  The plaintiff is able to serve subpoenas

24 for information he wants.  We will produce -- our obligation, our

25 obligation is to produce the information in our possession,

1  custody, or control, and we will produce that, but we have no

2  duty under the rules and under Chevariat to produce the evidence

3  and information that's in the lands of the creditors.

4        THE COURT:  Do you believe that if you went back to

5  your creditors and asked them for information that they would

6  refuse to give it to you?

7        MR. PEDERSON:  We have no idea.

8        THE COURT:  If you do that, if you do that and they

9  refuse to give it to you, that's another issue.

10       MR. PEDERSON:  We have no idea whether they will give us

11 the information.  And the --

12       THE COURT:  I think they would.

13       MR. PEDERSON:  Well, it's unknown.  It's a possibility.

14 Judge Posner said that the possibility that the third party will

15 hand over the information to the party does not mean that the

16 party has control over that information, it means the opposite

17 because it's uncertain.

18       MR. BURKE:  I suspect that what counsel is worried about

19 brings us to another portion of the motion to compel.  We asked

20 for the contract between The Bureaus and their creditors, and I

21 suspect, as I have seen in other cases, the contracts contain a

22 no warranty about information clause.  The creditors don't

23 want -- they won't to be bothered by The Bureaus.  This is a

24 major problem for The Bureaus in proving their defense.  I don't

25 think they can prove it.

1        But the bottom line is that this is their defense.

2        THE COURT:   Well, certainly the creditor is not going

3   to be very happy with you when you go back to them and say "Look,

4   we have got this court order that I have got to get this

5   information from you."  They're not going to be happy with you.

6   But so be it.  I mean, these are legal proceedings and I don't

7   think that the holding in that Seventh Circuit Chevariat case is

8   applicable in the case and I'm going to order that you comply

9   now.

10       On the other hand, if you try to get this information

11  from your clients and they tell you they're not going to give it

12  to you, that brings another issue, but at least you've got to

13  make an attempt to do that.  It might not make your client happy,

14  but you have got to make an attempt -- your clients have to make

15  an attempt, which they don't want to do, which is understandable.

16       MR. PEDERSON:  I just respectfully disagree with your

17  Honor that under the Chevariat case we have to --

18       THE COURT:   Okay, you disagree, but that's the order,

19  okay?  All right.

20       MR. BURKE:   Judge, there are two other sections.

21       THE COURT:   Let's give them 30 days.  30 days to comply

22  with the order.  The sanctions motion is denied without

23  prejudice.

24       MR. PEDERSON:  Your Honor, I don't believe there was a

25  sanctions motion, was there?

1   THE COURT: Didn't you ask for fees in this?

2   MR. BURKE: I think we asked for whatever the court

3 feels is appropriate and fee shifting is the --

4   THE COURT: So you didn't ask specifically for fees.

5   MR. PEDERSON: There is no prayer for fees.

6   THE COURT: Well, then we will forget about it. Strike

7 that. If he didn't ask for it -- usually you guys ask for fees

8 and costs and all that.

9   MR. BURKE: I just want the information, your Honor.

10   THE COURT: Okay.

11   MR. BURKE: Part 2, information and materials concerning

12 the Automatic Dialer and the messages.

13   THE COURT: Well, I just said I granted your motion.

14   MR. BURKE: Very good.

15   MR. PEDERSON: Your Honor, part 2 of the motion sought a

16 number of categories of information and our position is that we

17 have fully responded to most of these requests. As to the

18 automatic telephone dialer, we produced approximately 500 pages

19 of technical manuals about the capacities of the dialer. We have

20 produced the contract for acquisition of the dialer and for

21 technical support relative to the dialer. I'm not sure what

22 further information plaintiff would be entitled to under the

23 Federal Rules related to the dialing system. I'm sure there are

24 customer support e-mails or letters related to the dialer, but

25 plaintiff has not met his burden of showing that the customer --

1  that the customer support e-mails would have any bearing on the

2  issues in this case.  I mean, TBI is a company that places a

3  large number of telephone calls, so there are going to be a large

4  number of communications that have some potential connection to

5  the dialer, but they won't have any bearing on the actual issues

6  in this case.  And the only issues in this case relative to the

7  dialer are whether it is an automatic telephone dialing system

8  under the statute.

9        THE COURT:   They want to know how it works.

10        MR. PEDERSON:  We have given them the manuals.

11        THE COURT:   What else do you want to know, Mr. Burke?

12  You have got them now so let's not have any confusion.

13        MR. BURKE:  Your Honor, we asked for contracts.

14        MR. PEDERSON:  We provided the contracts.

15        MR. BURKE:  Page 12 is the list of --

16        THE COURT:   Explain it to him because I have got

17  another matter here.  Explain to him what you're seeking here so

18  there is no confusion.

19        MR. BURKE:  Document requests 7, 8, 9, 10, 11, 12 and

20  14.  Your Honor, they have taken the position that they only have

21  to give us the 500 pages that they want to give us.  I don't know

22  whether counsel has even searched e-mails, for e-mails having to

23  do with the TCPA. Furthermore, we have a burden to prove that the

24  violation was willful and so we are entitled to look and see what

25  sort of interactions they have with anybody about the TCPA to

1  show that their actions were willful.

2       MR. PEDERSON:  Your Honor, we produced all the

3  information related to TCPA compliance and related to whether the

4  dialing system can store or produce numbers with a random or

5  sequential number generator.

6       MR. BURKE:  That is, that is --

7       THE COURT:  With regard to this portion of the order,

8  to the extent that you have not already done so, you will comply

9  completely with it.

10      Now, Mr. Burke says you haven't, and that's going to be

11  an issue you will have to point out to me how they haven't and he

12  will have to respond to that.  I would rather get rid of it now

13  so you don't come back again with the same argument.

14      MR. BURKE:  Absolutely.  What they have done is they

15  have provided, they have placed an artificial limitation upon the

16  discovery that they want to provide to us.  So they took language

17  from the statute, which strangely enough is not controlling as to

18  certain issues in this case.  And they say "Well, we're only

19  going to give you stuff that is relevant pursuant to the standard

20  that's in the statute."

21      The material that we are asking for is material that's

22  relevant under the FCC order from January 4, 2008, which like I

23  said, amazingly enough trumps the statute as far as issues of

24  liability, and what we are looking for is evidence or materials

25  that have to do with whether the autodialer calls people or is

1  able to dial without human intervention.  And once again, Judge,

2  we have to prove that this was willful.

3        MR. PEDERSON:  Your Honor, we have admitted that the

4  autodialer can dial numbers without a human being dialing them

5  and we have also, like I said, produced the 500 pages of

6  technical manuals showing what capacities the dialer has.  I

7  don't know what more information we could produce to show whether

8  the dialer is subject to the statute.

9        MR. BURKE:  Judge, he is telling you that they have

10  produced a bunch of stuff, but he is not saying that they

11  produced everything responsive.

12        THE COURT:  Well, let's get a declaration from someone

13  who knows, a high official there as to what they have and what

14  they will produce and that's all of it.

15        MR. BURKE:  I suspect that that declaration is going to

16  have some limitation in it similar to what we see in the response

17  to the motion to compel, and if so, I suppose I'll bring it back

18  to your Honor's attention and I'll ask for fees at that time.

19        THE COURT:  All right.  If this case comes back again

20  on these issues, and you ask for fees, you probably will get

21  them.  These TCPA cases, information you guys seek is basically

22  the same information on all of them and I have seen these many,

23  many, many times and this is no different than the others.

24        MR. PEDERSON:  Your Honor, I respectfully disagree --

25        THE COURT:  Have you had other cases before me that I

[28]

1  went the other way or what?

2      MR. PEDERSON:  I disagree that this is like other TCPA

3  cases because the plaintiff cannot point to a single case which

4  has certified this theory for class treatment under the TCPA.

5      THE COURT:  I'm talking about other cases that come

6  before me.  I have seen probably at least 50 of them.

7      MR. BURKE:  Judge, there are five, five other small

8  issues.  One is we have asked for information, documents and --

9      THE COURT:  I just granted your motion completely.

10      MR. BURKE:  This has to do with the FDCPA claim, your

11  Honor.  We have a claim for violation of the FDCPA.  We asked for

12  the information again relating to their bona fide error defense.

13  Their response to our motion to compel was that they have a

14  pending motion to dismiss and they don't have to provide that

15  information.

16      THE COURT:  Well, obviously, that can't fly.  Just

17  because you have got a motion to dismiss, you still provide the

18  information.  What's next?

19      MR. BURKE:  They provided Caller ID data, the

20  information about -- well, they provided some information about

21  what Caller ID that will show up on the recipient's cell phone

22  when they receive a call.  But we have asked for Caller ID data

23  going back a full year along the class definition and for all the

24  class members.  They have provided two months of information.

25  And also, they designated the Caller ID numbers as confidential.

1        MR. PEDERSON:  Your Honor, we withdrew the

2   confidentiality designation with regard to the Caller ID data

3   over a month ago.  I sent an e-mail to plaintiff's counsel with

4   the subject Withdrawal of Confidentiality Designation.

5        The bona fide error defense that Mr. Burke first

6   mentioned, the claim alleges that TBI concealed the purpose of

7   its calls by using phone numbers other than the phone number on

8   its letterhead when it would call debtors and really --

9        THE COURT:   The idea.

10        MR. BURKE:  -- this confidential information may or may

11   not rebut that assertion.

12        MR. PEDERSON:  TBI only calls debtors from numbers that

13   belong to TBI.  So the numbers use our TBI phone numbers and when

14   the number appears on someone's screen, it doesn't mislead the

15   called party to believe that one other than TBI is being called.

16   But there really is no information or procedures related to

17   whether we are, you know, trying to make sure that our numbers

18   appear on Caller ID correctly because our numbers do appear on

19   Caller ID correctly.

20        MR. BURKE:  If I understood what counsel just said --

21        THE COURT:   You have got more than one number.

22        MR. PEDERSON:  We have more than one number.  There is

23   many.

24        MR. BURKE:  Including three cell phones that they pass

25   around from collector to collector.

1        MR. PEDERSON:  I believe, your Honor, that there are two

2   numbers associated with the dialer, there are two cell phones and

3   there is a land line.

4        THE COURT:  Okay.

5        MR. BURKE:  Well, if it's not confidential anymore, that

6   moots part of the issue, but if there were any other numbers

7   during the class period that were used, we request that those be

8   produced and also responsive to the interrogatory would be the

9   dates that those numbers were used.

10        THE COURT:  That should be easy to find out.

11        MR. PEDERSON:  Your Honor, I don't think it would be a

12   problem to produce the phone numbers that were used.

13        MR. BURKE:  Judge, we also asked for statistics having

14   to do with auto dialed and prerecorded messages.

15        THE COURT:  Do they keep the statistics?  If they keep

16   them, you have to produce it.

17        MR. PEDERSON:  Well, it's -- statistics is an undefined

18   term in this discovery request.  We know what calls are placed

19   through our dialing system.  Does he want the complete contents

20   of our database?

21        MR. BURKE:  We asked for statistics, studies and

22   reports.  I suspect that the autodialer spits out a report every

23   week or every month about how many calls were completed, how much

24   money was collected, that sort of information.

25        THE COURT:  Do you have that information?  Do you keep

[31]

1  that information?

2       MR. PEDERSON:  Your Honor we have information about all

3  calls that are placed.  We're not required --

4       THE COURT:   But do you accumulate statistics on the

5  number of calls that were made for a particular period?

6       MR. PEDERSON:  Your Honor, I don't know the answer to

7  that question.

8       THE COURT:   Well, if you have it, this is discovery,

9  this is discovery.

10       MR. BURKE:  I don't know how he doesn't know if we asked

11  for it.

12       MR. PEDERSON:  What bearing, though, do undefined

13  statistics on the questions raised by this case have, whether

14  consumers are being contacted on cell phones without their

15  consent, whether the phone calls are being placed?

16       THE COURT:   Well, one thing that you know, counsel,

17  when the plaintiff gets your client for deposition, these issues

18  do come up and they should be able to refer back to statistics

19  that they keep internally.  That's one thing that they can do it

20  for.  That's pretty simple.

21       MR. PEDERSON:  We have disclosed the number of

22  prerecorded message calls that were placed to the potential class

23  members during the class time period.  I'm not sure why

24  additional statistics are --

25       THE COURT:   If, for instance, your managers are deposed

[32]

1 and they testify that they made only, let's say, a small sample

2 of calls, number of calls per months and that they only collected

3 X amount of dollars, if the statistical data that they have shows

4 something different, they should be able to question about it.

5 That's all I'm saying.  It doesn't mean you're going to get that

6 into evidence, but certainly for depositional purposes they

7 should have all this stuff.  Before they take these depositions

8 they should have all this stuff in front of them.

9          MR. PEDERSON:  And can you give us some guidance, your

10 Honor, about what production of --

11          THE COURT:    You guys are lawyers.

12          MR. BURKE:    We just want to get document request No.

13 27.

14          THE COURT:    Okay.

15          MR. BURKE:    Judge, recordings, the auto, prerecorded

16 message that the defendant left for 7,000 people, it's been

17 produced.  It was produced I think last week.  It was designated

18 confidential.  We filed a motion last night saying that this is

19 obviously, has been placed, it has been recorded on third

20 parties' voicemails over 7,000 times.

21          THE COURT:    Is it designated as confidential on a

22 protective order?

23          MR. BURKE:    Yes.

24          THE COURT:    So somebody can see it.

25          MR. BURKE:    They actually recorded it on third parties'

[33]

1  voicemails 7,000 times at least.

2       MR. PEDERSON:  Your Honor, I offered to withdraw the

3  confidentiality designation.

4       THE COURT:  Okay.

5       MR. PEDERSON:  As long as plaintiff's counsel would

6  agree not to use the recording for purposes unrelated to this

7  lawsuit.  We don't want -- we simply asked that he would agree

8  not to, for example, upload it to an Internet blog or use it in

9  any connection other than in connection with this lawsuit.

10      THE COURT:  Or if he files another lawsuit later, you

11 want him to go back and reinvent the wheel, right?

12      MR. PEDERSON:  The purpose isn't to prevent him from

13 using the prerecorded message in another lawsuit, although I

14 can't imagine what relevance it would have in another lawsuit.

15 It's only to prevent it from being distributed for purposes

16 unrelated to this lawsuit.

17      MR. BURKE:  It's the violation itself, and it was left

18 on over 7,000 people's voice mail intentionally.  They recorded

19 it on third parties' recording devices, and now they're claiming

20 it's confidential.

21      THE COURT:  It's simply not confidential.  Okay, we are

22 going to strike the confidential designation for that.

23      Okay, what else?

24      MR. BURKE:  I think that's finally it, Judge.  We have

25 an assertion that other complaints and lawsuits have all been

1  disclosed and we are taking them at face value, although we don't

2  have an affidavit stating such.

3          THE COURT:   This is the only one, right?

4          MR. PEDERSON:   This is the only TCPA lawsuit, your

5  Honor.

6          THE COURT:   Okay.

7          MR. BURKE:   Insurance policy and reservation of rights

8  letter.  We have the insurance policy, we don't have the

9  reservation of rights letter.

10          THE COURT:   All right, you will get all that.

11          MR. BURKE:   Thank you, Judge.

12          THE COURT:   Set it for status.  Give them 30 days to

13  turn all this stuff over.

14          THE CLERK:   By December 14th.

15          THE COURT:   I'll grant your motion in its entirety as

16  set forth during oral argument.  The discovery to be turned over

17  by December what, 17th?

18          THE CLERK:   December 14th.

19          THE COURT:   December 14th, and don't say anything about

20  fees and costs because he didn't ask for them.  My mistake there.

21          MR. BURKE:   Maybe it was my mistake.

22          THE COURT:   No.  Okay, all right, we will see you then.

23          MR. BURKE:   Thank you, your Honor.

24          THE COURT:   Is that the date we set for another status?

25          THE CLERK:   We will set it for December 14th at 9 a.m.

[35]

1          MR. BURKE:   Thank you.

2          THE COURT:   All right.

3          *                    *                    *

4     I certify that the above is a true and correct

5     transcript of proceedings had in the above matter.

6               /s/ Lois A. LaCorte

7

8     _____   _____
                  Lois A. LaCorte                    Date
9                 Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Appendix 2

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | Susan E. Cox |
|---|---|---|---|
| **CASE NUMBER** | 10 C 1846 | **DATE** | 11/9/2010 |
| **CASE TITLE** | Joanne F. Balbarin  vs. North Star Capital Acquisition, LLC, et al | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion to compel [101] is granted.  Defendant is ordered to provide information responsive to the discovery requests on or before 11/24/10.

■[ For further details see text below.]

Docketing to mail notices.
*Copy to judge/magistrate judge.

---

## STATEMENT

In this putative class action plaintiff alleges a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, claiming that defendant's alleged use of an automatic dialing system with an artificial or pre-recorded voice that placed multiple calls to her cell phone without her express prior consent.  Defendant has alleged in an affirmative defense that plaintiff (and unnamed class members) have consented to these calls. Plaintiff seeks to compel responses to Interrogatory No. 9 and Request to Produce No. 7.  Both of these discovery requests seek information which supports defendant's asserted "prior express consent" defense.

In an agreement, which the Court finds highly constructive in this kind of a case, the parties agreed to limit defendant's response to a fifty person random sample of the putative class.  However, defendant continues to object to this discovery.  These objections are overruled.

Defendant's primary objection is that plaintiff has not yet obtained class certification and that it should not be forced to respond to burdensome class-wide discovery unless and until she does.  This objection lacks merit for a number of reasons.  First, the district judge in this case did not bifurcate discovery here.  All discovery is ordered closed on February 9, 2011.  Further, this discovery is hardly class-wide, but limited to fifty possible class members.  We are entirely persuaded by the opinion of our colleague, Judge Nolan, that a defendant in such an action must produce documents and information regarding its prior express defense. *Donnelly v. NCO Financial Systems, Inc.* 263 F.R.D. 500, 504 (N.D. Ill. 2009).  We note that the court in that case ordered such discovery on a class-wide basis and found that the benefit of the discovery outweighed the burden and expense.  *Id.*  In this case, plaintiff only has requested this information for a random fifty person sample.

We also find unavailing defendant's argument that it does not possess these documents itself, but will have to obtain them at great expense from third parties.  If defendant does not have documents or other information which substantiates the defense it is difficult to fathom why it interposed that defense in the first place.  If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.

**STATEMENT**

Defendant is ordered to provide information responsive to the discovery requests on or before November 24, 2010.  Plaintiff's motion to compel is, thus, granted [dkt 101].