**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NICHOLAS MARTIN, on behalf of himself and others similarly situated, ) ) ) | |
| Plaintiff, ) ) | CASE NO. 10-cv-3494 |
| v. ) ) | Judge Robert M. Dow, Jr. |
| CCH, INCORPORATED, ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are (1) Defendant CCH, Incorporated's ("CCH") motion to dismiss Plaintiff Nicholas Martin's claims that CCH violated the Illinois Electronic Mail Act, 815 ILCS § 511/10(c) ("IEMA") when he received unsolicited spam e-mails from CCH advertising its tax products and (2) Plaintiff's motion for leave to file a surreply [31] in opposition to the motion to dismiss. CCH contends that Plaintiff's IEMA claim is expressly preempted by the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM Act"). For the following reasons, the Court grants Defendant's motion to dismiss [20] and dismisses Count I of Plaintiff's amended complaint. The Court also grants Plaintiff's motion for leave to file surreply [31].

**I.    Background**

Plaintiff Nicholas Martin is an individual who occasionally assists people with tax preparation services. Defendant CCH sells a variety of tax preparation software, as well as legal treatises explaining how to comply with advertising and marketing laws. On December 29, 2009, CCH sent an e-mail ("Exhibit A") to Plaintiff with the subject line: "Buy now pay Feb. 15." The e-mail offered tax software with a deferred payment due on February 15, 2010. On

January 7, 2010, CCH sent another e-mail ("Exhibit B") to Plaintiff with the subject line: "Offer extended – Buy now pay Feb. 15." The e-mail again offered Plaintiff the opportunity to purchase tax software with a deferred payment. Plaintiff maintains that he is not aware of any previous relationship that he might have had with CCH and that the e-mails were unsolicited.

Plaintiff contends that the subject lines of Exhibits A and B do not accurately describe the full content or purpose of the e-mails. According to Plaintiff, Exhibits A and B contain special technological devices that, when the e-mail is opened, permit CCH to surreptitiously monitor plaintiff's actions and location. Specifically, Plaintiff maintains that the e-mails he received were deceptive and misleading because (1) "they contain special tools defendant may use to surreptitiously gather data about where the recipient is when he opens the e-mail, and when the e-mail is opened;" (2) "the subject lines do not state that the e-mails are advertisements;" and (3) "it has the purpose and effect of making the recipient think the e-mails [are] from someone with whom he has a preexisting relationship." Compl. ¶ 20. Plaintiff contends that CCH uses this information to further its pecuniary interests and to enhance its advertising "profile" for recipients like Plaintiff. Plaintiff claims that because "information harvesting is material," the subject lines were actionable misrepresentations in that they obfuscated the true purpose and content of the e-mails. According to Plaintiff, had the subject line of Exhibits A and B contained some notification that opening the e-mails would provide private information to CCH about Plaintiff, such as his IP address and the time that he opened the e-mails, he would have deleted the e-mails and not opened them.

Plaintiff asserts that Defendant engaged in "online behavioral advertising," "profiling," tracking online activities, placing cookies on his computer, and monitoring access to CCH's

website. Defendant contends that Plaintiff's claims are not supported by the allegations in this case, which are limited to whether the subject lines of the e-mails are deceptive or misleading.[1]

## II. Legal Standard On Motion To Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis

The primary issue here is whether the CAN-SPAM Act preempts Plaintiff's state law IEMA claim. The basic principles of preemption law are both relatively straightforward and

---

[1] Plaintiff alleges "upon information and belief" that cookies were placed and accessed on Plaintiff's computer through Exhibits A and B. However, Plaintiff's own Exhibit C states that cookies are downloaded on a computer when a website is accessed. Although Plaintiff's briefs persistently reference websites, there are no allegations that Plaintiff visited Defendant's website—the only issue relates to the e-mails themselves.

well-established. The Supremacy Clause of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Since *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819), it has been settled that state law that conflicts with federal law is "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). When determining if such a conflict exists, the "purpose of Congress" is the ultimate touchstone. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).

In general, there are three settings in which a state law conflicts with, and hence is preempted by, federal law: (1) express preemption, in which Congress "define[s] explicitly the extent to which its enactments pre-empt state law;" (2) field preemption, in which state law is pre-empted because "it regulates conduct in a field that Congress intended the federal government to occupy exclusively;" and (3) conflict preemption, in which, for example, complying with both federal and state law is a physical impossibility. *English v. General Elec. Co.*, 496 U.S. 72, 78-79 & n. 5 (1990) (explaining that the three categories are not "rigidly distinct"); see also *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997).

Particularly pertinent for present purposes is express preemption. See *English,* 496 U.S. at 79 ("[W]hen Congress has made its intent known through explicit statutory language, the courts' task is an easy one"). The Supreme Court teaches that the scope of express preemption is informed by (a) the presumption that Congress "does not cavalierly pre-empt state-law causes of action," and (b) the purpose of Congress in enacting the legislation, as revealed by the text, statutory framework and "the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Lohr*, 518 U.S. at 485.

The CAN-SPAM Act was enacted in response to the rise of unsolicited commercial e-mail. 15 U.S.C. § 7707(b)(1). Citing the lack of success under the then-current conditions in which many states had attempted to regulate e-mail with different standards and requirements, Congress determined that a national standard for regulating unsolicited commercial e-mail was required. See 15 U.S.C. § 7701(b)(1). The relevant portion of the CAN-SPAM Act for present purposes prohibits the transmission of a commercial electronic message by a person with actual or fairly implied knowledge that the subject heading would be likely to mislead a recipient about a material fact regarding the contents of the message. See 15 U.S.C. § 7704(a)(2);[2] see also *Asis Internet Services v. Rausch*, 2010 WL 1838752, at *3 (N.D. Cal. May 3, 2010). The Act does not provide a cause of action for private citizens; rather, only the FTC, various other federal agencies, a state attorney general on behalf of residents, or providers of Internet access services may bring lawsuits enforcing the CAN-SPAM Act. 15 U.S.C. § 7706; see also *Madorsky v. Does*, 2006 WL 1587349, at *2 (dismissing complaint because the CAN-SPAM Act does not provide standing for an individual private citizen to file a private cause of action).

In enacting the CAN-SPAM Act, Congress made several findings that are embodied within the first section of the CAN-SPAM Act. Among the findings relevant to the instant motion are the following:

---

[2] 15 U.S.C. § 7704(a)(2) states:

> (2) Prohibition of deceptive subject headings
>
> It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message (consistent with the criteria used in enforcement of section 45 of this title).

(1) Electronic mail has become an extremely important and popular means of communication, relied on by millions of Americans on a daily basis for personal and commercial purposes. Its low cost and global reach make it extremely convenient and efficient, and offer unique opportunities for the development and growth of frictionless commerce.

* * * *

(11) Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.

Congress also noted that there is a "substantial government interest in regulation of commercial electronic mail on a nationwide basis." 15 U.S.C. § 771(b). Additionally, Senate Report 108-102 set forth the stated purposes of the CAN-SPAM Act as follows:

> (i) prohibit senders of electronic mail (e-mail) for primarily commercial advertisement or promotional purposes from deceiving intended recipients or Internet service providers as to the source or subject matter of their e-mail messages; (ii) require such e-mail senders to give recipients an opportunity to decline to receive future commercial e-mail from them and to honor such requests; (iii) require senders of unsolicited commercial e-mail (UCE) to also include a valid physical address in the e-mail message and a clear notice that the message is an advertisement or solicitation; and (iv) prohibit businesses from knowingly promoting, or permitting the promotion of, their trade or business through e-mail transmitted with false or misleading sender or routing information.

S. Rep. No. 108-102, at 1 (2003) (reprinted in 2004 U.S.C.C.A.N. 2348, 2348).

The CAN-SPAM Act contains a preemption provision which provides as follows: "This chapter supersedes any statute, regulation, or rule of a State * * * that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). The Act further specifies that "[t]his chapter shall not be construed to preempt the applicability of: (A) State laws that are not

specific to electronic mail, including State trespass, contract, or tort law; or (B) other State laws to the extent that those laws related to acts of fraud or computer crime. 15 U.S.C. § 7707(b)(2). In short, the CAN-SPAM Act preempts any state statutes or regulations that regulate the use of e-mail for commercial messages, unless the statutes or regulations specifically prohibit "falsity or deception" in commercial e-mails.

Turning to the state law at issue, in pertinent part, the IEMA prohibits transmitting an unsolicited e-mail advertisement if it misrepresents the point of origin or contains false or misleading information in the subject line. Specifically, the IEMA provides:

> No individual or entity may initiate or cause to be initiated an unsolicited electronic mail advertisement if the electronic mail advertisement (i) uses a third party's Internet domain name without permission of the third party, or otherwise misrepresents any information in identifying the point of origin or the transmission path of an electronic mail advertisement or (ii) *contains false or misleading information in the subject line.*
>
> (a-5) An initiator of an unsolicited electronic mail advertisement must establish a toll-free telephone number or valid sender-operated return electronic mail address that the recipient of the unsolicited electronic mail advertisement may call or electronically mail to notify the sender not to electronically mail any further unsolicited electronic mail advertisements.
>
> (a-10) An initiator of an unsolicited electronic mail advertisement is prohibited from selling or transferring in any manner the electronic mail address of any person who has notified the initiator that the person does not want to receive any further unsolicited electronic mail advertisements.
>
> (a-15) Each unsolicited electronic mail advertisement's subject line shall include "ADV:" as its first 4 characters. For any unsolicited electronic mail advertisement that contains information regarding the lease, sale, rental, gift offer, or other disposition of any realty, goods, services, or extension of credit, that may only be viewed, purchased, rented, leased, or held in possession by an individual 18 years of age and older, the subject line of each and every message shall include "ADV:ADLT" as the first 8 characters.

815 ILCS § 511/10(a) (emphasis added).

Although the IEMA has been subject to very little interpretation, at least one court in this district has observed that "the Congressional policy [of the CAN-SPAM Act] does not differ, much, if at all, from Illinois law, which permits providers to block receipt or transmission of unsolicited advertisements on their own initiative and states that providers shall not be held liable for such actions taken in good faith." *E360insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 607 n.1 (N.D. Ill. 2008).

To date, there have been only two circuit court decisions interpreting the CAN-SPAM preemption provision as applied to state statutes related to unsolicited e-mail advertisement. See *Gordon v. Virtumundo,* 575 F.3d 1040 (9th Cir. 2009); *Omega World Travel, Inc. v. Mummagraphics, Inc.,* 469 F.3d 348 (4th Cir. 2006). In *Omega World Travel,* Mummagraphics claimed that Omega World Travel had violated the CAN-SPAM Act and Oklahoma law when it sent e-mails containing technical inaccuracies in the header information and failed to stop sending e-mails to recipients who had opted out. *Omega World Travel, Inc.,* 469 F.3d at 352. In analyzing the phrase "falsity or deception," the Fourth Circuit ultimately concluded that the phrase refers to "traditionally tortious conduct." *Id.* at 354. The court found that the state statute reached beyond common law fraud or deceit: "By its terms, the statute is not limited to inaccuracies in transmission information that were material, led to detrimental reliance by the recipient, and were made by a sender who intended that the misstatements be acted upon and either knew them to be inaccurate or was reckless about their truth." Thus, the court determined that Mummagraphics' state law claim was preempted because it was one for immaterial errors. *Id.* at 353.

The Ninth Circuit was presented with an almost identical preemption issue in *Gordon v. Virtumundo*, in which the plaintiff alleged that Virtumundo violated Washington's Commercial

Electronic Mail Act by sending e-mails with header information that "misrepresent[ed] or obscur[ed]" the identity of the sender. *Gordon,* 575 F.3d at 1059. The Ninth Circuit analyzed the preemption provision and came to the same conclusion as the Fourth Circuit—that "falsity or deception" refers to "traditionally tortious conduct." *Id.* at 1062 (citing *Omega World Travel,* 469 F.3d at 354). The Ninth Circuit concluded that Gordon's state law claim was preempted because it was based on mere technical and immaterial allegations of header deficiencies, and was not based in "traditional tort theories." *Gordon*, 575 F.3d at 1064. According to the court, traditional tort theories of falsity and deception as contemplated by the savings clause construed in *Gordon* require that the false or deceptive information be material and that the falsity either be intended or tend to mislead. *Id.* at 1062 (stating that "Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies or omissions"). The Ninth Circuit agreed with the Fourth Circuit's reasoning in *Omega World Travel* that "Congress could not have intended * * * to allow states to enact laws that prohibit 'mere error' or 'insignificant inaccuracies * * * because allowing a state to attach liability to bare immaterial error in commercial e-mails would be inconsistent with the federal Act's preemption text and structure." *Id.* at 1061.

In Plaintiff's amended complaint, he alleges that the e-mails are "deceptive and misleading because the subject lines do not state that the e-mails are advertisements, and the language used is misleading because it has the purpose and effect of making the recipient think the e-mail is from someone with whom he has a preexisting relationship." Yet in Plaintiff's response brief, he appears (wisely) to have abandoned these claims. See Pl. Resp. Brief at 17 ("[the subject lines] accurately tell the recipient that there is an advertisement inside"); *id.* at 1 ("the e-mail subject lines seem harmless enough on their face"). Although the IEMA requires

the label "ADV" (for advertisement) at the beginning of the subject line of an e-mail, the CAN-SPAM Act clearly preempts state laws that require such labeling. See S. Rep. No. 108-102 at 21-22 ("State law requiring some or all commercial e-mail to carry specific types of labels * * * or contain specified content, would be preempted."). The CAN-SPAM Act itself has no labeling requirements, instead requiring "clear and conspicuous information that the message is an advertisement or solicitation," although not necessarily in the subject line. 15 U.S.C. § 7704(a)(5)(A)(i). Additionally, Plaintiff's claims that the e-mail may make the recipient think the message was sent by a company with which Plaintiff had a pre-existing relationship do not rise to the level of fraud. As stressed by the Ninth Circuit in *Gordon*, Plaintiff's claim is "for, at best, 'incomplete' or less than comprehensive information regarding the sender. Such technical allegations regarding the header information find no basis in traditional tort theories and therefore fall beyond the ambit of the exception language in the CAN-SPAM Act's express preemption clause." *Gordon v. Virtumundo, Inc.*, 575 F.3d at 1064 (internal citations omitted). Thus, to the extent Plaintiff has not abandoned these theories, his claims are preempted by the CAN-SPAM Act.

Plaintiff also maintains that the subject lines contain material misrepresentations and omissions (and are thus false and deceptive) because they tell a half-truth: they accurately tell the recipient that there is an advertisement inside, but intentionally omit the "secret" "information-harvesting" purpose of the e-mails, which is to surreptitiously allow Defendant to gather data about when the e-mail is opened and where the recipient is when he opens the e-mail. According to Plaintiff, had the subject lines of Exhibits A and B contained a warning that opening the e-mails would provide private information to CCH about Plaintiff, such as his IP

address and the time he opened the e-mails, he would have deleted the e-mails and not opened them.

That claim also appears to be for "incomplete" or "less than comprehensive information" in the subject lines regarding the content of the e-mails. *Gordon*, 575 F.3d at 1064. Plaintiff essentially argues that if Defendant had provided more information, or "complete" information, in the subject line, Plaintiff would not have opened the e-mail. As explained above, two circuits have held that less than comprehensive information outside the body of an e-mail is at best a technical allegation that finds no basis in traditional tort theories and thus falls within CAN-SPAM's express preemption clause (and outside the exception). *Gordon*, 575 F.3d at 1064; *Omega World Travel,* 469 F.3d at 354. And even if the omitted information could be deemed not only incomplete but also "misleading," Plaintiff's claim still would be preempted by the express language of the CAN-SPAM Act, which prohibits subject headings likely to "mislead a recipient about a material fact regarding the contents of the message." See 15 U.S.C. § 7704(a)(2).

Additionally, the policies that support a national regime over individual state regulation apply with equal force to Plaintiff's current claim. Individual states impose different standards and requirements, and because e-mail addresses do not specify a geographic location, it can be "extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply." 15 U.S.C. § 7701(a)(11). These concerns are squarely present in this matter, in which CCH, a Delaware Corporation headquartered in Illinois, conducts its business beyond the local scope. See, *e.g.*, Pl. Resp. at 2 ("CCH is part of a multinational conglomerate ultimately owned by Wolters Kluwer from the Netherlands.").

To the extent that Plaintiff claims that implicit misrepresentations allowed Defendant to engage in "online behavioral advertising," "profiling," tracking of Plaintiff's online activities, placing cookies on his computer, and monitoring access to CCH's website, Plaintiff's allegations are insufficient as a matter of law. First, as Defendant points out, these claims are not supported by the allegations in the amended complaint, which are limited to whether the subject lines of the e-mails are deceptive or misleading. Although Plaintiff's briefs persistently reference websites, there are no allegations in Plaintiff's amended complaint that he visited Defendant's website— the only issue discussed in the complaint relates to the subject line of the e-mails. Furthermore, while Plaintiff, in his response brief, alleges "upon information and belief" that cookies were placed and accessed on his computer through Exhibits A and B, Plaintiff's own Exhibit C states that cookies are downloaded on a computer when a website is accessed, not just by opening an e-mail. At the end of the day, these inconsistencies between Plaintiff's amended complaint and his surreply do not affect the proper disposition of the motion, because the IEMA provision at issue addresses unsolicited e-mail advertisements that contain false or misleading information *in the subject line*, not what happens when a recipient clicks on images in the e-mail or goes to the sender's website.[3]

In sum, the allegations set forth in Count I of the complaint simply do not rise to the level of "traditionally tortious" conduct, and thus Count I, as pled, is preempted. In addition, any

---

[3] The Court also strongly doubts that the General Assembly could have intended the IEMA provision at issue – which pertains to the subject line of an e-mail message – to permit a cause of action that, if successful, might require the sender to include (presumably on the subject line itself) a potentially lengthy and somewhat technical description of the process through which information is transmitted from recipient to sender when the recipient opens an e-mail. Indeed, depending on the number of characters that the various providers permit on the subject line of an e-mail, it may not be possible to include on the subject line the kind of detail that would be necessary to accurately convey the message that Plaintiff seeks. But, as the Court understands the complaint, placing such a message elsewhere (for example, in the text of the message) would be ineffectual because the recipient could not access the text without first opening the e-mail.

additional claims based on the elaboration in Plaintiff's briefs also would be subject to dismissal because any such claims would lie outside the scope of the IEMA.

**III.  Conclusion**

For these reasons, the Court grants Defendant's motion to dismiss [20] Count I of Plaintiff's amended complaint.  The Court grants Plaintiff's motion for leave to file surreply [31], finding that it helped to clarify the issues before the Court.

Dated:  March 24, 2011  
_____  
Robert M. Dow, Jr.  
United States District Judge