**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NICHOLAS MARTIN on behalf of himself and others similarly situated,     Plaintiff, | ) ) ) 1:10-cv-3494 |
| v. | ) ) Judge Dow |
| CCH, INCORPORATED,     Defendant. | ) ) Magistrate Judge Ashman ) ) JURY DEMANDED ) |

**THIRD PARTY 21st CENTURY TAX SERVICES, INC MOTION TO QUASH SUBPOENA**
**AND FOR PROTECTIVE ORDER**

Third party 21st Century Tax Services, Inc. ("21st Century"), a third party respondent to a subpoena issued by CCH, Inc., respectfully requests that this Court issue an order quashing the subpoena attached as Exhibit A, and for a protective order prohibiting defendant from attempting to contact its clients. In support of this motion, 21st Century states:

1.       This is a Telephone Consumer Protection Act, 47 U.S.C. §227(b) class action challenging defendant CCH, Inc.'s practice of calling the cell phones of class members, including plaintiff, using an autodialer and prerecorded message.   CCH has produced phone records indicating that it made hundreds of thousands of calls, and has not produced any evidence that any recipient of such calls consented to receive them.

2.       Movant 21st Century is a tax preparation business owned by plaintiff Nicholas Martin.  21st Century uses plaintiff's cellular telephone number as its contact phone number. This is the telephone number that defendant called using the proscribed equipment.  On April 4, 2011, CCH issued the subpoena attached as Exhibit A, which asks for production of voluminous, highly confidential documents within one week, by April 11, 2011.

3.     This motion seeks an order quashing Exhibit A because the subpoena did not provide a reasonable time for compliance, because it is unreasonably intrusive into the private financial affairs of 21st Century's clients, because 21st Century and plaintiff have already agreed to provide all possibly relevant information and because it is otherwise objectionable in several material respects.

4.     This motion also seeks a protective order prohibiting CCH from contacting 21st Century's clients, a questionable tactic that CCH has indicated it intends to employ in order to prove that 21st Century used plaintiff's cell phone; a fact that is uncontested in this litigation.

**Motion to Quash**

5.     Fed.R.Civ.P. 45(c)(3)(A) <u>requires</u> a court to quash a subpoena that is improper for any of the following reasons:

(3) Quashing or Modifying a Subpoena.

>    (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

>>    (i) fails to allow a reasonable time to comply;

>>    (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person--except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

>>    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

>>    (iv) subjects a person to undue burden.

(Emphasis added).  <u>Exhibit A</u> should be quashed because it satisfies three of these four criteria, any one of which is sufficient to compel quashing the subpoena:  it does not allow a reasonable

time to comply, because it requires disclosure of privileged or other protected matter, and because it subjects respondent to undue burden.

6.      Reasonable Time to Comply.   One calendar week is not a reasonable time to comply with any subpoena.  Fed.R.Civ.P. 34(b) provides that a party responding to a request for documents must respond within 30 days; CCH's demand falls far short of this benchmark. Further, the seven day notice was unreasonable because of the breadth of the demand, which asks for "all documents relating to 21st Century Tax Services, Inc...."  Exhibit A at request 1.  21st Century is a small business with one employee.  Seven days was not reasonable.

7.      Privileged or other Protected Matter.   Although probably encompassed within request 1, Exhibit A request 5 also expressly demands that 21st Century produce tax returns and "supporting documentation" for its clients within the past five years.   This information is protected by the IRS code and implementing regulations.

8.      26 U.S.C. §7216, and its implementing/corresponding regulation, 26 C.F.R § 301.7216–1, make it a crime for a tax preparer such as 21st Century to provide this information:

**301.7216–1 Penalty for disclosure or use of tax return information.**

(a) In general. Section 7216(a) provides in effect that, except as provided in section 7216(b), any tax return preparer (as described in paragraph (b)(2) of this section) who on or after January 1, 1972, discloses or uses any tax return information (as described in paragraph (b)(3) of this section) other than for the specific purpose of preparing, assisting in preparing, or obtaining or providing services in connection with the preparation of, any tax return of the taxpayer by or for whom the information was made available to a tax return preparer, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.  Pursuant to section 7216(b), the provisions of section 7216(a) and this paragraph do not apply to any disclosure or use permitted under § 301.7216–2 or § 301.7216–3.

26 U.S.C. §§ 6103 "Confidentiality and disclosure of returns and return information" and 7216, "Disclosure or use of information by preparers of returns" also prevent production of this information.

9.      "Income tax returns are confidential communications between a taxpayer and the government." *Cohn v. Taco Bell Corporation*, 1994 WL 383975 (N.D. Ill. 1994), citing *Federal Savings & Loan Insurance Corporation v. Krueger*, 55 F.R.D. 512, 514 (N.D. Ill. 1972).

10.     Courts analyzing the discoverability of income tax returns have held that there is a strong policy against their disclosure. "This policy is grounded in the interest of the government in full disclosure of all the taxpayer's income which thereby maximizes revenue. To indiscriminately compel a taxpayer to disclose this information merely because he has become a party to a lawsuit would undermine this policy." *Krueger*, 55 F.R.D. at 514. This Court recognized the confidentiality of tax returns during oral argument as to plaintiff's December 2010 motion to compel. Exhibit B at 22-24.

11.     Other courses have held that tax returns are protected from disclosure by a qualified privilege. Under that standard, the subject tax returns should not be disclosed here. *Gattengo v. PriceWaterhouseCoopers*, 205 F.R.D. 70,72-73 (D. Conn. 2001) held that tax returns are only discoverable if: (1) it clearly appears they are relevant to the subject matter of the action; and (2) there is a compelling need for the tax returns because the information contained therein is not otherwise readily obtainable. Here, as explained more fully below, the tax returns of unrelated third parties are sought from their tax preparer 21st Century, apparently to show that 21st Century holds the telephone number CCH called in violation of the TCPA out as its telephone number.

12.     However, both plaintiff and 21st Century have offered to enter into a written stipulation stating that the phone number was used by 21st Century.  Exhibit C.  CCH has, to date, refused, instead insisting that no stipulation in this case would be sufficient unless plaintiff concedes that he consented to receive the illegal calls; a wholly unreasonable position.

13.     In sum, the requested information requested is squarely "protected" and "privileged" within the meaning of Fed.R.Civ.P. 45(c)(3), and the subpoena should be quashed.

14.     Undue Burden.  While 21st Century and plaintiff both recognize that there is a close relationship between respondent and plaintiff, this relationship does not provide CCH *carte blanche* to demand anything it thinks might lead to disclosure of some fact favorable to it.  Given the scope of the requests and CCH's steadfast refusal to accept a stipulation, it seems likely that the records have been requested for the purpose of harassment.  The discovery rules apply to subpoenas just as they apply to discovery, and as explained below, the subpoena here demands documents that are unnecessary to any issue in this case, and are not reasonably calculated to lead to admissible evidence.

15.     Exhibit A essentially asks for all documents that have anything to do with respondent from the last ten years.  This request is unduly burdensome, and the possible benefit is far outweighed by the burden of producing every piece of paper "regarding" 21st Century.

16.     As laid out in Exhibit C, 21st Century has offered to stipulate that it held the subject phone number out to be its phone number.  This offer moots all reasons CCH has provided to plaintiff and 21st Century why it needs any of the information subpoenaed.  Production of any materials at all, in light of this offered stipulation, is an undue burden.

17.     This subpoena is really a "fishing expedition."  CCH has not shown any need for the materials, other than to prove that 21st Century used the phone number, which has been conceded.  Aside from this, CCH has not identified any information that *might* exist in the requested materials, that would justify the intrusion and burden of permitting such discovery. *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d, 923, 927 (7th Cir. 2004); *Sirazi v. Panda Express, Inc.*, No. 08 C 2345, 2009 WL 4232693, at *3 (N.D. Ill. Nov. 24, 2009).  In other words, the need for the materials does not justify the burden and invasion of privacy.

18.     The fact is that CCH is grasping at straws in order to find some kind of information that would be favorable to its case.  On December 7, 2010, Judge Ashman compelled CCH, among other things, to produce all information, documents and data concerning any affirmative defense it raised, including "prior express consent."  <u>Exhibit B</u> at 22-24.

19.     Nearly five months later, with discovery scheduled to close on April 25, 2011, CCH has failed to produce a shred of information, a single page or a byte of data that tends to show that Martin (or 21st Century) consented to receive robocalls from CCH.  This subpoena appears to be CCH's last ditch attempt to find *some* kind of evidence to persuade the Court that plaintiff consented to receive the call; proof that CCH was required to have had before it made the call in the first place.  This is a textbook fishing expedition.  If CCH had consent to call plaintiff, then it should have had this information before it made the call.  Bothering 21st Century, its clients and plaintiff for documents and information will not change the fact that it did not have consent.  And certainly is not appropriate in light of the proffered stipulation.

**Motion for Protective Order**

20.     CCH has also indicated in court filings and during Rule 37 talks with plaintiff's counsel that it intends to subpoena 21st Century's clients.  There is no reasonable justification for bothering plaintiff's clients, who have nothing to do with this case, with a subpoena, and 21st Century therefore requests that the Court issue a protective order preventing such.

21.     Fed.R.Civ.P. 26(c) permits the Court to issue a protective order:

(c) Protective Orders.

(1) In General.

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending — or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

22.     Again, any attempt to contact the clients of 21st Century would be an impermissible fishing expedition. *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d, 923, 927 (7th Cir. 2004); *Sirazi v. Panda Express, Inc.*, No. 08 C 2345, 2009 WL 4232693, at *3 (N.D. Ill. Nov. 24, 2009). CCH has not shown any need for the documents, and has not identified any information that *might* exist therein, or be held by 21st Century's clients, that would justify the intrusion and burden of permitting such discovery.

23.     Furthermore, the tax preparer-client relationship is a delicate one, and having CCH, a potential competitor of 21st Century, contacting these persons in order to snoop around without any real goal may lead to either 21st Century losing the client, and/or CCH gaining a client.

24.     For these reasons, 21st Century requests that this Court issue an order preventing CCH from attempting to contact its clients. Those persons have nothing to do with this case, and CCH should not be bothering them.

WHEREFORE, 21st Century respectfully requests that this Court enter an order quashing the subpoena attached as Exhibit A, and prohibiting CCH from attempting to contact 21st Century's clients.


Respectfully submitted,

/s/ Alexander H. Burke


Alexander H. Burke

## BURKE LAW OFFICES, LLC

155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

# Exhibit A

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of Illinois

| Nicholas Martin | ) |
|---|---|
| *Plaintiff* | ) |
| v. | ) |
| CCH, Inc. | ) |
| *Defendant* | ) |

Civil Action No.  10-cv-3494

(If the action is pending in another district, state where: )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  21st Century Tax Services, Inc., c/o Alex Burke, Burke Law Offices, LLC
  155 North Michigan Avenue, Suite 9020, Chicago, IL 60601; e-mail: ABurke@BurkeLawLLC.com

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Attached Rider

| Place:  77 West Wacker Drive, Suite 4100, Chicago, IL 60601-1818 | Date and Time:  04/11/2011 9:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  ___04/04/2011___

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

OR

_Sarah Zielinski_
*Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* ____CCH, Inc.____ , who issues or requests this subpoena, are:

Sarah A. Zielinski, McGuireWoods LLP, 77 West Wacker Drive, Suite 4100, Chicago, IL 60601-1818;
e-mail address:  szielinski@mcguirewoods.com; telephone: 312-849-8100

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  10-cv-3494

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*    21st Century Tax Services, Inc.

was received by me on *(date)*    04/04/2011    .

☑ I served the subpoena by delivering a copy to the named person as follows:    by sending a copy of same

to Alex Burke, who has agreed to accept servies on behal fo 21st Century Tax Services, Inc., via e-mail and

United States first class mail                                on *(date)*    04/04/2011    ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $                    for travel and $                    for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date:    04/04/2011

*Server's signature*

Sarah Zielinski, Attorney
*Printed name and title*
77 West Wacker Drive, Suite 4100, Chicago, IL 60601-1818

*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***

**(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

**(A) *When Required.*** On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

**(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.

**(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***

**(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## Rider to Subpoena

**Instructions**

1.    For each document request herein to which you seek not to respond under a claim of privilege, discovery immunity, or for any other reason, provide a statement that sets forth the privilege, privileges, immunity or immunities asserted.

2.    These document requests are continuing. In the event that any responsive information, documents, or materials come to your attention or come into your knowledge, possession, custody or control after the filing of your responses hereto, you are directed to supplement your responses to these requests and to produce the requested documents.

3.    The particularity or generality of any enumerated document request does not limit the scope of any other paragraph.

4.    If an objection is made, the reasons shall be separately stated, with specificity..

5.    Unless otherwise noted, the time period for these document requests is from January 1, 2001 to the present.

**Definitions**

1.    Document. The meaning of the term "document" includes any recorded, printed, typewritten, or handwritten matter, or reproduction thereof, of whatever character, including without limitation, correspondence, memoranda, tape recordings, minutes of meetings or conferences, contracts, agreements, drafts, letters, telegrams, telexes, e-mails, facsimiles, handwritten or typewritten notes, reports, summaries, charts, graphs, logs, lists, calendars, diaries, studies, analysis, data computations, and computer printouts, whether original or copies.

2.      Person.  The term "person" is defined as any natural person or any business, legal or governmental entity or association.

**Document Requests**

1.      All documents relating to 21st Century Tax Services, Inc. including, but not limited to the articles of incorporation, annual reports, bylaws, and documents identifying the officers, directors, members, and employees of 21st Century Tax Services, Inc.

2.      Any and all documents showing either the name and/or contact information for any person or entity associated with 21st Century Tax Services, Inc.

3.      Any and all documents where phone number 630-■■■-3271 is depicted as the phone number for 21st Century Tax Services, Inc.

4.      Any and all advertisements for 21st Century Tax Services, Inc.

5.      All federal and state income tax returns and any supporting documentation filed by 21st Century Tax Services, Inc. in the past five years.

6.      All federal and state income tax returns and any supporting documentation filed by 21st Century Tax Services, Inc. on behalf of any other persons or businesses in the past two years.

7.      Phone billing records for any and all phones used by 21st Century Tax Services, Inc. to make or receive telephone calls from June 8, 2006 to June 8, 2010.

8.      A list of all clients and/or prospective clients of 21st Century Tax Services, Inc., including the client's name, address, telephone number, and contact person, for the past two years.

9.    A list of all third parties to whom 21 Century Tax Services, Inc. has provided phone number 630-███-3271 for the past two years.

# Exhibit B

## Alex Burke

| | |
|---|---|
| **From:** | Alex Burke <ABurke@BurkeLawLLC.com> |
| **Sent:** | Monday, April 11, 2011 4:33 PM |
| **To:** | 'Zielinski, Sarah A.' |
| **Cc:** | 'Groh, Susan E.'; 'Hartsell, David L.' |
| **Subject:** | Subpoena to 21st Century Tax Services, Inc. Objection |
| **Attachments:** | 21st Century Responses to Subpoena.pdf |

Counsel,

21st Century Tax Services, Inc. ("21st Century") objects to this subpoena.  Before we go into some of the specific objections, please know that we are trying in good faith to provide defendant with what it needs in order to assert any defense that is supported by the facts.

Indeed, we understand that part of CCH's "prior express consent" defense is that it had consent to call the phone number because 21st Century held the number out as its phone number.  While we do not believe this will win the day as to "prior express consent" because the phone number was never provided to CCH, we understand that CCH might be entitled make the argument that having a phone number that is used in advertisements, gave to clients and submitted to the IRS somehow meant that CCH could autodial the number.  We also understand that this is the reason CCH wants the information sought in its subpoena.

We note that plaintiff and 21st Century Tax Services, Inc. have attempted to voluntarily provide the information requested in the subpoena.  To wit, on April 6, 2011 (below), we offered that the parties stipulate to the following:

> Plaintiff Nicholas Martin stipulates that 21st Century Tax [Services, Inc.] held 630-███ 3271 out to be its phone number when it filed tax returns on behalf of its clients, when it communicated with customers and prospective customers, when it advertised and when it communicated with third parties.  21st Century Tax did not provide any such information to CCH, Inc. or any of its affiliates

This proposal would give CCH what it wants, and would permit 21st Century to maintain the strict confidentiality of its clients and clients' information.  Sarah Zielinski responded on April 6, stating that CCH would not agree to any stipulation unless plaintiff stipulated that he consent to receive the calls.  We do not think this is a good faith effort to resolve the issue, and request that the parties continue to meet and confer.  Frankly, before CCH filed its related motion to compel, we believe that CCH was still considering this proposal.

Second, we note that CCH was compelled to provide all information and documents concerning its affirmative defense, and has not produced a shred of information concerning plaintiff or 21st Century.  This subpoena is therefore a fishing expedition, designed to harass plaintiff and his livelihood, and also with the promise to bother 21st Century's clients in the fiture.

Third, the subpoena asks that 21st Century, a tax preparation company, provide information concerning its clients to CCH.  This information would violate 26 C.F.R § 301.7216–1, which makes it a crime for plaintiff or 21st Century to provide this information.

Fourth, the subpoena provides only seven calendar days to respond.  Pursuant to Federal Rules 34 and 45, a party has 30 days within which to respond to document requests.  Even if there was no 30 day rule, seven days is not a reasonable amount of time to respond.  For this reason, and because we question whether this subpoena is appropriate at all given the above, we have not yet done a privilege log.

Fifth, the scope of materials sought is exceedingly overbroad.  For example, it is unfair to ask 21st Century for "all documents regarding 21st Century…" as item 1 on the document rider does.  The same goes with asking for all documents that show contact information for "any person or entity associated with"  21st Century.

Sixth, the chronological scope of the request is overly broad, going back ten years.  There is no justification for asking for materials going back this far.

We urge CCH to please reconsider its position with regard to the stipulation.  We think it provides CCH with everything it could possibly get through the subpoena, and will avoid causing 21st Century to have to go through the materials requested, which are improper in the first place.

We will likely be filing a motion to quash the subpoena in order to preserve 21st Century's objections, but request that the parties meet and confer so that they can figure out how to get CCH what it wants, without the burden of having to respond fully to this inappropriate subpoena.  Even after the motion to quash, the parties should continue to meet and confer.

Alex Burke

Burke Law Offices, LLC

155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

The information transmitted through this communication is intended only for the addressee and may contain confidential and/or privileged material. Any unauthorized interception, review, retransmission, dissemination, or other use of, or taking of any action upon this information by persons or entities other than the intended recipient is prohibited and may subject the unauthorized person or entity to criminal or civil liability. If you received this communication in error, please contact us immediately at (312) 729-5288, and delete the communication from any computer or network system.  This message is not intended to create an attorney-client relationship.  Unless you have entered into a written, signed document entitled "Authorization" with Burke Law Offices, LLC, the firm does not represent you.

**From:** Zielinski, Sarah A. [mailto:SZielinski@mcguirewoods.com]
**Sent:** Wednesday, April 06, 2011 5:32 PM
**To:** Alex Burke
**Cc:** Groh, Susan E.; Hartsell, David L.
**Subject:** RE: Your Motion to Compel

Hi Alex,

As I'm sure you have figured out, the reason that we are seeking discovery related to Martin's distribution of his cell phone number as the business number for 21st Century Tax is to establish our defense of consent.  As the Seventh Circuit stated in the CE Limited case, consent is a case-by-case analysis that depends on how and to whom the phone number in question was distributed.  So, unless you are willing to stipulate that Martin consented to be called, a stipulation is not going to eliminate our need for discovery on this issue.

**Sarah A. Zielinski**
McGuireWoods LLP
77 West Wacker Drive
Suite 4100
Chicago, IL 60601-1818
312.849.8288 (Direct Line)
312.849.3690 (Direct FAX)
szielinski@mcguirewoods.com

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

**From:** Alex Burke [mailto:ABurke@BurkeLawLLC.com]
**Sent:** Wednesday, April 06, 2011 12:09 PM
**To:** Zielinski, Sarah A.; Groh, Susan E.; Hartsell, David L.
**Subject:** Your Motion to Compel

Sarah,

I was surprised to see your motion to compel, because I did not think we were finished talking about these matters.

In particular, we offered to stipulate that 21st Century Tax held the relevant telephone number out as its phone number. I thought you were going to get back to me if this was acceptable.

The stipulation we propose, if CCH is amenable to withdrawing this portion of its motion to compel, is as follows: "Plaintiff Nicholas Martin stipulates that 21st Century Tax held 630-███-3271 out to be its phone number when it filed tax returns on behalf of its clients, when it communicated with customers and prospective customers, when it advertised and when it communicated with third parties. 21st Century Tax did not provide any such information to CCH, Inc. or any of its affiliates."

Please let me know if this would be acceptable to moot sections I and II of your motion to compel.

Alex

BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

The information transmitted through this communication is intended only for the addressee and may contain confidential and/or privileged material. Any unauthorized interception, review, retransmission, dissemination, or other use of, or taking of any action upon this information by persons or entities other than the intended recipient is prohibited and may subject the unauthorized person or entity to criminal or civil liability. If you received this communication in error, please contact us immediately at (312) 729-5288, and delete the communication from any computer or network system. This message is not intended to create an attorney-client relationship. Unless you have entered into a written, signed document entitled "Authorization" with Burke Law Offices, LLC, the firm does not represent you.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN, on behalf of himself and others similarly situated, | ) ) | |
| Plaintiff, | ) | 1:10-cv-3494 |
| | ) | |
| | ) | Judge Dow |
| v. | ) | |
| | ) | |
| CCH, INCORPORATED, | ) | |
| Defendant. | ) | JURY DEMANDED |
| | ) | |

**THIRD PARTY 21ST CENTURY TAX SERVICES, INC'S
RESPONSES AND OBJECTIONS TO CCH'S SUBPOENA**

Document Requests

**1. All documents relating to 21 st Century Tax Services, Inc. including, but not limited to the articles of incorporation, annual reports, bylaws, and documents identifying the officers, directors, members, and employees of 21 st Century Tax Services, Inc.**

Response: Respondent objects because CCH has not provided enough time for respondent to adequately respond. Further, this request is not reasonably calculated to lead to admissible evidence. The request is also overly broad; it is unreasonable to ask a company to produce "all documents relating to" the company. Some documents may also be subject to the attorney-client privilege and work product doctrine. However, this request is so broad that it would be impossible to provide a privilege log. Further, defendant's discovery responses show that defendant has no information that plaintiff consented to receive calls from plaintiff. The requests are therefore amount to an impermissible fishing expedition.

Plaintiff further objects because providing some of this information would violate 26 U.S.C. §7216, and its implementing/corresponding regulation, 26 C.F.R § 301.7216–1, which makes it a crime for plaintiff or 21st Century to provide this information, and 26 U.S.C. §6103, which prevents production of such information, too. Prudential and privacy reasons, too, mitigate against forcing a tax preparation company to provide its clients' tax returns to a third party.

To the extent that the requesting party would like to know the extent of respondent's use of phone number 630-■■■ 2371, respondent states that its "articles of incorporation, annual reports, bylaws, and documents identifying the officers, directors, members, and employees of 21 st Century Tax Services, Inc." each will identify that phone number as the phone number of 21st Century Tax Services, Inc.

**2. Any and all documents showing either the name and/or contact information for any person or entity associated with 21 st Century Tax Services, Inc.**

Response:  Respondent objects because CCH has not provided enough time for respondent to adequately respond.  Further, this request is not reasonably calculated to lead to admissible evidence.  The request is also overly broad; it is unreasonable to ask a company to produce "all documents showing the name" of any person "associated" with the company.  Some documents may also be subject to the attorney-client privilege and work product doctrine.  However, this request is so broad that it would be impossible to provide a privilege log.  Further, defendant's discovery responses show that defendant has no information that plaintiff consented to receive calls from plaintiff.  The requests are therefore amount to an impermissible fishing expedition.
are therefore amount to an impermissible fishing expedition.

Plaintiff further objects because providing some of this information would violate 26 U.S.C. §7216, and its implementing/corresponding regulation, 26 C.F.R § 301.7216–1, which makes it a crime for plaintiff or 21st Century to provide this information, and 26 U.S.C. §6103, which prevents production of such information, too.  Prudential and privacy reasons, too, mitigate against forcing a tax preparation company to provide its clients' tax returns to a third party.

To the extent that the requesting party would like to know the extent of respondent's use of phone number 630-███ 2371, respondent states that it provided this phone number to lots of people, but never to defendant.

**3. Any and all documents where phone number 630-███-3271 is depicted as the phone number for 21 st Century Tax Services, Inc.**

Response:  Respondent objects because CCH has not provided enough time for respondent to adequately respond.  Further, this request is not reasonably calculated to lead to admissible evidence.  The request is also overly broad; it is unreasonable to ask a company to produce "all documents relating to" the company.  Some documents may also be subject to the attorney-client privilege and work product doctrine.  However, this request is so broad that it would be impossible to provide a privilege log.  Further, defendant's discovery responses show that defendant has no information that plaintiff consented to receive calls from plaintiff.  The requests are therefore amount to an impermissible fishing expedition.
are therefore amount to an impermissible fishing expedition.

Plaintiff further objects because providing some of this information would violate 26 U.S.C. §7216, and its implementing/corresponding regulation, 26 C.F.R § 301.7216–1, which makes it a crime for plaintiff or 21st Century to provide this information, and 26 U.S.C. §6103, which prevents production of such information, too.  Prudential and privacy reasons, too, mitigate against forcing a tax preparation company to provide its clients' tax returns to a third party.

To the extent that the requesting party would like to know the extent of respondent's use of phone number 630-█ 2371, respondent states that lots of documents will show that this phone number was provided as the contact number for 21 st Century Tax Services, Inc. to lots of people, but was never provided to defendant.

## 4. Any and all advertisements for 21 st Century Tax Services, Inc.

Response:  Respondent objects because CCH has not provided enough time for respondent to adequately respond.  Further, this request is not reasonably calculated to lead to admissible evidence.  The request is also overly broad; it is unreasonable to ask a company to produce "all documents relating to" the company.  Some documents may also be subject to the attorney-client privilege and work product doctrine.  However, this request is so broad that it would be impossible to provide a privilege log.  Further, defendant's discovery responses show that defendant has no information that plaintiff consented to receive calls from plaintiff.  The requests are therefore amount to an impermissible fishing expedition.
are therefore amount to an impermissible fishing expedition.

Plaintiff further objects because providing some of this information would violate 26 U.S.C. §7216, and its implementing/corresponding regulation, 26 C.F.R § 301.7216–1, which makes it a crime for plaintiff or 21st Century to provide this information, and 26 U.S.C. §6103, which prevents production of such information, too.  Prudential and privacy reasons, too, mitigate against forcing a tax preparation company to provide its clients' tax returns to a third party.

To the extent that the requesting party would like to know the extent of respondent's use of phone number 630-█ 2371, respondent states that lots of documents will show that this phone number was provided as the contact number for 21 st Century Tax Services, Inc. to lots of people, but was never provided to defendant.

## 5. All federal and state income tax returns and any supporting documentation filed by 21 st Century Tax Services, Inc. in the past five years.

Response:  Respondent objects because CCH has not provided enough time for respondent to adequately respond.  Further, this request is not reasonably calculated to lead to admissible evidence.  Some documents may also be subject to the attorney-client privilege and work product doctrine.  However, this request is so broad that it would be impossible to provide a privilege log.  Further, defendant's discovery responses show that defendant has no information that plaintiff consented to receive calls from plaintiff.  The requests are therefore amount to an impermissible fishing expedition.
P are therefore amount to an impermissible fishing expedition.

Plaintiff further objects because providing some of this information would violate 26 U.S.C. §7216, and its implementing/corresponding regulation, 26 C.F.R § 301.7216–1, which

makes it a crime for plaintiff or 21st Century to provide this information, and 26 U.S.C. §6103, which prevents production of such information, too.  Prudential and privacy reasons, too, mitigate against forcing a tax preparation company to provide its clients' tax returns to a third party.

To the extent that the requesting party would like to know the extent of respondent's use of phone number 630-██ 2371, respondent states that lots of documents will show that this phone number was provided as the contact number for 21 st Century Tax Services, Inc. to lots of people, but was never provided to defendant.

**6. All federal and state income tax returns and any supporting documentation filed by 21 st Century Tax Services, Inc. on behalf of any other persons or businesses in the past two years.**

Response:  Respondent objects because CCH has not provided enough time for respondent to adequately respond.  Further, this request is not reasonably calculated to lead to admissible evidence.  Some documents may also be subject to the attorney-client privilege and work product doctrine.  However, this request is so broad that it would be impossible to provide a privilege log.  Further, defendant's discovery responses show that defendant has no information that plaintiff consented to receive calls from plaintiff.  The requests are therefore amount to an impermissible fishing expedition.
are therefore amount to an impermissible fishing expedition.
Plaintiff further objects because providing some of this information would violate 26 U.S.C. §7216, and its implementing/corresponding regulation, 26 C.F.R § 301.7216–1, which makes it a crime for plaintiff or 21st Century to provide this information, and 26 U.S.C. §6103, which prevents production of such information, too.  Prudential and privacy reasons, too, mitigate against forcing a tax preparation company to provide its clients' tax returns to a third party.

To the extent that the requesting party would like to know the extent of respondent's use of phone number 630-██ 2371, respondent states that its "articles of incorporation, annual reports, bylaws, and documents identifying the officers, directors, members, and employees of 21 st Century Tax Services, Inc." each will identify that phone number as the phone number of 21st Century Tax Services, Inc.

**7. Phone billing records for any and all phones used by 21 st Century Tax Services, Inc. to make or receive telephone calls from June 8, 2006 to June 8, 2010.**

Response:  Respondent objects because CCH has not provided enough time for respondent to adequately respond.  Further, this request is not reasonably calculated to lead to admissible evidence.  The request is also overly broad; it is unreasonable to ask a company to produce "all documents relating to" the company.  Some documents may also be subject to the attorney-client privilege and work product doctrine.  However, this request is so broad that it

would be impossible to provide a privilege log.  Further, defendant's discovery responses show that defendant has no information that plaintiff consented to receive calls from plaintiff.  The requests are therefore amount to an impermissible fishing expedition.

**8. A list of all clients and/or prospective clients of 21 st Century Tax Services, Inc., including the client's name, address, telephone number, and contact person, for the past two years.**

      Response:  Respondent objects because CCH has not provided enough time for respondent to adequately respond.  Further, this request is not reasonably calculated to lead to admissible evidence.  The request is also overly broad; it is unreasonable to ask a company to produce "all documents relating to" the company.  Some documents may also be subject to the attorney-client privilege and work product doctrine.  However, this request is so broad that it would be impossible to provide a privilege log.  Further, defendant's discovery responses show that defendant has no information that plaintiff consented to receive calls from plaintiff.  The requests are therefore amount to an impermissible fishing expedition.
are therefore amount to an impermissible fishing expedition.

      Plaintiff further objects because providing some of this information would violate 26 U.S.C. §7216, and its implementing/corresponding regulation, 26 C.F.R § 301.7216–1, which makes it a crime for plaintiff or 21st Century to provide this information, and 26 U.S.C. §6103, which prevents production of such information, too.  Prudential and privacy reasons, too, mitigate against forcing a tax preparation company to provide its clients' tax returns to a third party.

      21st Century also objects because this request reads more like an interrogatory, rather than like a document request.  This list does not currently exist, so it cannot be produced.

**9. A list of all third parties to whom 21st Century Tax Services, Inc. has provided phone number 630-███-3271 for the past two years.**

      Response:  Respondent objects because CCH has not provided enough time for respondent to adequately respond.  Further, this request is not reasonably calculated to lead to admissible evidence.  The request is also overly broad; it is unreasonable to ask a company to produce "all documents relating to" the company.  Some documents may also be subject to the attorney-client privilege and work product doctrine.  However, this request is so broad that it would be impossible to provide a privilege log.  Further, defendant's discovery responses show that defendant has no information that plaintiff consented to receive calls from plaintiff.  The requests are therefore amount to an impermissible fishing expedition.
are therefore amount to an impermissible fishing expedition.

      Plaintiff further objects because providing some of this information would violate 26 U.S.C. §7216, and its implementing/corresponding regulation, 26 C.F.R § 301.7216–1, which makes it a crime for plaintiff or 21st Century to provide this information, and 26 U.S.C. §6103, which prevents production of such information, too.  Prudential and privacy reasons, too,

mitigate against forcing a tax preparation company to provide its clients' tax returns to a third party.

21st Century also objects because this request reads more like an interrogatory, rather than like a document request. This list does not currently exist, so it cannot be produced.


/s/Alexander H. Burke
Counsel for 21st. Century Tax Services, Inc.


**BURKE LAW OFFICES, LLC**

155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

# Exhibit C

1          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3   NICHOLAS MARTIN, on behalf      )
    of himself and others           ) Docket No. 10 C 3494
4   similarly situated,             )
                                    ) Chicago, Illinois
5               Plaintiff,          ) December 7, 2010
                                    ) 9:30 a.m.
6          v                        )
                                    )
7   CCH, Incorporated,              )
                                    )
8               Defendant           )
                                    )
9

10              TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE MARTIN C. ASHMAN
11

12  PRESENT:

13  For the Plaintiff:       ALEXANDER H. BURKE
                             Burke Law Offices, LLC
14                           155 North Michigan Avenue
                             Suite 9020
15                           Chicago, Illinois  60601

16  For the Defendant:       SUSAN E. GROH
                             77 West Wacker Drive
17                           Suite 4100
                             Chicago, Illinois  60601
18

19
    (TRANSCRIBED FROM DIGITAL RECORDING.)
20

21
    Court Reporter:          Lois A. LaCorte
22                           219 South Dearborn  Room 1918
                             Chicago, Illinois 60604
23                           (312) 435-5558

24

25

1        THE CLERK:  10 C 3494, Martin v CCH.

2        MR. BURKE:  Good morning, Judge, Alexander Burke for the

3    plaintiff.

4        MS. GROH:   Good morning, your Honor, Susan Groh on

5    behalf of the defendant CCH.

6        THE COURT:   Good morning.  All right, we have

7    plaintiff's motion to compel.

8        MR. BURKE:   That's right, Judge.  We issued discovery

9    about a month ago and I have gotten almost nothing.  We tried

10   to work through this with counsel, several long telephone

11   conversations, long e-mails, still have nothing, so we moved

12   to compel.  There are five categories of requests that --

13       THE COURT:   Let's take them one by one.

14       MR. BURKE:   I would like to start with Section C, which

15   has to do with the dialer and the prerecorded messages and the

16   procedures that the defendant has to make the auto dialed and

17   prerecorded calls.

18       Probably the most fundamental request -- this is on page

19   10 of 15 of our motion -- probably the most fundamental

20   request is interrogatory 5, which asks the defendant to

21   explain their policies, practices, and procedures regarding

22   the use of predictive dialers and prerecorded messages going

23   back to when they began using such.  The defendant provided no

24   substantive response to this interrogatory.

25       MS. GROH:   Judge, if I may, plaintiff served extensive

1   discovery requests on the defendant before we even filed our

2   answer in this case.  As a result, plaintiff's discovery is

3   overbroad, unduly burdensome, and irrelevant.  To a large

4   extent --

5        THE COURT:   Would you speak a little louder.

6        MS. GROH:   Sure.

7        THE COURT:   And speak into the mike.

8        MS. GROH:   Sure.

9        THE COURT:   Thank you.

10       MS. GROH:   As I was saying, Judge, plaintiffs served

11  extensive discovery requests on defendant before we even had a

12  chance to answer the complaint.  As a result, most of this

13  discovery is extremely broad and irrelevant.

14       Plaintiff requested a Rule 37 conference, which we spent

15  several hours on the phone discussing various issues.  In

16  those conversations we provided plaintiff with detailed

17  information about how our calling campaigns work and took him

18  through the steps of that.  As a result of these

19  conversations, plaintiff has served us with a second set of

20  discovery which are much more narrowed and focused than his

21  first set of discovery.

22       THE COURT:   Is it on the same subject?

23       MS. GROH:   Largely, yes, your Honor.

24       MR. BURKE:   Some of it is on the same subject, but I

25  think it's two interrogatories and three document requests or

1   something. I mean, I think --

2      THE COURT: Do you have another discovery request that

3   is on this subject?

4      MS. GROH: Yes, your Honor.

5      THE COURT: I'm asking him.

6      MR. BURKE: I think that it touches on some of the

7   subjects that are requested in interrogatory 5, but I don't

8   think that it nullifies interrogatory 5. I mean, I think this

9   is --

10      THE COURT: How many times do you want them to answer it

11   though?

12      MR. BURKE: If I get a full response to 5, I'll withdraw

13   the second set of discovery.

14      THE COURT: Well, but what she is saying is if you come

15   up with the second set, the answer to the second set will

16   suffice for this.

17      What does your second set of interrogatories, what does

18   it ask about this subject?

19      MR. BURKE: I don't have it with me, Judge.

20      THE COURT: Well, do you have it with you?

21      MS. GROH: I do have it with me, your Honor.

22      THE COURT: All right. Let's hear what it says.

23      MS. GROH: As an example, as plaintiff is indicating,

24   his request relating to the dialer, he asks for every single

25   document that relates in any way to our telephone equipment.

1  In our conversations --

2       THE COURT:   This one says for you to identify and

3  explain the written and unwritten policies, practices, et

4  cetera.

5       MS. GROH:   Sure, and in our conversations pursuant to

6  Rule 37 plaintiff clarified that he was looking for the dialer

7  manuals.  In his second set of requests he specifically

8  requests the dialer manuals, which we are happy to produce

9  when they are due on December 20th, which is two weeks from

10 today.

11      THE COURT:   Do you agree that that's what you wanted

12 here?

13      MR. BURKE:   I mean, Judge, I issued that second set of

14 discovery to appease the defendant.  I mean, we had a long

15 discussion about whether document request 19 that's on the

16 same page as interrogatory 5 sufficiently asks for telephone

17 manuals.  It asks for all manuals, communications and other

18 documents related to telephony, hardware, software and other

19 telephone equipment.  I mean, these requests are reasonable.

20 I'm asking him -- because these are the most basic requests.

21      THE COURT:   This is the point that's being made.  The

22 point that's being made is you have got a more restrictive

23 apparently interrogatory or document request on the same

24 subject and that, as a result of your conference, that was

25 something you agreed to that that's what you wanted.  So why

1  do you want this?

2    MR. BURKE:  No, Judge, I didn't agree that the second set

3  of discovery was going to supersede the first set of

4  discovery.  I mean, when I issued those requests I was still

5  seeking responses to these requests for which I have no

6  responses.

7    I'm willing at this point to withdraw the second set of

8  discovery and seek full responses to this discovery.

9    MS. GROH:   Judge, I would suggest that we wait two weeks

10  and let us respond to the second set of discovery and if

11  plaintiff still has some issue with our responses, then he can

12  renotice this motion, but at this time I believe it's

13  premature to address these issues when our discovery isn't due

14  for two weeks.

15    MR. BURKE:  This discovery has been due for three months.

16  And I have been working for three months --

17    THE COURT:  He has just withdrawn his second set, so

18  your argument with regard to the second -- the second set no

19  longer exists.  It is withdrawn as of record.

20    All right.  Now, why can't you answer Interrogatory

21  No. 5?

22    MS. GROH:   Interrogatory No. 5 is overly broad and

23  unduly burdensome, and that's the basis of our --

24    THE COURT:  Explain the written policies in document

25  request No. 5, come up with all the documents, why can't you

1 do that?

2     MS. GROH: As we objected, your Honor, this request is

3 asking for every single document. It's not tailored at all in

4 any way to the circumstances of this case. As we have

5 identified to the plaintiff, we don't have any class

6 information so his claim is based on one phone call that was

7 made to the plaintiff. Based on that, this is completely

8 overbroad.

9     THE COURT: Well, this is a putative class action, isn't

10 it? It's a class action or an attempt at a class action. So

11 you're saying this is not relevant? What is your answer?

12     MS. GROH: Our answer is that it's overbroad. He is

13 asking for every single policy --

14     THE COURT: I don't think it's overbroad at all. The

15 motion to compel interrogatory No. 5 and document request No.

16 5 is granted. Okay, next.

17     MR. BURKE: Let's see, document request 3, a copy of the

18 recordings that the defendant used with its dialer to make

19 these unsolicited telephone calls.

20     MS. GROH: I'm sorry, what number was that?

21     MR. BURKE: Document request 3. Just by matter of

22 background, your Honor, the TCPA portion of this case has to

23 do with prerecorded telephone solicitations to purchase or to

24 sell tax software.

25     THE COURT: Yes, I read the complaint.

1    MR. BURKE:  Okay.

2    MS. GROH:  Our response to document request No. 3 in our

3    Rule 37 conference with plaintiff is that we have no recording

4    of this phone call.

5    THE COURT:  Well, did you answer to that effect?

6    MS. GROH:  We indicated to plaintiff that we would

7    supplement our answer to that effect.

8    MR. BURKE:  Judge, I suspect that we have a little bit --

9    and maybe I'm wrong, but a little bit of sharpshooting going

10   on here.  What counsel just said is they have no recording of

11   the telephone call to plaintiff, but what we're asking for

12   here is a copy of the recordings that they used with their

13   dialer during the class period.

14   MS. GROH:  To the plaintiff's phone number.

15   MR. BURKE:  Or any other person in the class.

16   THE COURT:  It says and for the call to any person

17   responsive to interrogatory No. 3.

18   MR. BURKE:  Which is the class list for the

19   interrogatory.

20   THE COURT:  So that's a recording more than just to the

21   plaintiff's telephone number.

22   MS. GROH:  We indicated to plaintiff that we would agree

23   to supplement this.

24   THE COURT:  So you agree that you will provide this?

25   MS. GROH:  My understanding is that we have no data on

1  this, so we would supplement our response to state that.

2      THE COURT:   Then what do you mean you're going to

3  supplement?

4      MS. GROH:   We would supplement our response to the

5  interrogatory -- to the request to produce to state that there

6  is no copy of any recordings responsive to this request.

7      THE COURT:   Well, if there is no -- it's hard to believe

8  that there is no copy.  So I think what you need to do is also

9  provide, have somebody from the company provide what search

10  they made, what happened to any recordings, when it happened.

11  You have got to get into the detail of the search and the

12  detail of whatever happened to these recordings or this

13  recording.

14      MR. BURKE:   I suspect that where they're coming from is

15  they're going to say "Well, we don't know which recording we

16  used with which class member."  And I think that the document

17  request -- or maybe they just destroyed the recording, I'm not

18  sure.

19      THE COURT:   I don't know, and there is no point in your

20  speculating or the court speculating.  I want a detailed

21  response as to what happened to any recordings, when it

22  happened, under whose authority it happened, what the search

23  consisted of, and any other detail with regard to why these

24  recordings -- why you don't have these recordings at this

25  time.

1    MS. GROH:  Sure, Judge.

2    THE COURT:  Next.

3    MR. BURKE:  Judge, skipping over 13 because I think that

4    it's included in document request 15.

5    THE COURT:  Okay.

6    MR. BURKE:  All documents, contracts, e-mails, or

7    agreements concerning use of your predictive dialer for

8    recorded messages.

9    THE COURT:  E-mails or agreements.  I don't even

10   understand what you mean there.  What agreements are you

11   referring to?

12   MR. BURKE:  Well --

13   THE COURT:  You buy an autodialer and it dials.

14   MR. BURKE:  Well, when we filed the case I wasn't sure if

15   they did the dialing in-house or out of house, so we have

16   learned at least through counsel's representation to Judge

17   Dow, not through these discovery responses, that the defendant

18   has an in-house dialer.  So you know, if there are

19   communications with -- pardon me, contracts, maybe there is a

20   contract for purchase of the dialer or maintenance of the

21   dialer.  Perhaps if there is a third-party that's --

22   THE COURT:  What's the relevance of that?

23   MR. BURKE:  Well, say, for example, they have a

24   third-party vendor maintain the dialer and that third-party

25   vendor has access to or has downloaded data regarding which

1 calls it made to whom at what time, the very data that the

2 defendant says does not exist, that would be -- the identity

3 of that third-party would be revealed in the response to

4 document request 15.

5      Similarly, I suspect, although counsel says it's not

6 true, that when sales associates wanted to do a dialer

7 campaign, they e-mailed somebody saying "Hey, I want to do

8 this dialer campaign, you know, please, have the dialer call

9 this set of people from the database," that information would

10 be probably in an e-mail or a memo.

11      Defendant tells me that the sales agents walked over to

12 this guy Brian Holbrook at the office in Atlanta and verbally

13 asked for a dialer campaign to be done and the dialer campaign

14 was done without any, any documentation at all.

15      MS. GROH:   To that, Judge, as we told plaintiff in our

16 Rule 37 conference, mostly what was done was, you know, in

17 sales everything has to be prompt and fast.  It was mostly

18 face-to-face contact.  There may have been some e-mails that

19 were sent.  However, the information that was contained in the

20 e-mails was contained in scripts that were run against the

21 database, which we have, we have copies of the script and

22 we're happy to provide that to plaintiff's counsel.  They're

23 more inclusive and more responsive than the e-mails

24 themselves, so we feel that those would be irrelevant.

25      THE COURT:   I think document request 15 is not too broad

1   and I think it ought to be answered.  It certainly is relevant

2   as to what was told to who with regard to doing these dialings

3   and, of course, what the script was.  So all documents -- I'm

4   not so sure that the purchase of a dialing system, I don't

5   think you need to provide any contract with regard to that,

6   but any other use of the dialing system, documents, contracts,

7   e-mails or agreements, that certainly is relevant and not very

8   broad at all.  So the motion to compel document request 15 is

9   granted.  What's next?

10          MR. BURKE:  Skipping down to 19, please.

11          THE COURT:   Okay.

12          MR. BURKE:  Manuals, communications, other documents

13   relating to the telephony hardware, software and other

14   telephone equipment.  What I understand --

15          THE COURT:   Is that a -- telephony, is that on purpose?

16          MR. BURKE:  Yes, I think that's a word.

17          THE COURT:   Is it really a word?

18          MR. BURKE:  Telephony.

19          THE COURT:   Telephony.

20          MR. BURKE:  Yes.

21          THE COURT:   I'll go look it up.

22          MR. BURKE:  What we are looking for here, Judge, is --

23   well, based on Rule 37 talks we understand that there is some

24   database from which the telephone numbers that the dialer

25   called is taken.  We understand that there is a dialer and

1    that there is some process by which the -- that the sales

2    agents asked Brian Holbrook to make these calls.  Of course,we

3    don't have the full responses to interrogatory 5 so I don't

4    have anything sworn that says that this is what happens, but

5    this is what has been explained to me.

6          In order to hire an expert, which I think I'm going to

7    have to do in this case to help me sort through this, through

8    this E discovery, I need to know what type of telephones they

9    have, what kind of dialer they have, what kind of database

10    this is that operates with the dialer to make these calls, and

11    how these things interact.  So that's the primary basis for

12    the document request.

13         MS. GROH:   If I may respond to that, your Honor, just,

14    as plaintiffs describe in detail, that's the type of discovery

15    request that we could respond to, but in this discovery

16    request where he is asking for all manuals, communications and

17    other documents related to all of our telephone software and

18    hardware, he is not limiting it to the dialer in issue.  It's

19    all --

20         THE COURT:   The motion to compel is granted with regard

21    to the automatic dialing system rather than all telephones.

22         MR. BURKE:  So the telephone --

23         THE COURT:   It excludes regular telephone calls.

24         MR. BURKE:  Okay, we will work with that.  I think that

25    there may be overlap, so there --

1      THE COURT:   Well, yes, certainly there may be overlap,

2   but you're not entitled to all of their information regarding

3   their regular telephone system.

4      MR. BURKE:   I don't care about that stuff.

5      THE COURT:   Just the auto dialling.  So the motion to

6   compel is granted to that limited extent only.  Next.

7      MR. BURKE:   Going back to section 8 please, page 6.

8      THE COURT:   Yes.

9      MR. BURKE:   These materials have to do with the class

10  list and documents and data concerning the class members.

11     THE COURT:   Are you talking about interrogatory 3 or

12  what?

13     MR. BURKE:   Interrogatory 3 -- beginning with

14  interrogatory 3, your Honor.

15     THE COURT:   All right.  I'll read it.

16     (Pause)

17     THE COURT:   Counsel, why don't you respond.

18     MS. GROH:   As we have indicated to plaintiff's

19  counsel --

20     THE COURT:   Pardon?

21     MS. GROH:   As we have indicated to plaintiff's counsel

22  in our Rule 37 conversations, we do not have any responsive

23  class data.

24     THE COURT:   You don't have the intended recipient, you

25  don't have communications attempted and completed, from the

1  recipients of these auto dialers?

2      MS. GROH:   No, your Honor, there is no business reason

3  for us to keep that data.  So they didn't keep it.  So we have

4  no records of phone calls made within this class period.

5      THE COURT:   How about the people who responded?  Didn't

6  somebody respond and buy your client's material?

7      MS. GROH:   I can't say.

8      THE COURT:   They were auto dialed and they responded.

9  You can't tell me you don't know them.

10      MS. GROH:   The records that we have don't, don't

11  indicate that one way or the other.  We don't have any records

12  to show the calls that were made.

13      MR. BURKE:   Furthermore, I suspect that they have a Do

14  Not Call list subject to the federal Do Not Call regulations.

15  Most states have similar Do Not Call regulations.

16      THE COURT:   But you're asking here for the intended

17  recipient and the communications to and from the person and

18  where they got the personal information, including the e-mail

19  and telephone number for these people.

20      MR. BURKE:   Yes.

21      THE COURT:   You don't have any documents with regard to

22  that?

23      MS. GROH:   I'm telling you that we can't, we can't

24  identify what phone calls were made from the dialer and we

25  have indicated this to plaintiff's counsel and we are willing

1    to supplement --

2        THE COURT:   So you could be dialing these people over

3    and over and over again, right, since you don't know who you

4    dialed in the first place or the second place.

5        MS. GROH:   That very well could be because that's not

6    information that we retain.

7        THE COURT:   That's very difficult to believe.  I want a

8    detailed exposition of how this works and why you do not have

9    the intended recipient of auto dialing.  You didn't dial

10   everybody in these states, did you?  It was limited in some

11   fashion.  Where did you get that limitation from?  You didn't

12   dial everybody, did you?

13       MS. GROH:   No, we had a database that had prospective

14   customers, existing customers.

15       THE COURT:   So you do have a list of prospective

16   customers.  That's the source.

17       MS. GROH:   But we do not have information of who on that

18   list were called.

19       MR. BURKE:   But they do have these database queries.

20       MS. GROH:   Yes, we have the database queries and we have

21   a database but even if you cross reference them it won't

22   indicate whether a phone call was made to that person.

23       THE COURT:   So once again, I say so that means you could

24   dial the same person twice or three times or ten times.

25       MS. GROH:   That very well could be.

1    THE COURT:   All right.   I want the database and I want

2  you to, and to produce the database and a detailed exposition

3  of how this works.

4    MR. BURKE:   I suspect that there are backup tapes or

5  something about the database that might help us recreate what

6  it looked like when these calls were queried.

7    MS. GROH:   We have run this down from two different

8  angles, your Honor.   We have looked at what was preserved and

9  then we have looked at what can be recreated, and as I have

10  said before, what was preserved is nothing, there is no

11  business reason for them to keep this data.

12    THE COURT:   Well, you mean there was some of this

13  information and it wasn't preserved?

14    MS. GROH:   There were calls that were made to --

15    THE COURT:   There were calls that were made and the

16  second after the call was made you didn't know to whom it was

17  made?

18    MS. GROH:   The way the dialer worked is it was

19  refreshed.   If it was refreshed, then the numbers that were

20  loaded in the dialer were deleted, all the records were

21  deleted, or if it was not refreshed, after 30 days it just

22  overwrote over itself.

23    So there is -- there is no compelling business reason for

24  us to preserve any of the data from the dialer.   What we have

25  done is, you know, try to figure out what was preserved, what

1   could be on the tapes, which is nothing, and then we have

2   tried to recreate what numbers were called based on what we

3   have.  There are a number of deficiencies with that process,

4   though, and like I said before, you can run the scripts

5   against the current database that we have.  However, we don't

6   have a historic database to indicate what calls -- what was in

7   the database at the time that these calls were made within the

8   class period.

9        And although we have the scripts, if you cross reference

10  the scripts against our current database, that still doesn't

11  show whether or not a call was made, it just shows that a list

12  was made based on that information.

13       THE COURT:   Well, take us through the list, the list

14  from which everything was made and the entire process --

15       MS. GROH:   We would be happy to do that --

16       THE COURT:   -- because it's difficult to believe that a

17  company would not keep track of who they called.  It's very

18  difficult to believe.

19       MS. GROH:   I understand that, but as -- the way this

20  business worked is they kept track of their customers, their

21  existing customers was very important to them, but prospective

22  customers were not as significant for them to keep track of.

23  So that wasn't something --

24       THE COURT:   But you would think that a company would

25  then eliminate them so that they wouldn't bother -- they

1  wouldn't call them again, they wouldn't -- they wouldn't have

2  any expense with regard to promoting those prospects.

3      MS. GROH:   And that's something that did happen within

4  the database.  The database itself was constantly changing.

5  People were kicked out, people were added in, depending on --

6      THE COURT:   But the next day suppose you told the

7  database or you told the machine do 10,000 others.  Did the

8  machine know who it did the day before?

9      MS. GROH:   My understanding is no, your Honor, but if a

10  sales person had reached out to an individual who said "Please

11  don't call meany more," it would have kicked that person out

12  of the database.  So that individual might not be in the

13  database anymore is my understanding of how it worked.  We are

14  happy to detail this in our supplemental response to this

15  interrogatory.

16      THE COURT:   Well, all right.  Make a very detailed

17  response as to how it works and we will take it from there.

18  Next.

19      MR. BURKE:   I suspect that the discussion that we just

20  had would be the same as to document request 37 and document

21  request 12, both on Page 6.  Again, we are trying to figure

22  out who they called.

23      THE COURT:   Let me ask you, the automatic dialer, does

24  the telephone company provide these for nothing?  Do you get

25  billed by a telephone company?

1    MS. GROH:   It's a phone record, so we --

2    THE COURT:   So you get billed.  So the telephone company

3  has copies of who you called, do they not?

4    MS. GROH:   We have run down that angle as well, your

5  Honor.  The way it worked is we had an internal switch on our,

6  at our company so that outbound calls all came from the same

7  number, the same three numbers, and there is no way to tell if

8  the call was made from the dialer or if the call was made from

9  a salesperson's desk.

10    THE COURT:   Well, then let's include all the calls.

11  Let's include all the calls.

12    MS. GROH:   But the fact that --

13    THE COURT:   I would suspect that the regular telephone

14  calls made by people are way less than the automatic dialing,

15  right?  They would have to be.

16    MS. GROH:   I don't know if we can say that for certain,

17  Judge, but there is no way for us to tell which calls were

18  made from, you know, a salesperson to his wife or made from --

19    THE COURT:   Well, maybe there is no way to tell at the

20  beginning, but maybe some further investigation will be able

21  to figure that out.  All the telephone calls under these

22  circumstances, you provide this information on all the

23  telephone company -- all the telephone calls out of this

24  company.  And if that is too inclusive, then such is life.

25  But it would include everyone who was called.

1    MS. GROH:    In addition to --

2    THE COURT:    Well, that's what these interrogatories are

3 looking for is who was called, and who was called is in that

4 list.

5    MS. GROH:    Well, it should be narrowed to who was called

6 from the dialer.

7    THE COURT:    Well, that would be nice, but you're saying

8 you can't do that.  Then give us the entire list and let him

9 worry about who was called and who wasn't called.  So the

10 motion with regard to document request 12 is granted.

11    Okay, next.

12    MR. BURKE:   Page 7, Judge, affirmative defenses.  I would

13 like to skip to 11 because I think 4 is subsumed in 11, which

14 is an interrogatory that asks for the facts and law that

15 supports their affirmative defenses.

16    THE COURT:   Counsel.

17    MS. GROH:    In our Rule 37 conferences with the plaintiff

18 we told him that our main affirmative defense or defense at

19 this time is that we got these phone numbers, we got the

20 plaintiff's phone number from the IRS.

21    THE COURT:    How do you get the phone numbers from the

22 IRS?  I saw that in these papers.  I'm interested.  How do you

23 get telephone numbers from the IRS?

24    MS. GROH:    It was pursuant to a FOIA request.

25    THE COURT:    Pardon?

1    MS. GROH:   It was pursuant to a FOIA request to the IRS.

2    THE COURT:   You mean you can get telephone numbers from

3  the IRS, telephone numbers of taxpayers so you can call them

4  from the IRS?

5    MS. GROH:   Correct, your Honor.  Our business is selling

6  tax software to businesses.

7    THE COURT:   Yes.

8    MS. GROH:   We got a list of businesses that filed a

9  certain number of tax returns on behalf of individuals.  So

10  our marketing was towards businesses.

11    THE COURT:   And you get that from the IRS.  Does that

12  mean that these people consented?

13    MS. GROH:   Our argument is that these are businesses and

14  not individuals.

15    THE COURT:   And businesses have consented that their

16  income tax return information, some information from the

17  income tax return can be disseminated by the Internal Revenue

18  Service?

19    MS. GROH:   Our position is that businesses are not

20  covered by the TCPA or the Do Not Call list, that by holding

21  out a phone number as your business, you're consenting for the

22  world to call you in that capacity.

23    THE COURT:   Maybe they're not covered by the Do Not Call

24  list.  What I'm talking about is if you're running a law firm,

25  that's a business, okay?  You file an income tax return.  Are

1   you consenting that your telephone number can be provided to

2   John Fisher here by filing an income tax return?

3        MS. GROH:   I think the issue that we are arguing is a

4   little different than that, but that would be subject to the

5   FOIA document request, which is something that is exactly what

6   can be done.

7        THE COURT:   I'm trying to understand how this works so I

8   can rule fairly on these discovery requests and I still can't

9   understand, it's beyond me that the IRS would provide

10  telephone numbers of its taxpayers, whether they're corporate

11  or individual, to anybody.

12       MS. GROH:   That's exactly what happens and that's what

13  happened here.   But our defense is a little bit different.

14  It's that these are businesses that were holding themselves

15  out under these numbers and those are the numbers we called,

16  and as a result of that --

17       THE COURT:   And did they consent?

18       MS. GROH:   We believe they did consent by using these

19  numbers as their business numbers, which would not be

20  covered --

21       THE COURT:   They consented by filing the income tax

22  return which contained their telephone number?

23       MS. GROH:   Holding themselves out as a business.   We

24  believe that you can contact businesses in that capacity,

25  which would not be covered by the TCPA or the Do Not Call

1    list.

2       THE COURT:   Holding -- once again, your law firm is a

3    business.   You file an income tax return with the government.

4    Are you by so doing -- you hold yourself out as a business,

5    are you by so doing consenting that the IRS provide or

6    disclose your telephone number?

7       MS. GROH:   Well, the IRS is a separate entity.  We would

8    say --

9       THE COURT:   Yes, I know it's a separate entity.

10      MS. GROH:   -- you are consenting.

11      THE COURT:   I know it's a separate entity, but I'm

12    talking about the consent part of the taxpayer.  Have you by

13    so doing consented?

14      MS. GROH:   We would say yes, your Honor.

15      THE COURT:   All right.

16      MR. BURKE:   There are six affirmative defenses, Judge.

17    We are asking for them to explain them.

18      THE COURT:   All right.   Well, you talk about affirmative

19    defenses that haven't yet been made.   I don't think they need

20    to explain those.

21      MR. BURKE:   Well, not now.

22      THE COURT:   No.   So why can't you respond to that?

23      MS. GROH:   We indicated to plaintiff's counsel that we

24    would supplement our response to state that our defense is

25    that the plaintiff in this case --

1   THE COURT:   So you will respond to it?

2   MS. GROH:   Yes.

3   THE COURT:   So the motion to compel with regard to

4   Interrogatory No. 4 is granted in that any objections thereto

5   are being waived.  The next one.

6   MS. GROH:   If I could just clarify one point, your

7   Honor, we indicated that we would supplement to state the

8   defense I just explained, that the plaintiff consented by

9   holding out this number as its business number.  Beyond that,

10  our investigation continues and at this time we can't identify

11  every affirmative defense or every defense that we may have,

12  every argument --

13  THE COURT:   No, no, you don't have to explain any

14  affirmative defenses that you have not made.

15  MS. GROH:   Okay.  When you said, waiver, Judge, I just

16  wanted to clarify that we weren't waiving --

17  THE COURT:   Only affirmative defenses that are stated in

18  your answer, in your pleading.

19  Okay, next.  Anything else?

20  MR. BURKE:   Document request 7, documents that concern

21  any person whose cell phone was called using the dialer, could

22  be persons who were within the class as defined.

23  MS. GROH:   And again, your Honor, we don't have any

24  class information, and as far as the --

25  THE COURT:   Just a moment, just a moment.  Before you

1    respond, let me read it.

2        (Pause)

3        THE COURT:  Okay, your response is?

4        MS. GROH:   As we stated before, we have no information

5    about the class, what phone calls were made to these class

6    members.  As far as the prior express consent, it's the same

7    defense that we stated before.

8        THE COURT:   In other words, what you're saying is you

9    have no express consent from anybody, right?

10       MS. GROH:   We are saying that we don't know who was

11   called so there is no way for us to say --

12       THE COURT:   Go through your files of all your customers

13   and tell us who made an express consent, "express" meaning

14   they consented to you, they sent you a letter saying "It's

15   okay for you to call me."

16       MS. GROH:   And as I have explained before, we don't have

17   any class data.  We can't indicate what calls were made to

18   individuals and there is no way for us to track that down.

19       THE COURT:   You can indicate as to those people who you

20   had contact with who responded to the autodialer.

21       MS. GROH:  And we don't have a record of that

22   information.  But we do have the same --

23       THE COURT:   Now, wait a minute, wait.  You also don't

24   have a record -- the autodialer calls John Jones Company.

25   John Jones Company calls you and says "I'm interested in what

1    the autodialer said." There is no follow-up, there is no

2    record?

3         MS. GROH:   There is no way for us to track that down.

4         THE COURT:   Why not? Can't you look in a file? A file

5    was created when somebody called and affirmatively responded

6    to the promotion. You can't tell me you have no records of

7    that. That's how you make your living.

8         MS. GROH:   If someone called us in response to a

9    promotion, then there was no auto dial call. Maybe I'm not

10   following you, Judge.

11        THE COURT:   If somebody called you and said "I was

12   called by your company, I'm interested," you have a record of

13   that, don't you?

14        MS. GROH:   If that prospective customer became a

15   customer, then that entry would be in our --

16        THE COURT:   Either became a customer or had

17   conversations regarding getting to be a customer.

18        MS. GROH:   As far as tracking how that occurred --

19        THE COURT:   No, that isn't what this asks. What this

20   asks is any documents with any of these people that showed

21   express consent to call them. I think that's what it asks

22   for, right?

23        MR. BURKE:   Yes.

24        THE COURT:   What you're saying is you have no such

25   documents?

1      MS. GROH:    Correct.

2      THE COURT:    Okay.  Well, why don't you answer that way.

3  If that's the truth, then answer that way.

4      MS. GROH:    And we have indicated to plaintiff that we

5  would supplement these responses accordingly.

6      MR. BURKE:    No documents supporting the affirmative

7  defenses, fine with us.

8      THE COURT:    Okay, what else?

9      MR. BURKE:    Page 11, Judge, information concerning the

10  plaintiff.  The defendant has refused to provide us with

11  information that it has regarding the plaintiff.  We have

12  asked for that stuff.  They're saying we don't get it.

13      MS. GROH:    We identified one document that we have that

14  has the plaintiff's name, his address, his phone number, the

15  name of his business.  Before we produce this to the

16  plaintiff, we would like to have it covered by the protective

17  order.

18      THE COURT:    What protective order?

19      MS. GROH:    We have been working on getting a protective

20  order entered in this case.

21      THE COURT:    What do you need a protective order for

22  plaintiff's information?  Plaintiff waives that, doesn't

23  plaintiff?

24      MR. BURKE:    As long as they don't put it in the public

25  record for discovery purposes, absolutely.

1     MS. GROH:   Out of an excess of caution, the plaintiff is

2  suing --

3     THE COURT:   Out of an excess -- it's excessive caution,

4  not an excess of caution.  You have -- if I tell you "Look,

5  this is my telephone number, you can tell John Jones my phone

6  number and you can tell John Jones everything you know about

7  me," you need a protective order after that if the party says

8  do it?

9     MS. GROH:   In this case the plaintiff is suing us for

10  violation of his privacy.  Out of an excess of caution it

11  would be our preference to designate that document as

12  confidential.

13     THE COURT:   The motion to compel on that is granted.

14  You give them all information that you have.  You can work out

15  protective orders generally, but with regard to plaintiff's

16  information that plaintiff is requesting, that's a ridiculous

17  position.  It is ridiculous.  The plaintiff wants you to tell

18  the plaintiff what information you have on the plaintiff.

19     MS. GROH:   Okay.

20     THE COURT:   And you have an excess of caution --

21  baloney.  Next.

22     MR. BURKE:   Page 12, Judge, materials bearing on

23  willfulness.  Treble damages are available if we can prove

24  that the violation is willful.  These requests are designed to

25  show that the defendant knew about the TCPA and made these

1    calls anyway.

2        THE COURT:    Complaints, written complaints, lawsuits.

3        MS. GROH:    We object to this, your Honor.

4        THE COURT:    Pardon?

5        MS. GROH:    We object to this.  Any complaint that was

6    filed against defendant does not have any bearing on this

7    case, it would never be admissible in court.  And it's -- it's

8    just plainly irrelevant and overbroad.

9        THE COURT:    I disagree.  If the complaints are the same

10   or similar, that somebody was called without their permission,

11   that shows knowledge, that shows intent, that shows or may

12   show -- all of these things may tend to show willfulness.

13   Willfulness has something to do with punitive damages.

14       MS. GROH:    Your Honor, if I may, the, just the fact that

15   a plaintiff lodged an allegation against the defendant would

16   not bear on willfulness --

17       THE COURT:    Oh, no, it's not --

18       MS. GROH:    That case could be dismissed, that case could

19   have been subject to Rule 11 sanctions.

20       THE COURT:    That's very true, that's very true, but we

21   are not talking about admissibility into evidence right now,

22   we are talking about discovery.  How is he to know what may be

23   admissible and what may not be admissible unless he has the

24   information?

25       MS. GROH:    I would again say that this is overbroad and

1    perhaps a judgment that was entered against the defendant in a

2    circumstance similar to this could be relevant to willfulness,

3    but as far as every allegation --

4        THE COURT:    Suppose you settled 10,000 of these

5    complaints individually.   You mean to say -- so there is no

6    judgment.   Isn't that potentially relevant?

7        MS. GROH:    We would say no, your Honor.

8        THE COURT:    I disagree with you.   I think it's

9    potentially relevant, the multiplicity -- I don't know if it

10   is and I'm not ruling that it is, don't get me wrong.   I'm not

11   ruling that it's admissible.   What I am ruling is first you

12   have to get the facts.   Once you get the facts, you will know

13   whether something is admissible or not.   It may lead to

14   admissible evidence and that's the standard.   Therefore, the

15   motion to compel with regard to that is granted.

16       MR. BURKE:   So that would be, Judge, request 23, 24, 25

17   is similar, your Honor, it asks for documents from any source

18   concerning the legality or propriety of making dialer calls.

19       THE COURT:    I would say all documents from any source

20   other than the defendant's own lawyers.

21       MR. BURKE:   They have already told us that there are no

22   such documents.

23       THE COURT:    Pardon?

24       MR. BURKE:   They have told us that there are no such

25   documents, no documents subject to privilege.

1      THE COURT:   All right.   So -- no such documents subject

2   to privilege.

3      MR. BURKE:   That's right, they put that in their papers

4   that there are no privileged documents.

5      THE COURT:   Motion to compel request No. 5 is granted.

6      MR. BURKE:   25, your Honor?

7      THE COURT:   Yes.

8      MR. BURKE:   Okay.   Documents that discuss defendant's

9   compliance or lack of compliance with the TCPA.

10     MS. GROH:   Again, your Honor, we will argue that this

11  does not bear on willfulness.   Perhaps if this was an FDCPA

12  case and there was a bona fide error defense, it could be

13  relevant, but as far as this case goes, the compliance or lack

14  of compliance with the policies and procedures in this regard

15  are not relevant and this motion should be denied.

16     MR. BURKE:   It's the same thing as with the complaints.

17  I mean, if you have got a hundred e-mails that were sent a

18  month before the autodialer called the plaintiff, it shows

19  that the defendant knew that they were taking a chance.

20     THE COURT:   I agree.   Document request 26 is granted for

21  the same reason.   Next.

22     MR. BURKE:   31.

23     THE COURT:   That's the same thing.

24     MR. BURKE:   Same thing.   32 is similar as well.

25     THE COURT:   Granted, granted.   And No. 32 --

1      MS. GROH:    Your Honor, if I could clarify --

2      MR. BURKE:  32 we withdraw.  That has to do with the

3  e-mail claim and there is a stay of discovery having to do

4  with the e-mail claim.

5      THE COURT:   All right.

6      MR. BURKE:  35.  35 is a little bit different than 31 in

7  that it has to do with revocation of consent.  For example,

8  somebody has called in to defendant and said "Hey, don't call

9  me," I think that would probably be subsumed in 31 and 26, but

10  this one is a little bit more explicit.

11      THE COURT:   Well, you do, maintain a Do Not Call list,

12  right?

13      MS. GROH:    Currently we do, your Honor, and I don't know

14  the time frame on that, but again, within the class period we

15  don't have any data that would be responsive to this.

16      THE COURT:   Well, you have documents -- you have some

17  documents which list Do Not Call.  You must have some sort of

18  a procedure as to what happens when somebody says "Don't call

19  me," right?

20      MS. GROH:    I'm not sure if it's a written procedure or

21  if it's a --

22      THE COURT:   Well, you're not sure, answer it.  You don't

23  have to create any documents, all you have to do is answer it.

24  And come up with the documents that you have.  Request No. 35

25  is granted.

1     MR. BURKE:  39, your Honor, another arm of what CCH does

2  is they publish legal treatises for compliance with marketing

3  and advertising laws.

4     THE COURT:  I know about CCH.  I used to use them.  They

5  were pretty tough to use when I was in law school.  Maybe

6  they're a lot better now.

7     MR. BURKE:  They're organized by date rather than by

8  subject.  Your Honor, we are asking for anything -- and I

9  think this is included in 25, maybe some of the other

10  requests, but expressly we are asking for their legal

11  treatises and updates that have to do with TCPA compliance.

12     MS. GROH:  And, your Honor, I see no relevance in this

13  whatsoever.

14     THE COURT:  I don't think it's relevant either.  If you

15  want to, look them up.  They're published, aren't they?

16     MS. GROH:  Correct.

17     THE COURT:  These are treatises.  They're published, you

18  can look them up.

19     MR. BURKE:  I haven't been able to find one, your Honor.

20     THE COURT:  Well, so maybe --

21     MR. BURKE:  On eBay, not in the library, not anywhere

22  else.

23     THE COURT:  Well --

24     MR. BURKE:  And we are asking to show knowledge of

25  these -- of the TCPA.

1      THE COURT:  I don't think it's relevant however.

2      MR. BURKE:  Okay.

3      THE COURT:  Their exposition of the law, I don't think

4 that's relevant.

5      MR. BURKE:  Organizational charts of the defendant.

6      THE COURT:  What else -- where are you at?

7      MR. BURKE:  Sorry, Judge.  We are almost done.  Page 14.

8      THE COURT:  Organization charts.

9      MR. BURKE:  Both of personnel and the corporate structure

10 of the defendant.

11      THE COURT:  What's the relevance?

12      MR. BURKE:  Well, as to personnel I want to know where

13 Brian Holbrook, this autodialer guy, where he falls, who his

14 boss is, who works underneath him.

15      THE COURT:  Why don't you ask that specifically.  You

16 want an entire organizational chart for a company that's been

17 in existence a long time and is a large company.  You don't

18 need to know all that, do you?  If you want something specific

19 about specific people that are involved with the autodialer,

20 okay, but --

21      MR. BURKE:  I don't think -- I suspect they're not going

22 to have a chart that just deals with Brian Holbrook, but any

23 chart that includes Brian Holbrook I think would be

24 appropriate.

25      MS. GROH:  Judge, I would agree with you that this is

1    plainly irrelevant and overbroad, and as you stated, this is a

2    large company with a lot of players and personnel --

3        THE COURT:    If you want anything specific, you can ask

4    something specific, but I think this is overly broad and is

5    irrelevant and therefore, that motion is denied.

6        MR. BURKE:    Judge, we don't have an insurance policy from

7    the defendant.

8        MS. GROH:    On this point, your Honor, we were seeking to

9    enter a protective order before disclosing this proprietary

10   business contract with a third-party.

11       THE COURT:    Can I ask you what's proprietary about an

12   insurance policy?

13       MS. GROH:    It's a private contract that is commercial

14   information under Rule 26(c).

15       THE COURT:    It's a private contract.  You have already

16   disclosed what company.

17       MS. GROH:    Pursuant to our Rule 26 obligations, we

18   have --

19       THE COURT:    So --

20       MS. GROH:    -- identified the policy limits --

21       THE COURT:    If somebody wanted to call that company and

22   say "Look, I would like to have a liability policy that covers

23   the following," they would present that policy, wouldn't they?

24   They should be happy with that.  I don't understand what's so

25   proprietary.  Everything these days is proprietary and

1    confidential.  How does it hurt you -- how does a competitor

2    gain an advantage over your liability insurance policy for

3    heaven's sake?

4         MS. GROH:   It's our position, your Honor, that it's

5    commercial information that should be protected --

6         THE COURT:   Why?

7         MS. GROH:   -- from disclosure.

8         THE COURT:   Why?  What I'm trying to get at is why.

9    You're not the only one.  The lawyers now, everything is

10   proprietary and everything is confidential.  That isn't the

11   way it's supposed to work.  It's supposed to be secrets that

12   are subject to protective orders, not any other old document

13   that doesn't hurt you competitively.

14        Anyway, you're going to work on a protective order.  The

15   motion with regard to the insurance -- produce the insurance

16   policy.  Also, work on your protective order.

17        MR. BURKE:   Judge, two more issues remain.  One is that

18   there is no privilege log, but in their papers they said that

19   they're not withholding anything based on privilege, so I

20   think that's a non-issue.

21        THE COURT:   Well, so we don't have to visit it.

22        MR. BURKE:   And the final issue is an interrogatory that

23   I issued asking for essentially a privilege log of documents

24   that the defendant knows are responsive to the discovery

25   requests but they don't have in their possession, custody, or

1    control.  And I have narrowed that interrogatory to dialer
2 documents.
3       THE COURT:  I don't understand that.  Documents that
4 they know exist, but they do not have any control --
5       MR. BURKE:  I'm asking where they are so I can go get
6 them.
7       THE COURT:  Well, it's not a privilege log.
8       MR. BURKE:  No, it's sort of a log of what they don't
9 have.
10      THE COURT:  It's a list.
11      MR. BURKE:  Yes, it's a list.
12      THE COURT:  A list of --
13      MS. GROH:  Interrogatory No. 7 requests defendant
14 identify all responsive documents that are being withheld on
15 the basis of privilege or an objection.  Defendant answered
16 that to say that there are none.  Somehow plaintiff is still
17 moving to compel on this request.
18      THE COURT:  There are none.
19      MR. BURKE:  Well, I mean, your Honor, for example, there
20 are manuals that were not being produced before today that the
21 defendant was withholding based upon objection of overly
22 burdensome.
23      THE COURT:  But they are going to produce them in
24 accordance with our rulings today.
25      MR. BURKE:  For sure.

1        THE COURT:   Okay.

2        MR. BURKE:   What I'm asking for here, what I wanted was

3    for them to tell me is "Oh, we have got these manuals, but

4    we're not giving them to you because we think it's unduly

5    burdensome."  If there is anything after today that they're

6    not giving me because of some objection, I would like to know

7    what it is.  And if there is something that they don't have

8    custody of --

9        THE COURT:   They have to give you everything they have.

10   If they know where something is and they do not have control

11   over it, ask them that specifically, but you didn't ask them

12   that in this interrogatory.

13       MR. BURKE:   Not specific enough.

14       THE COURT:   Therefore, the motion with regard to that

15   interrogatory is denied.

16       MR. BURKE:   Judge, as to the protective order, this is

17   our last issue.  There are two subjects that were, that the

18   parties are dealing with and I think that if we can resolve

19   them today, the defendant will probably be able to file a

20   motion for protective order.

21       One, I would like to have a sentence in Paragraph 1 that

22   says "Nothing herein shall expand or restrict the scope of

23   materials that may be designated as confidential pursuant to

24   Rule 26 and applicable case law."  The defendant finds that

25   objectionable.

1     MS. GROH: We have three objections to that, your Honor.

2 Frankly, we wouldn't have a problem if we cut that sentence

3 off at "Nothing herein shall expand or restrict the scope of

4 materials that may be designated as confidential," period.

5 The remaining part of the sentence, however, restricts the

6 designation of confidential materials while the first part of

7 the sentence expands it. We find that to be contradictory

8 and --

9     THE COURT: But you still have a provision that says if

10 somebody challenges that, you can go to court and the court

11 can determine that.

12     MS. GROH: Exactly, which is why we don't think that

13 this provision is necessary because there is a provision later

14 on on how to challenge the designation of a document.

15 Additionally, this "pursuant to Rule 26(c) and applicable case

16 law" is just a vague statement that we find to be unnecessary

17 and unclear.

18     MR. BURKE: Earlier in the paragraph it says that the

19 defendant or any party -- first it said defendant only -- can

20 make any document that's not previously made available to the

21 public confidential in this case.

22     THE COURT: All right.

23     MR. BURKE: I think that's too broad. I don't see --

24     THE COURT: Well, then you can challenge -- there is a

25 challenge provision here, isn't there?

1      MR. BURKE:  There is.

2      THE COURT:  So challenge it when the time comes,

3 challenge it.

4      MR. BURKE:  As long as I don't get stuck with some

5 argument that says oh, the law of the case is that any

6 document that wasn't previously disclosed to the public, the

7 order already tells us that it's confidential.  That's what

8 I'm worried about.  And I think that any motion challenging

9 confidentiality, we are going to be arguing Rule 26(c) and

10 applicable case law.

11      THE COURT:  Have the words "subject to the challenge

12 provisions as shown in paragraphs" whatever they are, you can

13 add that, but make it subject to the challenge provisions.

14      MR. BURKE:  And the second issue is that I think that

15 it's appropriate, and I have had this in other protective

16 orders, to have a provision that third parties that seek to

17 use the protective order in subpoena responses subject

18 themselves to the jurisdiction of this court for any disputes

19 or anything else having to do with their subpoenaed responses.

20      THE COURT:  Well, they are anyhow.  They are anyhow.  If

21 you subpoena somebody and they don't want to come up with the

22 documents that you have subpoenaed, you come to court, you ask

23 that they be held in contempt of court.

24      MR. BURKE:  I don't want to have to --

25      THE COURT:  What do you need that for?

1    MR. BURKE:  Well, say, for example, a subpoena issues out
2  of the District of Alaska.

3    THE COURT:   Then you have got to go up to Alaska.  We're
4  not going to circumvent that and say -- first of all, it
5  doesn't bind any of the third parties anyway.  I can make all
6  kinds of orders with regard to that, they didn't agree, and
7  you're saying, well, if they look at it --

8    MR. BURKE:  No, I'm saying if they use the protective
9  order, if they designate materials protected, confidential
10  under this protective order, they're submitting to the
11  jurisdiction of this court with regard to those documents.

12    MS. GROH:   We don't think this language is necessary,
13  your Honor, and think it's overly burdensome to require a
14  third party to submit to the jurisdiction of this court.

15    THE COURT:   I agree.  It's an attempt to circumvent that
16  portion of the Rules that say, that have to do with where
17  disputes as to third-party subpoenas are resolved and I don't
18  think you can do that, and I don't think it's binding upon
19  them at all even if they use it.  Therefore, the order is
20  don't put it in.

21    MR. BURKE:  Very good.

22    THE COURT:   Okay.  You're going to submit a draft order
23  on this.

24    MR. BURKE:  Okay.

25    THE COURT:   All right.  We will circulate it and --

```
 1   submit a draft order.
 2        MR. BURKE:  I'm going to also order the transcript.
 3        THE COURT:   I think you're going to need to.
 4        MR. BURKE:  Okay.
 5        THE COURT:   All right.
 6          *              *              *
 7             I certify that the above was transcribed
 8             from digital recording to the best of my ability.
 9
10                    /s/ Lois A. LaCorte
11        _____    _____
12             Lois A. LaCorte                Date
13             Official Court Reporter
14
15
16
17
18
19
20
21
22
23
24
25
```