**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN, on behalf of himself and others similarly situated, | ) ) ) | 1:10-cv-3494 |
| Plaintiff, | ) ) | Judge Dow |
| v. | ) ) | Magistrate Judge Ashman |
| CCH, INCORPORATED, | ) ) | |
| Defendant. | ) ) | JURY DEMANDED |

**PLAINTIFF'S OPPOSITION TO CCH'S MAGISTRATE OBJECTION**

This is a Telephone Consumer Protection Act telemarketing case. CCH, Inc., a company that specializes in tax preparation software and legal publications, used a predictive dialer to call hundreds of thousands of telephone numbers peddling its tax software and other products and services.

For example, it used its dialer to call plaintiff and more than 3,000 other persons on Memorial Day, May 31, 2010. The dialer is astonishingly efficient, and made these calls over a 47-minute period between 7:57 pm and 8:44 pm. It appears that all of the calls on that date were advertising CCH's tax prep software.

Plaintiff has no relationship with CCH. CCH obtained plaintiff's cell phone number through a Freedom of Information Act request to the Internal Revenue Service for a list of registered E-File providers – tax preparers that are authorized to electronically file their client's taxes with the IRS. [1]

---

[1] Plaintiff has a small seasonal tax preparation business that he operates himself.

1

On December 6, 2010, Judge Ashman compelled CCH to produce all information and documents supporting its "prior express consent" defense as to plaintiff and the class. To date, CCH has not produced any documents or information that might suggest that plaintiff (or any class member) expressly consented to receive autodialed and prerecorded message telemarketing calls from CCH.

CCH now makes a belated attempt to obtain highly sensitive tax information from plaintiff, his company and from plaintiff's tax-preparation clients, including Plaintiff's clients' tax returns themselves. Judge Ashman specifically refused to order production of these materials during the oral argument on CCH's first motion to compel, in April 2011. For this reason alone the objection should be overruled. A party cannot permissibly revive Fed.R.Civ.P.'s fourteen-day time period for filing objections to a magistrate judge's ruling by "renewing" its motions six months later. Judge Ashman's October order recognized this in denying the second motion to compel.

Furthermore, Judge Ashman decided both of the issues raised in the objection after careful consideration, briefing in April, and oral argument. CCH gives no reason to disturb these rulings, other than to argue that Judge Ashman was "wrong." As explained herein, Judge Ashman was correct. And even if he was not, the decisions were made in his sound and learned judgment, and these decisions were not "clearly erroneous" and were not "contrary to law."

## I. **Standard for Review**

A district court may only set aside a magistrate judge's discovery ruling if it is "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); see also *Hall v. Norfolk Southern Ry. Co.*, 469

F.3d 590, 595 (7th Cir. 2006); *Bobkoski v. Board of Educ. of Cary Consol. School Dist.*, 141 F.R.D. 88, 90 (N.D.Ill.1992); see also, TBI's objection at 4, quoting Rule 72(a) as applicable.

This is an "extremely deferential" standard of review. *American Ins. Co. v. St. Jude Medical, Inc.*, 597 F.Supp.2d 973, 977 (D.Minn. 2009). "Ordinarily, under clearly erroneous review, if there are two permissible views, the reviewing court should not overturn the decision solely because it would have chosen the other view." *American Motors Corp. v. Great Am. Surplus Lines Ins. Co.*, 1988 WL 2788, at *1 (N.D.Ill. Jan. 8, 1988).

"[T]he district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Industries Co.*, Ltd., 126 F.3d 926, 943 (7th Cir. 1997). That standard of review is consistent with the view that the judge who issued the discovery order at issue is in the best position to determine whether the parties have complied with it. See *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 670-71 (7th Cir. 1996).

Objections must be made within fourteen days of the Magistrate Judge's ruling pursuant to Fed.R.Civ.P. 72(a), and a "party may not assign as error a defect in the order not timely objected to." In the Seventh Circuit, this admonishment is taken seriously: "Failure to file objections with the district court to a magistrate's report and recommendation waives the right to appeal all issues addressed in the recommendation, both factual and legal" *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995); see *also Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1996) (discussing the "law of the case" doctrine.); *cf. Comeau v. Rupp*, 142 F.R.D. 683 (D.Kan. 1992) (permitting a *timely* reconsideration motion to toll the fourteen day deadline).

## II. Judge Ashman Rejected CCH's Position On These Issues Five Months Before this Objection.

CCH maintains that somewhere in the proverbial "abyss" there might be some piece of information that might suggest that plaintiff provided "prior express consent" for CCH to make the calls at issue in this case.  It thus sought in April 2011, to obtain the names and addresses of plaintiff's tax business clients, 21st Century through discovery requests to plaintiff and a subpoena to the business.

Plaintiff and his business objected and filed a motion to quash the subpoena and for a protective order, and CCH filed a motion to compel. Docket Item 54, 63, 66.  In opposition to CCH's motion to compel client names and other information, plaintiff submitted the affidavit attached as Exhibit A, which explains several reasons why production of client information would be burdensome and problematic for plaintiff, including that "if my clients came to know that their private information was shared with an unrelated third party, I would probably lose the trust that my clients have bestowed in me along with their future business." Exhibit A at ¶14.

During the April 20, 2011, oral argument on the motions, Judge Ashman indicated that he was persuaded by this affidavit in denying CCH's motion to compel,

> THE COURT:  I don't think you're entitled to go to every one of their clients and ask them what correspondence that they had. He is saying, he is willing to admit that all correspondence, all -- if there were any advertisements, everything that had to do with these clients, that telephone number was used.
> ***
> THE COURT:  I don't think it's necessary to produce anything for the names of the -- you haven't convinced me that you need any of the names of these clients. You're not going to disturb their relationship by this very marginal, that is, marginal in terms of evidence request…" Exhibit B at 7, 13.

In sum, Judge Ashman unequivocally denied CCH's motion to compel plaintiff to give it the names and addresses of his clients. Despite this, CCH repeatedly questioned plaintiff during his deposition, asking for exact same information.

On September 22, 2011, CCH filed a motion to compel plaintiff to provide this information during his deposition, and a supposed "renewed" motion to obtain the documents and interrogatory responses that were the subject of its April 2011 motion to compel. Recalling that he had already decided this motion, Judge Ashman held:

> THE COURT: We went through that last time. I am not going to allow a -- you to go down his client list and take depositions of his clients. Clients don't like that. Clients have a tendency to leave and go elsewhere where they are not going to have depositions taken of them. And there is no reason for it. You have got as much as you can get. And I don't think you can go down the list of his clients and ruin his business.

Exhibit C at 11.

CCH has also been attempting to obtain the tax returns from plaintiff and his business since April, in order to prove that the phone number it robodialed was both a personal and business number. The first time Judge Ashman rejected this argument, in April 2011, he tersely stated:

> THE COURT: Not the tax returns. I don't think that's necessary.

Exhibit B at 13. In other words, each of these issues was decided on April 20, 2011. The time for objections expired on May 4, 2011. In October, 2011 the unchallenged April order was law of the case. That alone was sufficient grounds for Judge Ashman to refuse the second repeat request for the same information. *See, e.g.*, *Heyde v. Pittenger*, 633 F.3d 512, (7th Cir. 2011) (law of the case precludes relitigation of earlier unchallenged ruling). The objections should be overruled.

### III. Judge Ashman's Rulings Were Neither "Clearly Erroneous" nor "Contrary to Law."

In simplest terms, CCH's objection asks this Court to substitute its judgment for those of Magistrate Judge Ashman.[2] This is not the purpose of Fed.R.Civ.P. 72, and the objection should be overruled on its merits, too.

It is well-established that Rule "26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). The court may also "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Id. quoting Fed.R.Civ.P. 26(c). The Fed.R.Civ.P. 72 process is not intended to be an appeal mechanism for parties unhappy with magistrate judge rulings to get two bites at the apple.

### A. The Objection Should be Overruled as to Plaintiff's Clients' Identities.

CCH argues that it should be allowed access to the tax returns and identities of plaintiff's clients so that it may take these persons' depositions. It claims that the depositions of plaintiff's clients may reveal that plaintiff was lying about the advertising efforts of 21st Century, and thus lead to some currently unknown form of consent to receive autodialed telemarketing calls from CCH.

But CCH has already revealed in discovery how it received plaintiff's (and hundreds of thousands of other) cell phone numbers: the FOIA list of registered E-Filers. CCH has not produced any explanation of how Plaintiff's marketing plan to his clients might have constituted prior express consent to CCH this purported defense in response to Plaintiff's interrogatory. Relevance to the defense has been explained, and the time for doing so expired in May 2011.

---

[2] As explained above, the magistrate judge has twice rejected CCH's arguments.

CCH now relies almost entirely on one distinguishable case. *CE Design v. King*, 637 F.3d 721, 725 (7th Cir. 2011). *King* was a "junk fax" TCPA case that Judge Bucklo certified as a class action. The Seventh Circuit allowed Fed.R.Civ.P. 23(f) appeal on the issue of adequacy of the plaintiff, because it appeared that the corporate plaintiff's president may have lied in his deposition about the company's participation in an advertising "Blue Book," which was designed to facilitate marketing between businesses. The Seventh Circuit vacated certification of the class, and remanded the case back to the District Court for further inquiry into the veracity of the statements in the deposition.

*King* is not analogous to this case in this discovery setting because the materials that CCH seeks were not materials by which the Plaintiff even arguably sought to market his business to businesses like CCH, who might have wanted to sell him practice aids.

Furthermore, Judge Ashman found that the burden upon plaintiff, as explained by plaintiff in <u>Exhibit A</u>, and analyzed by Judge Ashman in Exhibits B and C, would be greater than the potential benefit to CCH. In other words, the magistrate found that the possible benefit to CCH's fishing expedition was far outweighed by the likely harm to plaintiff's business. This was the ruling twice; in April and October, 2011.

Indeed, because CCH wants the depositions to prove that plaintiff used his cellular telephone number for business and personal purposes, and because plaintiff has already agreed that he did so, there is simply no justification for insisting upon seeing anyone's tax returns at all.

Judge Ashman's decisions were thoughtful and reasoned, and there is no reason, or justification under Rule 72(a) to second-guess his judgment. The objection should be overruled.

**CONCLUSION**

Judge Ashman decided all issues raised in this objection in April 2011, and the objection is therefore too late. Further, the rulings were substantively correct, and CCH provides no reason to overturn them. The objections should be overruled.

Respectfully submitted,

Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

Gary Klein (*admitted pro hac vice*)
Shennan Kavanagh (*admitted pro hac vice*)
RODDY KLEIN & RYAN
727 Atlantic Avenue, 2nd Floor
Boston, MA 02111
(617) 357.5500
(617) 357.5030 (fax)
klein@roddykleinryan.com
kavanagh@roddykleinryan.com

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICHOLAS MARTIN, on behalf of himself and )
others similarly situated,                  )    1:10-cv-3494
    Plaintiff,                          )
                                     )    Judge Dow
       v.                               )
                                       )
CCH, INCORPORATED,                          )
    Defendant.                          )    JURY DEMANDED
                                       )

## DECLARATION OF NICHOLAS MARTIN

      I, Nicholas Martin, hereby states under penalty of perjury and pursuant to 28 U.S.C. §1746, that the following statements are true:

      1.  I am over the age of 18, and a resident of the United States of America, State of Illinois, County of Cook.

      2.  I have personal knowledge of all of the facts set forth in this Declaration and am competent to testify to the matters set forth in this Declaration.

      3.  I am the plaintiff in the above-captioned class action case and the owner and sole employee of 21st Century Tax Services, Inc. I have been assisting individuals in the preparation of their federal and state income tax returns beginning in 2002. In addition to providing tax preparation services, I am otherwise employed on a full-time basis which requires a 40 hour per week commitment.

      4.  I have reviewed the interrogatories and document requests that the defendant in this case, CCH, Incorporated ("CCH"), has propounded upon me, personally. I have also reviewed the subpoena and associated rider to the subpoena that were served upon 21st Century Tax Services, Inc. in my capacity of president of the corporation.

5.   On May 31, 2010, I received a phone call on my cellular telephone, 630-479-3271.  A prerecorded message played when I answered which advertised CCH software for small tax preparation businesses. I have never provided my cellular telephone number to CCH or any of CCH's affiliates prior to their May 31, 2010, phone call.

6.   630-479-3271 is the number assigned to my personal cellular telephone.  However, the phone number is regularly provided to my clients and is used in referrals as the phone number for 21st Century Tax Services, Inc., because my cellular telephone is a good way to reach me. Through my attorney, I have offered to the defendant in this case a stipulation to the fact that my personal cell phone number was used and is currently used as my contact number when operating through 21st Century Tax Services, Inc.

7.   A high degree of trust is implicit in the tax preparer-client relationship. Clients expect that their private information is used strictly for the purpose of preparing and filing their tax returns. They would not expect their private information to be shared with an unrelated third party.

8.   As a tax preparer, I am subject to various laws which ensure that information I receive in the course of preparing income tax returns is steadfastly guarded. One of the laws which I'm familiar with is 26 U.S.C. §7216. This law makes it a federal crime to share any information which my clients provide to me unless I receive their explicit instruction to do so.

9.   Seven days was not a reasonable time for 21st Century Tax Services, Inc., or me, to respond to the subpoena that was issued, particularly because it is tax season, and the response was due only a few days before taxes are due for individuals.

10. Furthermore, responding to the requests, both the subpoena and the discovery requests, would be extremely burdensome for me and my business.  I estimate that 21st

Century Tax Services, Inc. has well over 2,000 pages of documents that may be responsive to these broad requests. Some of these records are archived in electronic format while others are kept in paper format. Tax return data must be individually accessed in a software program and printed, a time-consuming process. Further, I would estimate it would take me, personally, well over 20 hours to sort through those documents to make sure that the production was complete and accurate.

11. I don't generally charge an hourly rate for tax preparation services, but if I were to divide my gross revenues by total hours worked, I would estimate my hourly rate to be about $50 per hour. I would estimate that my opportunity cost of responding in April or the first half of May 2011 would be well over $1,000. I would probably also be required to take time off from my full-time job in order to properly respond to the defendant's requests.

12. If I am unable to complete certain clients' tax returns because I am working on these responses, then the detriment to my business, which relies heavily upon referrals for advertising, would be incalculable.

13. If I were to redact certain information as suggested by the defendant, I estimate that task to take an additional 10 hours. However, I understand that providing my clients' tax returns even in redacted form would violate 26 U.S.C. §7216.

14. If my clients came to know that their private information was shared with an unrelated third party, I would probably lose the trust that my clients have bestowed in me along with their future business.

Executed in Chicago, Illinois
April 14, 2011

Nicholas M. Martin

# Exhibit B

1           IN THE UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3   NICHOLAS MARTIN, on behalf    )
    of himself and others         ) Docket No. 10 C 3494
4   similarly situated,           )
                                  ) Chicago, Illinois
5               Plaintiff,        ) April 20, 2011
                                  ) 9:30 a.m.
6          v                      )
                                  )
7   CCH, Incorporated,            )
                                  )
8               Defendant         )
                                  )
9

10              TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE MARTIN C. ASHMAN
11

12  PRESENT:

13  For the Plaintiff:        ALEXANDER H. BURKE
                              Burke Law Offices, LLC
14                            155 North Michigan Avenue
                              Suite 9020
15                            Chicago, Illinois  60601

16  For the Defendant:        SARAH A. ZIELINSKI
                              McGuireWoods LLP
17                            77 West Wacker Drive
                              Suite 4100
18                            Chicago, Illinois  60601

19

20  (TRANSCRIBED FROM DIGITAL RECORDING)

21

22  Court Reporter:           Lois A. LaCorte
                              219 South Dearborn  Room 1918
23                            Chicago, Illinois 60604
                              (312) 435-5558
24

25

1     THE CLERK:  10 C 3494, Martin v CCH.

2     MR. BURKE:  Good morning, Judge, Alexander Burke for the

3  plaintiff.

4     MS. ZIELINSKI:  Sarah Zielinski for the defendant.

5     THE COURT:  Good morning.  We have a motion.

6     MR. BURKE:  A few.

7     THE COURT:  Okay.

8     MS. ZIELINSKI:  I believe we have more than one.  We

9  have first of all one that I think we both agree on is a

10  motion for extension of time to extend the discovery

11  deadlines.  We asked for 90 days because we still have not,

12  either party, taken any depositions and there are still some

13  documents that need to be produced by the plaintiff that we

14  were just discussing, a supplemental production.

15     MR. BURKE:  And the plaintiff doesn't have any problem

16  with a 90-day extension, Judge.  We just would ask that the

17  court consider our motion for protective order and quash the

18  subpoena which is on --

19     THE COURT:  Well, but that's what we're going to talk

20  about.

21     MR. BURKE:  Yes.

22     THE COURT:  All right.  Insofar as the status therefore

23  is concerned -- well, we will extend discovery to July,

24  July 13 -- July 12th.

25     MR. BURKE:  I'm sorry to interrupt you.  I have a baby

1  coming, I realize as we talk about summer dates, due June 1st.

2  Maybe we should ask for the end of July if your Honor is

3  willing to do this to give us a couple weeks.

4       MS. ZIELINSKI:   We don't object.

5       THE COURT:   Where in the Federal Rules is there anything

6  about babies?

7       (Laughter)

8       THE COURT:   All right, July 29th.  And we will set this

9  for status on August 1st.  Now we will hear this motion.

10      MS. ZIELINSKI:   So on CCH's motion to compel and both

11 directed toward Martin and his company, 21st Century Tax

12 Services, by way of background, your Honor, we issued

13 discovery to the plaintiff back in January and the plaintiff

14 objected to our discovery on the grounds that all of our

15 questions were more appropriately directed to his company,

16 21st Century Tax Services.  And of course, your Honor, our

17 discovery did ask questions about 21st Century Tax Services

18 because what 21st Century Tax Services did with the phone

19 number in question -- this is a TCPA case where the plaintiff

20 alleges that we improperly auto dialed his cell phone, but the

21 thing -- the big fact in this case is that the plaintiff was

22 not only using that cell phone number as his personal number,

23 he was using that as the sole business phone number for 21st

24 Century Tax.

25      And, your Honor, a recent case just came out of the

1   Seventh Circuit about the issue of consent under TCPA, and it

2   talked about how consent is a very fact specific, case by case

3   determination.  In that case the court considered facts such

4   as the phone number in question being posted on the

5   plaintiff's web site and they also considered the fact that

6   the plaintiff had given this phone number to an advertising

7   directory, a public directory.

8        THE COURT:   That's the cell phone number, his personal

9   cell phone number.

10       MS. ZIELINSKI:   Well, in that case it was a junk fax

11  case, so it was a fax.

12       THE COURT:   Now, but I mean in our case here we're

13  talking about his personal cell phone number and you're saying

14  or you're trying to prove that he used it for regular business

15  purposes.

16       MS. ZIELINSKI:   And they admit that.  They have admitted

17  that --

18       THE COURT:   They admit it.  So why do you need discovery

19  on it?

20       MS. ZIELINSKI:   Your Honor, because the fact alone --

21  well, it's a good fact for us.  The fact alone that he is

22  using this cell phone number as a business phone number might

23  not be enough for us.  We hope that it is, but it might not be

24  enough for us to prove this very fact specific, case by case

25  determination.  The Seventh Circuit said in that case -- so

1   the facts of that case were that they pointed to those two

2   facts, but it also said that because of different ways that

3   different companies disseminate the phone number, that it has

4   to be case by case and the court said things such as business

5   cards, advertisements, trade -- you know, dissemination of the

6   phone number in trade journals or trade publications.  The

7   court said all of that is relevant.

8       Now, I know that the plaintiff doesn't agree that that's

9   relevant, but that's an issue for the merit.  That doesn't

10   mean that we should not be able to obtain that information

11   through discovery.  So that's what our discovery is directed

12   at, your Honor, is --

13       THE COURT:  All right, let's talk about the

14   interrogatories then.

15       MS. ZIELINSKI:  Okay.  All right.  So the

16   interrogatories to Martin simply -- Martin simply objected on

17   the ground that we should have posed those questions to 21st

18   Century Tax Services.

19       THE COURT:  All right, that's past because now there is

20   a subpoena.  So any order will apply both to Martin and to the

21   company.

22       MS. ZIELINSKI:  Okay.  So I mean then presumably -- and

23   that was the only basis for objecting to the interrogatories

24   that he posed.

25       THE COURT:  Is that right?

1     MR. BURKE: We don't think that they should get, for

2    example, the plaintiff's tax, client's tax information or even

3    the names of the plaintiff's tax clients.

4     THE COURT: Well, all right, are you willing to admit --

5    there was something in the document here that there are

6    thousands of clients or hundreds.

7     MR. BURKE: Yes. I don't know the precise number of

8    clients, but we can certainly --

9     THE COURT: Are you willing to admit that that telephone

10   number was used on all of those tax returns as the tax

11   preparer's numbers?

12     MR. BURKE: I believe so, yes.

13     THE COURT: What more do you need with regard to that?

14     MS. ZIELINSKI: Well, your Honor, I guess that's getting

15   ahead to your document requests, so I'll move there too. So

16   we did ask for document requests showing the tax returns that

17   Martin has prepared or his company has prepared.

18     THE COURT: All right. Well, why do you need it if he

19   admits it?

20     MS. ZIELINSKI: Well, there is --

21     THE COURT: Every tax return that they prepared had that

22   particular telephone number on the tax preparer.

23     MS. ZIELINSKI: Right. And then the second reason --

24   that was one reason that we wanted those tax returns and the

25   second reason was to obtain the identity of the clients in

1    case we need to conduct third-party discovery in this case.

2        THE COURT:   What kind of third-party discovery?  What

3    other discovery do you want potentially out of these

4    customers?

5        MS. ZIELINSKI:   Because one -- I mean, one of the main

6    things we want obviously is we want to know what advertisement

7    the company has done.  Now, we have asked for those

8    advertisements and plaintiff is telling me now they never

9    advertised.  I think we have a right to ask the customers if

10   that's true.  I mean, if they received advertisements, if they

11   were told to contact the company at this business number, if

12   they were, you know, in communications and -- I mean, that's

13   something that we're entitled to get.

14       THE COURT:   I don't think you're entitled to go to every

15   one of their clients and ask them what correspondence that

16   they had.  He is saying, he is willing to admit that all

17   correspondence, all -- if there were any advertisements,

18   everything that had to do with these clients, that telephone

19   number was used.  Are you willing to admit that?

20       MR. BURKE:  Yes.

21       THE COURT:   You don't need it.

22       MS. ZIELINSKI:   That only addresses the tax returns,

23   though, your Honor.

24       THE COURT:   Okay, well let's go on to the next item.

25       MS. ZIELINSKI:   I want to do this in the order you

1    suggested.  So for the interrogatories, we simply asked for

2    Martin to identify the director, employees' numbers, business

3    address, mailing address, and telephone numbers for 21st

4    Century Tax.

5        MR. BURKE:  Plaintiff is the only employee.

6        THE COURT:   Well, so answer it.  Why can't you answer

7    that?

8        MR. BURKE:  We can.

9        THE COURT:   Answer it.  Motion to compel is granted as

10   to that.

11       MS. ZIELINSKI:   All right.  Identify the year of

12   incorporation and place of incorporation for 21st Century Tax.

13       THE COURT:   Can't you answer that?

14       MR. BURKE:  Yes.

15       THE COURT:   Will you answer it?

16       MR. BURKE:  We will.

17       THE COURT:   Motion to compel is granted as to that.

18       What else?

19       MS. ZIELINSKI:   And then we asked to identify all

20   advertisements made by 21st Century Tax.

21       MR. BURKE:  We produced the business card, your Honor.

22   My understanding is that that is the only advertisement that

23   the company has used ever.  It has his cell phone number on

24   it.  Counsel this morning mentioned newsletters that plaintiff

25   may have sent out if there were any that used that cell phone

1  number on it, but I spoke to him this morning and my

2  understanding is that there weren't any newsletters.

3      THE COURT:   There is no advertisements.  That's his

4  answer.  Can you answer that in that fashion?

5      MR. BURKE:   We can answer it, yes.

6      THE COURT:   Answer it.  Motion to compel is granted as

7  to that.  Next.

8      MR. BURKE:   Judge, I believe that the scope for these

9  requests is 10 years.  Could we narrow that copy to three

10  years?  I don't think that there is any difference in the

11  responses.  But I also don't think that there is any -- I

12  think 10 years is overreaching.

13      MS. ZIELINSKI:   We will agree to narrow it to the class

14  period, which is four years.

15      THE COURT:   Four years.  Within four years on all of the

16  above.  Okay, keep going.

17      MS. ZIELINSKI:   So we asked for -- well, like I said, I

18  don't think we have gotten a ruling on this one.  We asked for

19  the advertisements.  So we have the interrogatory asking for a

20  list of the advertisements and this is just the document

21  request that goes along.

22      THE COURT:   He says he is going to answer that there

23  weren't any.

24      MS. ZIELINSKI:   Okay.

25      THE COURT:   So the motion to compel is granted as to

1    that and he is going to answer it.

2        MS. ZIELINSKI:   Wonderful.

3        MR. BURKE:  We'll answer that the business card was the

4    only advertisement.

5        THE COURT:   Okay.

6        MS. ZIELINSKI:   And we also asked for other documents

7    where the subject phone number was depicted as being the phone

8    number for 21st Century Tax, so in addition to advertisements,

9    for example, you know, well, I guess this also counts as an

10   advertisement, but web pages, like you said, newsletters,

11   communications with the customers, like the CE Design case

12   talked about, the trade journals.

13       THE COURT:   Correspondence, stationery.

14       MR. BURKE:  Stationery, we would produce a blank

15   stationery, but we're not interested, your Honor, in providing

16   correspondence regarding tax advice.  I don't think it has any

17   relevance to the case and neither do the identities of these

18   clients.  We have already stipulated that anything that he

19   sent, the company or plaintiff sent to these people had the

20   cell phone on it.

21       THE COURT:   All right.  They're stipulating as to that.

22   You don't need the correspondence.  Would you agree that there

23   was correspondence?

24       MR. BURKE:  I don't know for sure, but if there was

25   correspondence, my understanding -- I don't see how there

1    couldn't have been, but my understanding based on

2    conversations with my client --

3        THE COURT:   All correspondence, if any, have that

4    telephone number.  If that's the answer, the motion to compel

5    is granted.  Answer it in that fashion.

6        MS. ZIELINSKI:   And just for clarification, the other

7    thing that we're, of course, interested in, your Honor, is,

8    for example, if this is listed as the phone number in like a

9    published directory, like a yellow pages or anything like

10   that.

11       THE COURT:   Any published directory, white pages, or

12   anything like that that is advertisement actually, or yellow

13   pages would be advertisement.

14       MS. ZIELINSKI:   We also asked for the third parties to

15   whom 21st Tax has provided this phone number, and again, we

16   intentionally made this a broad question, your Honor, because

17   like I said, in the CE Design case, it was, you know, it was

18   the blue book directory.

19       THE COURT:   What did you ask?

20       MS. ZIELINSKI:   Third parties to whom 21st Century Tax

21   has provided the phone number, subject phone number.

22       MR. BURKE:  What number are we on?

23       MS. ZIELINSKI:   I'm sorry, it's No. 9 on the subpoena,

24   for the past two years.  We actually narrowed that one.

25       MR. BURKE:  Judge, we would object to this one.  It's

1   asking for the identities of these clients.  We have already

2   stipulated that when it gave out its phone number, the phone

3   number was the phone number that's the subject of this case.

4       MS. ZIELINSKI:   And although it would encompass clients,

5   I mean, it encompasses anyone.  Like I said, for advertising

6   purposes, or any of these other purposes.  So it's not --

7       THE COURT:   You're telling me for all purposes.

8       MR. BURKE:  Yes.

9       THE COURT:   For all purposes that was the telephone

10   number.  For all the purposes that she mentioned, right?

11       MR. BURKE:  Yes, I believe so.

12       THE COURT:   Okay.  He is going to answer it by saying,

13   by admitting it.

14       MS. ZIELINSKI:   But I want to know the identities of the

15   third parties.

16       THE COURT:   Why?

17       MS. ZIELINSKI:   Because as in the CE Design case, one of

18   the depositions they took was the president of the blue book

19   and they asked him what is the reason people give your fax

20   number?

21       MR. BURKE:  If there was a blue book in this case, they

22   will get it in response to the advertising interrogatory and

23   they can ask my guy questions about it in his deposition and

24   they can go ask the blue book.  But my guy's, my client's tax

25   clients --

1    THE COURT: I agree. I don't think it's necessary to

2 produce anything for the names of the -- you haven't convinced

3 me that you need any of the names of these clients. You're

4 not going to disturb their relationship by this very marginal,

5 that is, marginal in terms of evidence request, especially

6 since they have admitted all of that. Next.

7    MS. ZIELINSKI: So I understand, no customers, but can

8 we have a list of other third parties to whom the number had

9 been provided?

10   THE COURT: All third parties. That's enough. That's

11 enough. Everyone that they contacted. What more can you ask

12 for? If they gave you a list, that wouldn't be enough. They

13 have got them all, they're going to admit to all.

14    All right, next.

15   MS. ZIELINSKI: Yes, and your Honor, I believe this is

16 the final one. It's kind of a combination of a couple. We

17 asked for Articles of Incorporation. I think it's --

18    MR. BURKE: We will produce all the publicly filed

19 documents. We have already produced two of them regarding the

20 corporation.

21   THE COURT: Okay.

22   MR. BURKE: Well, not tax returns of the corporation.

23   THE COURT: Not the tax returns. I don't think that's

24 necessary.

25   MR. BURKE: So you --

1   MS. ZIELINSKI: Well, take out --

2   MR. BURKE: I would like to hear what they want, the

3 documents they want.

4   MS. ZIELINSKI: We requested the Articles of

5 Incorporation.

6   MR. BURKE: I think you have that.

7   MS. ZIELINSKI: The annual reports.

8   MR. BURKE: I think you have the most recent annual

9 report, is that right? I produced two documents. One was the

10 Articles of Incorporation and one --

11   MS. ZIELINSKI: Well, four years of them as we agreed,

12 so --

13   MR. BURKE: If there is any phone number on them, it's

14 the cell phone number. I don't think either of the documents

15 we produced had any phone number on them, but if --

16   THE COURT: Annual reports, as I recall, do not have

17 telephone numbers on them, I don't think.

18   MS. ZIELINSKI: Your Honor, we have done a little bit of

19 our own investigation and we have seen that they filed

20 documents with the phone number on them.

21   THE COURT: Well, the annual reports are public

22 documents, aren't they? Why don't you call the Secretary of

23 State, get copies.

24   MR. BURKE: They haven't produced these documents either.

25   THE COURT: Then you don't have to argue about it in

1    court.

2        MS. ZIELINSKI:   Your Honor, that doesn't obviate the

3    need for them to -- I mean, for example, in this very case

4    there was a motion to compel compelling us to produce our

5    phone records even after he had subpoenaed the phone records

6    from the phone company.

7        THE COURT:   We'll talk about what's good for the goose

8    and what's good for the gander some other time.  These are not

9    important documents for you because you can get them.  Get

10   them all their annual reports for the last five years -- last

11   four years, all annual reports through the Secretary of State

12   of the state in which --

13       MR. BURKE:   I don't think we are going to have to, but we

14   might have to request them from the Secretary of State.

15       THE COURT:   Okay.

16       MR. BURKE:   We'll get them.

17       THE COURT:   Get them.

18       MR. BURKE:   We'll get them.  You said four or five years?

19       THE COURT:   Somebody filed them, somebody must have a

20   copy.

21       MR. BURKE:   I think he probably does.

22       THE COURT:   Okay.

23       MR. BURKE:   So we're getting them Articles of

24   Incorporation and the annual reports for five years.

25       THE COURT:   Okay, four years, I think the same four

1    years.

2        MS. ZIELINSKI:   Four.

3        MR. BURKE:  Four.

4        THE COURT:   Okay.

5        MR. BURKE:  By-laws.

6        MS. ZIELINSKI:   And documents identifying officers,

7    directors, members.

8        MR. BURKE:  You mean documents -- I'm wondering if

9    counsel means documents that have been filed with somebody

10   that identify officers.  I don't really know, that's kind of

11   amorphous.  I mean --

12       THE COURT:   The annual reports indicate the officers.

13   That should be good enough.

14       MS. ZIELINSKI:   Thank you.  I believe that resolves our

15   issues on the motion to compel.

16       THE COURT:   Okay.

17       MR. BURKE:  Judge, we have a motion to quash and a motion

18   for protective order.

19       THE COURT:   So in general the motion to compel will

20   state that the motion is granted in part and denied in part

21   all as stated in open court.  Next.

22       MR. BURKE:  We have got a motion to quash the subpoena --

23   excuse me, which I think probably is granted in part and

24   denied in part because we have gone through that stuff

25   already.

1          THE COURT:   It's the same thing, granted in part and

2     denied in part as stated in open court.

3          MR. BURKE:   And then we have a motion for protective

4     order prohibiting CCH from contacting the clients of 21st

5     Century.

6          THE COURT:   They're not going to know the clients.

7     You're not going to provide the clients' names, right?

8          MR. BURKE:   That's true.   I don't know how they would

9     find out who the clients are, but we're requesting that if

10    they want to do so that they raise it with us and the court

11    first.

12         MS. ZIELINSKI:   Well, I think that that motion for

13    protective order first of all was premature when it was filed

14    and now seems to be moot.   But I mean, we have not tried to --

15    because we don't know their identities, we have not tried to

16    notice up any depositions of his clients.   If that becomes

17    necessary at some point in time, then we would do so, and if

18    we could ever -- if we found the identity of anyone, but at

19    that point I feel like that would be the perfect time to argue

20    this because we would actually know what we were attempting

21    to --

22         THE COURT:   I agree with you.

23         MR. BURKE:   We have the imminent threat.   They have told

24    us that they want to do it.

25         THE COURT:   Well, that's right, they want to do it and

1    they also asked you for all of their names and addresses and I

2    have denied that.  So what they want is not what they're going

3    to be able to do.

4         Now, if they want to go and wander over and talk to a

5    client, this is a free country, isn't it?  I mean, people can

6    talk to people if they want to.  I'm not going to prohibit

7    them from speaking to these people.  They're not your clients,

8    they're not -- they're fair game if they know who they are,

9    and maybe they can find something after talking to these

10   people.  Who knows?  I'm not going to prohibit them from

11   something like that.

12        MR. BURKE:  Your Honor, then I would ask that if -- I'm

13   worried about the relationship between the tax preparer and

14   the taxed.

15        THE COURT:  Well, I understand, but we have protected

16   that by your not disclosing their names and addresses and

17   phone numbers.  If they happen to stumble across a party, why

18   can't they talk to them?  If they interfere with your

19   contractual relationship, you've got one heck of a lawsuit.

20   There is certainly a tort that covers that.

21        MR. BURKE:  I suppose so.  It just seems that we have

22   already established that these people don't have any

23   information and why should we permit it to go there?

24        THE COURT:  Well, we haven't established that they don't

25   have information, we have established that your client used

1    that telephone number with regard to these people.  You have

2    agreed to that.  I'm not going beyond that.

3         So the motion for protective order is denied at this time

4    without prejudice.  It protects against nothing at this point.

5    What else?

6         MR. BURKE:  That's it, your Honor.

7         THE COURT:   There is a motion -- oh, the motion to

8    compel 21st Century Tax Services, that's included, and that's

9    the same order.

10        MR. BURKE:  Right.  Could we ask that before CCH talks to

11   clients that they tell us?

12        MS. ZIELINSKI:   It's just completely speculative.  I

13   guess I don't know at this point why we're talking to them, so

14   I can't say that I necessarily want to agree to that.

15        MR. BURKE:  We would probably file another motion for

16   protective order to figure out what they want to talk to them

17   about.  But we can't file the motion unless we know that

18   they're doing it.

19        MS. ZIELINSKI:   Question, if we were to notice up their

20   deposition, then you would file the motion for protective

21   order?

22        THE COURT:   You know, it's like -- what you're asking

23   for now is you're telling somebody in a lawsuit don't talk to

24   any witnesses or any potential witnesses until you let us know

25   first.  You can't do that.

1       MR. BURKE:  When the plaintiff in -- well, okay.

2       THE COURT:   We don't know at this point why they would

3  be potential witnesses, but if they want to talk to somebody,

4  it's outside the discovery process.  And I think if they want

5  to do that without notifying you, they can do that.  If they

6  hurt the relationship, you know what you can do.

7       MR. BURKE:  Thank you.

8       THE COURT:   There are all kinds of things -- there are

9  all kinds of risks that they encounter if they do it.  If they

10 want to take the risk, let them take the risk.

11      MR. BURKE:  Okay.

12      THE COURT:   Okay.

13      MS. ZIELINSKI:   Thank you.

14      THE COURT:   Give me a status.  When are these answers --

15 when can you make these answers?

16      MR. BURKE:  I think we could do it earlier, but I would

17 ask for two weeks, Judge.

18      THE COURT:   Two weeks.  All that which is compelled

19 should be answered within two weeks, within 14 days.

20      MR. BURKE:  And, Judge, there is one hanging issue from

21 last time we were in before your Honor.  You granted

22 plaintiff's motion to compel in part and denied it in part.

23 You issued an order, your Honor, but the order didn't have the

24 production date on it.  This was five months ago.  Since then

25 the defendant has been producing documents on a rolling basis.

1     I understand that they're finished.  But I would like to know

2     that they're finished.  And so I would ask that they either

3     tell me specifically we're done or that your Honor set a date.

4         MS. ZIELINSKI:   And we can go with the same two-week

5     date that he goes with and we'll be finished.

6         THE COURT:   All production of all written discovery

7     shall be completed and delivered within 14 days.

8         MR. BURKE:  The pending -- the pending.

9         THE COURT:   All of the pending matters.

10         MR. BURKE:  Yes, okay.  Thank you very much.

11         THE COURT:   All right.  Let's get a status.

12         THE CLERK:  Judge, I think you gave them a date early on,

13     August 1st.

14         MR. BURKE:  Good.

15         THE COURT:   All right.  Thank you.

16         *                 *                 *

17         I certify that the above was transcribed

18         from digital recording to the best of my ability.

19         /s/ Lois A. LaCorte

20         _____   _____

21         Lois A. LaCorte              Date

22

23

24

25

# Exhibit C

**TRANSCRIBED FROM DIGITAL RECORDING**

                IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION

NICHOLAS MARTIN, on behalf of himself)
and others similarly situated,      )
                                    )
                    Plaintiff,      )
                                    )
          vs.                       )  No. 10 C 3494
                                    )
CCH, INCORPORATED,                  )  Chicago, Illinois
                                    )  September 26, 2011
                    Defendant.      )  10:29 A.M.

          TRANSCRIPT OF PROCEEDINGS - Motion and Status
     BEFORE THE HONORABLE MARTIN C. ASHMAN, Magistrate Judge

APPEARANCES:

For the Plaintiff:       BURKE LAW OFFICES, LLC
                         155 North Michigan Avenue
                         Suite 9020
                         Chicago, Illinois  60601
                         BY:  MR. ALEXANDER HOLMES BURKE

For the Defendant:       McGUIRE WOODS LLP
                         77 West Wacker Drive
                         Suite 4100
                         Chicago, Illinois  60601
                         BY:  MS. SARAH ANN ZIELINSKI


                  PAMELA S. WARREN, CSR, RPR
                     Official Court Reporter
                    219 South Dearborn Street
                           Room 1928
                    Chicago, Illinois   60604
                       (312) 294-8907

**NOTE:  Please notify of correct speaker identification.**
**FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
**UNINTELLIGIBLE.**

1    (Proceedings held in open court:)

2        THE CLERK:  10 C 3449, Martin versus CCH.

3        MR. BURKE:  Good morning, Judge.  Alexander Burke for

4    the plaintiff.

5        MS. ZIELINSKI:  And Sarah Zielinski for the defendant.

6        THE CLERK:  (Unintelligible).

7        THE COURT:  Yeah.

8        THE CLERK:  So your motion might take a little while.

9        THE COURT:  Okay.  Let's pass that.

10    (Whereupon the Court turned his attention to other matters

11   on his call.)

12        THE CLERK:  10 C 3494, Martin versus CCH.

13        MR. BURKE:  Good morning, Judge.  Alexander Burke for

14   the plaintiff.

15        MS. ZIELINSKI:  And Sarah Zielinski for the defendant.

16        THE COURT:  Good morning.  You have a motion to compel

17   deposition testimony and renewed motion to compel discovery.

18        Does anybody want to respond to that?

19        MR. BURKE:  We oppose the motion, your Honor.  This is

20   rehashing issues as to -- that were already decided by the

21   Court months ago.  The defendant wants to prove that the

22   plaintiff provided his cell phone number in various instances

23   to various people.  We have agreed that he provided his cell

24   phone number to anybody who asked.

25        Perhaps I should back up for a second.  This is a

1    Telephone Consumer Protection Act case.  It is a class action.

2    The allegation is that the defendant auto dialed and sent a

3    prerecorded solicitation to the plaintiff's cell phone.

4         The defendant is trying to prove that the plaintiff

5    consented to receive these calls.  In order to prove that, they

6    are trying to show that he provided his cell phone number to

7    lots of different people.

8         We conceded that he provided his cell phone number to

9    all his clients.  We conceded that it is both his personal

10   number and his business number.

11        Nevertheless, the defendant still persists, even

12   though they lost the motion to compel this information as to

13   document requests and interrogatories, they peppered my client

14   with questions about who his clients are at his deposition.  I

15   objected and instructed him not to answer based on the Court's

16   prior ruling that that information is not relevant given the

17   fact that we conceded that he provided his number to his

18   clients.

19        So that's the first issue as to the motion to compel.

20        MS. ZIELINSKI:  Your Honor, the most recent case out

21   of the Seventh Circuit that talks about the issue of consent is

22   the CE Design case.  We mention it in our motion.  It --

23   essentially in that case, the Seventh Circuit, it vacated an

24   entry of class certification.  So this issue of consent is not

25   only important to the merits of this case, but also class

1  certification.

2         And the reason it vacated class certification was

3  because it held that two key facts in that case possibly lent

4  itself to a consent defense.  And one was the fact that the

5  plaintiff had published its phone number in an online and print

6  directory called the Blue Book.  And the second was that the

7  plaintiff had made its phone number available online.

8         We have been -- we have issued discovery trying to

9  figure out the manner in which plaintiff in this case has also

10  disseminated his phone number.

11         Now the plaintiff here is arguing that it is enough

12  simply to concede or admit that they gave this phone number to

13  their customers and that's how the customers contacted the

14  plaintiff.  But, your Honor, that's not enough under CE

15  Design.

16         The question is the manner in which that phone number

17  was distributed.  And we found out some things.  We found out

18  that plaintiff had a business card.  We recently found out at

19  the deposition that the plaintiff's phone number was also

20  voluntarily provided to the IRS and put on an online public

21  database called the E-file Locator database.

22         And, your Honor, we're simply at this point trying to

23  figure out what other ways that the plaintiff's cell phone

24  number has been disseminated.

25         We were here before on a motion to compel.  One of the

1    things that we moved to compel were advertisements and other

2    documents where the plaintiff disseminated that phone number.

3    You granted that motion to compel.

4         The plaintiff responded that, oh, just the business

5    card, that's all we have done.  And then we discover these

6    other ways, since both prior to the deposition and at the

7    plaintiff's deposition.

8         Like I said, one is the E Locator database.  And the

9    plaintiff has refused to provide a printout showing his

10   company's entry in that database.  Another thing is at the

11   deposition we learned that the plaintiff gave a public

12   presentation talking about tax-related issues.  And we have

13   asked for a copy of that PowerPoint presentation.  The

14   plaintiff hasn't provided it to us.

15        We believe that there are other websites where the

16   plaintiff's phone number is listed that we have not been

17   provided.

18        And at the last motion to compel, the plaintiff also

19   indicated that they would be willing to give us a copy of the

20   plaintiff's letterhead showing that telephone number there.

21   And we have not gotten any of that since the last motion to

22   compel.

23        We did ask questions also at the plaintiff's

24   deposition.  As we said at the last motion, we are interested

25   in conducting third-party discovery to find out if there are

1  other ways that the plaintiff is disseminating this phone

2  number and not disclosing to us.

3       THE COURT:  Now wait a minute.  So you want the names

4  of the clients who he contacted in some manner and gave his

5  cell phone number, is that -- is that it?

6       MS. ZIELINSKI:  No, your Honor.  What -- well, we

7  want -- it is partly.

8       We want the names of the clients, but we don't want to

9  ask them, did you contact the plaintiff on this cell phone

10  number.  I mean, frankly, that's a very small piece of the

11  puzzle.

12      We want to find out, how did you get this number to

13  begin with?  Did you find it in the Yellow Pages?  Did you find

14  it on the IRS's provider service?  Did you find it --

15      THE COURT:  What does that (unintelligible)?

16      MS. ZIELINSKI:  It is squarely within CE Design, your

17  Honor.  In fact, in that case when the Court vacated the class

18  certification order, it said that the district court had not

19  properly considered the significance of the two factors, the

20  Blue Book directory, and the fact that the phone number was

21  online.  And said it looked to an SEC regulation from 2003 and

22  said, that consent is case by case, and it considers the

23  variety of ways in which phone numbers are disseminated to the

24  public.  And it even went through and listed.  It said, for

25  example, business cards, advertisements, directory listings,

```
 1   trade journals.

 2           THE COURT:  But as I understand it, they have agreed

 3   they have done all that.

 4           MR. BURKE:  Furthermore, your Honor --

 5           THE COURT:  But just a moment.

 6           MR. BURKE:  Okay.

 7           MS. ZIELINSKI:  No, your Honor, they are saying that

 8   all they have is this business card.  That's what they are

 9   saying to us.  They're not saying -- they are saying that they

10   didn't advertise.

11           You compelled them to produce advertisements, and we

12   got a printout of a business card.  So they are not agreeing

13   that they have done all these things.

14           THE COURT:  You mean --

15           MR. BURKE:  Your Honor, we produced all of the

16   advertisements.

17           THE COURT:  The advertisements.  She said the only

18   thing you produced was a business card.

19           MR. BURKE:  That's it.

20           THE COURT:  That's all the advertisement?

21           MR. BURKE:  Yes, Judge.  That was the testimony at the

22   deposition.  That's --

23           THE COURT:  Okay.

24           MR. BURKE:  That's all we have.

25           I have a copy of this transcript they are talking
```

 1   about.  It is not an advertisement, it is a -- pardon me -- not

 2   a transcript, it is a PowerPoint --

 3        THE COURT:  Did you give that to them?

 4        MR. BURKE:  I don't think it is responsive to any

 5   discovery requests.  I mean, I suppose we can give it to them.

 6        THE COURT:  Well, give it to them.  It doesn't hurt

 7   you, does it?

 8        MR. BURKE:  It doesn't -- I don't think so.

 9        THE COURT:  But --

10        MR. BURKE:  It doesn't have the phone number.

11        But what we don't want to do -- I mean, what they are

12   trying to do is they are trying to -- they are trying to harass

13   my client by putting pressure on him by contacting his

14   clients.

15        We don't -- what I'm worried about is that they are

16   going to issue subpoenas to the kids that were at the --

17        THE COURT:  I understand that.  But we have protected

18   your client so far.

19        But if you have got that kind of stuff, they want to

20   find out every which way you disseminated that number.

21        MR. BURKE:  I don't believe the number is in here,

22   but -- and this is not -- I don't think this is a complete

23   copy, but I will send her a complete copy of it.

24        THE COURT:  What else do you want?

25        MS. ZIELINSKI:  Well, like I said, we have got the

```
 1   entry in the database.  We found out at the deposition that the
 2   plaintiffs --
 3           THE COURT:  You got that.
 4           MR. BURKE:  I have got four pages that the plaintiff
 5   had -- or pardon me -- three pages that I will send over
 6   today.  We redacted the tax ID number.
 7           THE COURT:  Okay.
 8           MR. BURKE:  There is no letterhead.
 9           MS. ZIELINSKI:  And then also we believe there is
10   other websites that the plaintiff's phone number appears on, in
11   addition to the ones that we have -- we have already been
12   given.
13           THE COURT:  All right.  I want you to make a list of
14   all websites which contain your client's number.
15           MR. BURKE:  Well, your Honor, as a small business
16   owner, I know that I -- my business, Burke Law Offices, has
17   shown up on a bunch of websites that I never reached out to.
18           THE COURT:  All the ones that you know of.
19           MR. BURKE:  That he -- that he reached out to or that
20   exist?
21           THE COURT:  That exist.  That exist.
22           MR. BURKE:  I believe he did that before his
23   deposition, and they asked questions about them.  We will --
24           THE COURT:  If she did it, then you have it.  Do it
25   again.  Okay?
```

1    MR. BURKE:  So --

2    THE COURT:  Rather than arguing about it, do it again.

3    MR. BURKE:  So what we will do is we'll just Google

4  his --

5    THE COURT:  You say you have it, so send it over.

6    MR. BURKE:  It is a difficult thing to comply with

7  because he -- he testified about what -- how he advertised in

8  his deposition.  And I don't think there was very much of it at

9  all.

10    But when you have a business in this day and age,

11  people -- Manta was one of these websites.  He never -- he

12  doesn't have any relationship with Manta dot com.  He never

13  gave his info to Manta dot com.  But Manta dot com is like a --

14  Manta dot com put his info on their website.

15    So we produced that.  We went out, and we found that

16  information.  We produced it.

17    THE COURT:  All the information that you have on that.

18    MR. BURKE:  Well --

19    THE COURT:  Nobody is telling you to go out and make

20  an investigation and do their investigation for them.  But

21  everything that you know of, list them.

22    MR. BURKE:  Okay.

23    THE COURT:  You have done it already you say, so you

24  must have a list.

25    MR. BURKE:  Well --

```
 1          THE COURT:  There is nothing to it.

 2          MR. BURKE:  We'll make a list, and we'll explain what

 3   each one is.

 4          THE COURT:  Okay.

 5          MS. ZIELINSKI:  So --

 6          THE COURT:  What else?

 7          MS. ZIELINSKI:  So, your Honor, we -- like we said, we

 8   are interested in conducting third-party discovery to figure

 9   out -- because he's saying all the plaintiff ever gave out was

10   a business card.  And we want to find out from these customers,

11   how did you find out about the plaintiff's business?  Did you

12   find out from this business card or did you find out from some

13   other way?  Because if they indeed found him -- his -- this

14   plaintiff's name in a directory or in a Yellow Pages or any of

15   these other manners --

16          THE COURT:  We went through that last time.  I am not

17   going to allow a -- you to go down his client list and take

18   depositions of his clients.  Clients don't like that.  Clients

19   have a tendency to leave and go elsewhere where they are not

20   going to have depositions taken of them.  And there is no

21   reason for it.  You have got as much as you can get.  And I

22   don't think you can go down the list of his clients and ruin

23   his business.

24          MS. ZIELINSKI:  And, your Honor, if we were to ruin

25   his business, he would clearly have an action against us.
```

 1  That's not what we're trying to do here.

 2          THE COURT:  I don't know if he would have an action or

 3  not.  But that part of your motion is denied.

 4          What else?

 5          MS. ZIELINSKI:  And, your Honor, we had also -- in

 6  addition to the list of customers, we had also asked questions

 7  on that same topic at the deposition.  And there was no court

 8  order in place preventing us from asking those questions at the

 9  deposition.  The only prior ruling was on our previous motion

10  to compel.  In fact the plaintiff had brought a motion for a

11  protective order.

12          THE COURT:  Protected the name and addresses of the

13  clients.  So what you can't get in writing, you're not going to

14  be able to get orally in a deposition.

15          MS. ZIELINSKI:  Okay.  The next issue was testimony.

16  We had asked questions about the tax deductions taken by the

17  company, 21st Century Tax, which is the plaintiff's company.

18  This is relevant to our -- as the plaintiff has conceded, he

19  uses this cell phone as a personal cell phone number, but also

20  a business cell phone number.  And liability under the TCPA is

21  slightly different depending on what kind of telephone number

22  this is.  Plaintiff has conceded that it is both.

23          But we were asking questions about the tax deduction

24  that the plaintiff has taken and whether his company, 21st

25  Century Tax, has deducted cell phone expenses and what portion

1   of those were deducted.  He --

2           THE COURT:  What's the relevance?

3           MS. ZIELINSKI:  Well, like I said, it is a question of

4   whether this is a business cell phone or --

5           THE COURT:  They agree.

6           MS. ZIELINSKI:  -- personal cell phone.

7           THE COURT:  They agree it is business and personal.

8           MS. ZIELINSKI:  And --

9           THE COURT:  They agree.  So why do you need more

10  discovery on an issue that they agree to?

11          MS. ZIELINSKI:  Because, your Honor, the -- the

12  demarcation -- if a phone number is both, under the law, it is

13  not clear -- liability is not clear.  But if we can establish

14  that, no, a portion of these cell phone expenses were deducted,

15  then clearly this is -- was a business phone call, and there is

16  a question of liability under the TCPA.  So that's why, your

17  Honor.

18          MR. BURKE:  I believe I permitted him to answer this

19  question, and he said that he took no deduction.

20          THE COURT:  Was that the question?

21          MS. ZIELINSKI:  And we -- well, the questions that

22  we're moving to compel are -- you know, we had asked him how he

23  would go about deducting them, whether he -- they'd prepare the

24  tax returns for 21st Century Tax yet.

25          MR. BURKE:  They are some hypothetical questions of

1    the tax preparer how he might possibly, even though he didn't,

2    how he might formulate his tax deductions for his cellular

3    phone.

4         MS. ZIELINSKI:  And we asked him if he would be

5    permitted to deduct that, because that's also a question too.

6    I mean, just because he says no doesn't mean -- I mean, his

7    counselor refused -- instructed the witness not to answer

8    question after question on this topic.

9         MR. BURKE:  Because your Honor protected my client's

10   tax returns as well.

11        THE COURT:  I did, and I don't -- I don't see the

12   relevance of it.  I'm sorry, I do not see the relevance of your

13   exploring how he did his income tax return.  That's -- so your

14   motion with regard to that is denied.

15        What else?

16        MS. ZIELINSKI:  The final point, your Honor, was

17   testimony regarding the other many lawsuits in which the

18   plaintiff is also a plaintiff.  And specifically we were

19   interested in finding out the plaintiff's aggregate income from

20   settling those other lawsuits, and also we had asked questions

21   about the underlying debts.  A lot of those other lawsuits were

22   FTCPA cases, and the questions were --

23        THE COURT:  What's the relevance?

24        MS. ZIELINSKI:  This is relevant to the question of

25   whether plaintiff is an adequate class representative.  This

1    kind of testimony is all the time considered, especially, you

2    know, if the plaintiff is going around filing all these not

3    valid lawsuits in order to make money off of them, then it

4    shows that his interest, that he is personally invested in this

5    and not necessarily looking out for the interests of the other

6    class members.

7            THE COURT:  Counselor.

8            MR. BURKE:  Judge, whether the plaintiff pays his

9    debts or files FTCPA cases has nothing to do with this case,

10   which is based upon an unsolicited telemarketing call from a

11   company that has nothing to do with the plaintiff.

12           Furthermore --

13           THE COURT:  She says that the relevance has to do with

14   whether that's his business, whether he goes around and that's

15   -- that's the way he makes a living.

16           MR. BURKE:  They are asking how much.

17           THE COURT:  Aren't they entitled to do that?

18           MR. BURKE:  They are asking how much money he made in

19   these settlements.  I don't think that's relevant to anything.

20   I mean, the value of another lawsuit in an individual

21   settlement doesn't have anything to do with whether he's

22   adequate in this lawsuit.

23           Furthermore, your Honor, we called chambers on this

24   issue.  And we were waiting for a call back, and the defendant

25   ended the deposition before we received a call back.  I was

1  prepared to wait.

2         THE COURT:  I think you ought to answer the question,

3  those questions.  The names of the cases, list the cases.

4         MR. BURKE:  We have done that.

5         THE COURT:  Oh, you have done that already.

6         MR. BURKE:  We have listed the cases.  We haven't

7  given them the value of these confidential settlements.

8         MS. ZIELINSKI:  We -- and of course the objection was

9  that these individual settlements are confidential.  But all we

10  care about is the aggregate, which does not say what any given

11  lawsuit --

12         THE COURT:  Give them an aggregate figure, not

13  individual cases.

14         MR. BURKE:  A yearly aggregate figure?

15         THE COURT:  Yeah.  Right.

16         MS. ZIELINSKI:  And then we'd ask --

17         THE COURT:  Give them the figure.

18         MR. BURKE:  Just for the record, I object to this, but

19  I understand your ruling.

20         THE COURT:  Okay.  That's the ruling.

21         Anything else?

22         MS. ZIELINSKI:  And then the only other thing were the

23  deposition questions we asked about the underlying debts and

24  the FTCPA cases and whether they were valid debts.

25         THE COURT:  The underlying debts of who?

1          MS. ZIELINSKI:  Of the plaintiff, once again, in his

2     -- in these other lawsuits where he's a -- filed.

3          THE COURT:  His debts?

4          MS. ZIELINSKI:  Correct.

5          THE COURT:  Why?

6          MS. ZIELINSKI:  Your Honor, he -- the plaintiff, it

7     seems, racks up debts, and then intentionally does not pay them

8     so that he can bring these other --

9          THE COURT:  What does that have to do with this case?

10         MS. ZIELINSKI:  Again, your Honor, it is directly

11    relevant to the question of his adequacy as a class

12    representative.  And the fact that he is --

13         THE COURT:  Poor people can't file class suits --

14         MS. ZIELINSKI:  No --

15         THE COURT:  -- only people who are solvent, right?

16         MS. ZIELINSKI:  No, they certainly can, your Honor.

17    But the question of --

18         THE COURT:  That is -- those questions are overruled.

19    Your motion with regard to that is denied.

20         MS. ZIELINSKI:  That's all, your Honor.  Thank you.

21         THE COURT:  Okay.

22         MR. BURKE:  Judge, so we're here on status as well.

23         THE COURT:  Okay.  Well, the order on this will be in

24    accordance with the Court's oral rulings made in open court for

25    the reasons stated in open court.

1        All right.  What else?

2        MR. BURKE:  Judge, discovery closes this week.  We

3    have an expert discovery schedule set where the plaintiff is

4    supposed to disclose his class certification expert on October

5    14th.

6        Judge, we'd ask for a 30-day extension for that date.

7    If you may -- you may recall that there was another motion to

8    compel that was filed by the plaintiff in December.  That was

9    granted in part and denied in part.

10        THE COURT:  Okay.

11        MR. BURKE:  Documents straggled in for several months

12    on that -- on that order.  And last time we were in front of

13    your Honor, your Honor set a deadline for the last documents

14    that were possibly responsive to both parties on the motion to

15    compel.

16        Documents continue to come in.  In fact, just two

17    weeks ago I received 200 emails that mention the auto dialer.

18    These are -- I think before then I had received maybe four

19    emails.

20        Of course they came in the format that wasn't --

21    wasn't electronically accessible at first, so I had to demand

22    that they come.  And then there was another week delay.  And

23    then they came in an electronically usable format.

24        It has also come to light that the defendant, the

25    database upon which the defendant drew in order to query its

 1  dialer lists for these auto dialed calls, there were several

 2  thousand calls per day from these dialers.

 3      The database wasn't preserved at the time of the -- of

 4  receipt of the document preservation request in June of 2010.

 5  In fact the database wasn't preserved when your Honor ordered

 6  them to provide it to me in December 2010.

 7      The database as far as I can tell, according to

 8  deposition testimony and what I have, the database was first

 9  preserved in April 2011.  And, of course, the database was

10  changing every single day in the interim, including the entry

11  as to the plaintiff.  You know, when they received the lawsuit,

12  instead of preserving the database, they changed the plaintiff

13  to do not call.

14      We're trying to figure out what this means for the

15  rest of our case.  You know, so there are two separate issues.

16  There is one, documents having to do with the dialer.  I'm not

17  sure I have them all yet.  Even though I have two court orders

18  that said I am supposed to have them, I'm pretty sure

19  I -- well, I don't have any idea what I have or what I don't

20  have.

21      Second, we're trying to figure out what this database

22  means.  I mean, we have -- we have four years -- I understand

23  we have four years of phone records that show millions of phone

24  calls.  You know, I received a second wave from a previously

25  undisclosed phone company of phone records just a couple months

1    ago.

2        For these reasons, you know, we anticipate possibly

3    filing a spoliation motion.  And we'd ask that the class

4    certification expert deadline be extended for 30 days.

5        MS. ZIELINSKI:  Your Honor, we don't have any

6    objection to the 30-day extension for the reason that we also

7    have a third-party subpoena outstanding.  We subpoenaed the IRS

8    to get more information about their E Locator database service

9    that I mentioned earlier.

10       They have indicated that they are planning to respond,

11   but they said that they would like more time.  So the 30 days

12   is not a problem.

13       I would like to respond, however, to some of the

14   accusations that the plaintiff has just made and about a

15   destruction of documents.  As you know, this is a TCPA case.

16   And the main question, beside the issue of consent, setting

17   that aside, is who we called with our dialer.  And the

18   plaintiff is under the mistaken impression, even though I have

19   explained this to him several times, that you can simply get

20   that list by taking the same queries that we would have used at

21   the time to dial -- you know, we told the dialer to make the

22   phone calls.  That if we ran those queries against the database

23   as it existed on the day they filed the lawsuit, that they

24   could just get a class list.

25       And that's not the case.  Because as I have explained

1    to them, the database changed every day.  So you would need a

2    copy of the database from every single day during the class

3    period and the scripts from those days, and you would have to

4    run it that way.

5           So it is a little bit ridiculous that they're saying

6    that we should -- that, you know, that we, you know, lost any

7    evidence.

8           And, more importantly, your Honor, we have got the

9    phone records.  We have got the phone records showing the phone

10   calls that we have made, and it -- there they are.  They are

11   right there, and we have given it to them.

12          And the only reason we -- it took so long for us to

13   get the second batch of phone records that we just gave them in

14   the last couple of months is because we had our own difficulty

15   getting those records in our possession.

16          MR. BURKE:  I didn't even know about them.

17          THE COURT:  Now, please, please.  Only one person at a

18   time.

19          MS. ZIELINSKI:  So, your Honor, we think that

20   this threatened motion for spoliation is not well founded,

21   and --

22          THE COURT:  Well, I'm not -- there is nothing before

23   me with regard to any of those things.  The only motion that's

24   before me is a motion to extend expert discovery for 30 days.

25   That's granted.

```
 1              MR. BURKE:  So --

 2              MS. ZIELINSKI:  Thank you.

 3              MR. BURKE:  -- just extend all the deadline -- pardon

 4   me -- all the deadlines 30 days.

 5              THE COURT:  Well, I don't want to extend Judge Dow's

 6   deadlines.  If he has a deadline for filing of a motion for

 7   certification -- does he have anything like?

 8              MR. BURKE:  I don't think so, Judge.  What I am

 9   talking about is just the class --

10              THE COURT:  All the discovery deadlines are extended

11   by 30 days.

12              MR. BURKE:  We don't think that there is any need to

13   extend the fact discovery deadline.  All --

14              THE COURT:  Well, she still has a subpoena out.

15              Thirty days.  All discovery deadlines are extended by

16   30 days.

17              Come back here on October 24, 10:00 o'clock for

18   status.

19              MR. BURKE:  Thank you.

20              MS. ZIELINSKI:  Thank you, your Honor.

21       (Which concluded the proceedings in the above-entitled

22   matter.)

23

24

25
```

1       CERTIFICATE

2            I HEREBY CERTIFY that the foregoing is a true, correct

3   and complete transcript of the proceedings had at the hearing

4   of the aforementioned cause on the day and date hereof.

5

6   /s/Pamela S. Warren                    October 2, 2011
    Official Court Reporter                     Date
7   United States District Court
    Northern District of Illinois
8   Eastern Division

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25