## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| NICHOLAS MARTIN on behalf of himself and others similarly situated, Plaintiff, | ) ) ) ) | 1:10-cv-3494 |
|  | ) | Judge Dow |
| v. | ) ) | Magistrate Judge Geraldine Soat Brown |
| CCH, INCORPORATED, Defendant. | ) ) |  |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## I.     INTRODUCTION

The parties' Settlement Agreement ("Settlement") [Docket No. 169], submitted to the Court for preliminary approval, resolves this putative class action for alleged violations of the federal Telephone Consumer Protection Act ("TCPA"). The Settlement includes a $2 million Settlement Fund that provides, among other things, for settlement class member payments.[1] The Settlement also provides representations and warranties by the Defendant, CCH Incorporated,[2] ("CCH") that it has established policies and procedures

---

[1] Under the settlement, payments to claimants are capped at $150.

[2] The telephone calls at issue in this case were made by an entity called CCH Small Firm Services ("CCH SFS"). CCH SFS is part of CCH, Incorporated, and is the only unit that used the autodialer during the class period. As such, the class definition has been conformed to reflect that the calls were made by CCH SFS. Section III(1), *supra*.

on a going forward basis designed to ensure that its use of autodialing systems for telemarketing purposes are designed to be compliant with the TCPA. This relief is directly tailored to Plaintiff's TCPA claim.

The parties reached this resolution after nearly two years of hard fought litigation followed by five months of arms-length settlement negotiations, including a full day mediation session with the reputable JAMS mediator Hon. Wayne Andersen (Ret.). The litigation involved significant motion practice and the exchange of substantial discovery by both parties. The parties were therefore able to make an informed evaluation of the strengths and weaknesses of their respective claims and defenses before they began discussing settlement.

In evaluating the fairness of a proposed class action settlement, the most important factor the Seventh Circuit considers is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement. *Am. Int'l Group, Inc. v. ACE INA Holdings, et al.*, Nos. 07-cv-2898, 09 C 2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012). While the Plaintiff believes that he would succeed at class certification and on the merits of his claims at trial, success is by no means assured. Throughout the litigation, CCH vigorously pursued all lines of defense and succeeded in moving to dismiss part of Plaintiff's case. The relief provided here,

payments from the Settlement Fund coupled with CCH's representations and warranties regarding TCPA compliance, meets and exceeds the standards of fairness promulgated by the Seventh Circuit and the Federal Rules of Civil Procedure. Accordingly, the Court should preliminarily approve the settlement so that class members can receive notice of their rights.

## II.     STATEMENT OF THE CASE

## 1.     The Parties' Claims and Defenses

Contemporaneous with the filing of their proposed Settlement, Plaintiff has sought Court approval, unopposed by CCH, to file his Second Amended Class Action Complaint ("SAC"). Settlement, Exhibit A. The SAC alleges violations on behalf of a nationwide class of individuals of the TCPA, 47 U.S.C. §227(b),[3] which prohibits placing telephone calls to a person's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice message. SAC, ¶¶38-41. Plaintiff alleged that CCH's TCPA violations were willful or negligent, (SAC, ¶40), and sought the maximum statutory damages of $500 per violation, and up to $1,500 per violation CCH's conduct was proven to be willful. SAC, ¶42. Plaintiff also

---

[3] Plaintiff's original complaint also included a claim for violation of the Illinois Electronic Mail Act, 815 ILCS 511/5 *et seq.* ("IEMA"). The Court dismissed this claim, finding that it is preempted by the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM Act"). Memorandum Opinion and Order, [Docket No. 51] (March 24, 2011).

sought injunctive relief prohibiting CCH from violating the TCPA in the future through calling cellular telephones using an automatic telephone dialing system and/or a prerecorded voice message. *Id*. CCH has previously denied these allegations and continues to do so.

2. **The Hard Fought, Protracted Litigation and The Substantial Amount of Discovery Completed**

Plaintiff filed his original putative class action complaint on June 8, 2010, (Docket No. 1), which he amended on June 24, 2010. [Docket No. 9]. Plaintiff also filed an initial motion for class certification. [Docket No. 4]. CCH answered Plaintiff's amended complaint with respect to his TCPA claim, (Docket No. 19), and moved to dismiss Plaintiff's claim for violations of the IEMA. [Docket No. 20]. CCH's motion to dismiss was fully briefed, and CCH was ultimately successful on its motion. [Docket No. 51]. Plaintiff moved forward into discovery on his remaining TCPA claim.

The discovery stage of this case was particularly hard fought. After extensive discovery meet and confers, both sides filed multiple motions to compel, which were fully briefed. *E.g.*, [Docket Nos. 36, 79, 89, 97]. The parties also fully briefed CCH's Rule 72(a) Objection to the Magistrate Judge's Order denying certain parts of its motion to compel discovery from Plaintiff (Docket No. 86), as well as Plaintiff's Motion for Rule to Show Cause and for Sanctions. [Docket No. 89]. The parties exchanged

documents, answered interrogatories and conducted depositions, including the deposition of Plaintiff and of Brian Holbrook ("Mr. Holbrook"), who CCH designated as a corporate representative under Fed. R. Civ. P. 30(b)(6).

Through discovery, the parties were able to evaluate the strengths and weaknesses of their claims and defenses, including, without limitation, CCH's defense that it had the prior express consent of Plaintiff and putative class members to contact them. Among other things, Plaintiffs discovered information relating to how CCH's automatic telephone dialer operated during the class period and received phone records for all calls placed by the automatic dialer as well as information about CCH's database that directs the automatic telephone dialer as to which person to call. *See, e.g*., [Docket No. 49] (Order on Plaintiff's Motion to Compel Discovery). Plaintiffs employed a consultant to help identify methodologies to identify which calls in CCH's telephone records were likely to have been made to cellular telephones. As discovery progressed, Plaintiff sought leave to file a Second Amended Complaint to conform his factual allegations, claims and class definition to the information he learned in discovery. [Docket No. 83].[4]

---

[4] At the time the parties agreed to enter into settlement negotiations, Plaintiff's motion for leave was still pending.

Plaintiffs also learned in discovery that CCH received many call recipients' cellular telephone numbers, including the Plaintiff's, through Freedom of Information Act ("FOIA") requests it made to the Internal Revenue Service. *See, e.g.*, [Docket No. 83]. As settlement discussions commenced, the parties, including their respective consultants, worked cooperatively to define the universe of calls to individuals whose contact information was obtained by CCH in the same way that they had received the Plaintiff's. At the time the parties agreed to enter into settlement negotiations, Plaintiff's motion for leave was still pending.

In addition to the discovery obtained during litigation, Plaintiff also obtained confirmatory discovery on terms of the Settlement relating to CCH's processes for identifying class members and the changes in its policies and practices on a going forward basis to ensure that CCH's use of autodialing systems for the purposes of telemarketing is designed to be compliant with 47 U.S.C. § 227(b)(1)(A)(iii). Settlement, ¶6.7. Plaintiff obtained this confirmatory discovery through an additional deposition of Mr. Holbrook conducted on June 2, 2012. *Id*.

3.   **The Parties' Arms-Length Negotiations in Mediation with Judge Andersen**

On March 9, 2012, the parties engaged in a full day mediation session with the Honorable Judge Andersen (Ret.) of JAMS. This process resulted

in a settlement term sheet written under the supervision of Judge Andersen.
The settlement term sheet set forth the parties' agreements on some of the
major terms of the Settlement, including the Settlement Fund and payments
to settlement class members. Following the execution of the settlement term
sheet at the mediation, the parties spent nearly five months hammering out
the specifics of the Settlement now before the Court for preliminary
approval. Every substantive detail of the Settlement was vigorously
negotiated. Declaration of Alex Burke in Support of Unopposed Motion for
Preliminary Approval of Class Action Settlement, ("Burke Decl.,), ¶9, 11;
Declaration of Shennan Kavanagh in Support of Motion for Preliminary
Approval of Class Action Settlement, ("Kavanagh Decl.,"), ¶11. For
example, CCH only agreed to pay, subject to Court approval, Plaintiff's
attorney's fees and costs after Judge Andersen reviewed Plaintiff's counsel's
detailed time and expense records and weighed in on their reasonableness.
Burke Decl., ¶10; Kavanagh Decl., ¶12. Ultimately, the parties were able to
reach agreement on the remaining terms of the Settlement.

### III.   THE TERMS OF THE SETTLEMENT

### 1.   Settlement Class

The proposed Settlement would establish a Settlement Class defined
as follows:

> All persons in the United States who received a call to their cellular telephone between June 8, 2006 and August 16, 2010 made by CCH SFS for the purposes of telemarketing using an automatic telephone dialing system, provided however, that both of the following conditions are met:
>
> 1. CCH SFS first obtained the person's cellular telephone number from a list provided by the Internal Revenue Service pursuant to a Freedom of Information Act (FOIA) request, and
> 2. The person had not purchased a CCH SFS product in the 18 months prior to the date of the call.

Settlement, ¶3.2.

For the purpose of this definition, the term "person" includes individuals, business entities and partnerships. *Id*. For purposes of this settlement, joint owners of a single cell phone are deemed to be a single member of the Settlement Class. *Id*. The parties agree that there are 18,024 persons in the Settlement Class. *Id*.

**2.    Economic Relief**

**A.    Settlement Fund**

The proposed Settlement would establish a $2 million Settlement Fund that will be used to pay notice and administration costs (estimated at $51,782), Court-approved attorney's fees and costs (of $600,000 and $5,000 respectively), a Court-approved Plaintiff's service payment (of $9,500) and settlement class member claimant payments. Settlement, ¶¶3.3, 4.1. Authorized claimants are entitled to equal shares of the remainder of the

Settlement Fund after payments for notice, administration, attorney's fees and costs and Plaintiff's service payment, however, no settlement class member's payment will exceed $150.00.[5] Settlement, ¶3.3(b)(1).

Under this proposed distribution plan, approximate settlement class member payments will be approximately $74.00 per claimant if every member of the 18,024 settlement class files a claim. If forty-eight percent of the settlement class or less files claims, they will receive the maximum amount of $150.00.

### B.    *Cy Pres*

If any residual remains after settlement class member payments, the first $250,000 of that amount will be distributed in the nature of *cy pres* to non-profit organizations agreed up on and proposed by the parties and approved by the Court. Settlement, ¶3.3(iv). The parties propose that any residual be divided equally in amounts of one third, and directed to the Chicago Ladder Up Tax Assistance Program, the Chicago Bar Foundation's Investing in Justice Campaign, and Equal Justice Works as *cy pres* recipients.

---

[5] Absent a finding of willfulness, maximum individual damages for a violation of the TCPA are set at $500.  47 U.S.C. § 227(b)(3).

**3.**    **Representations and Warranties**

In addition to economic relief, CCH has provided representations and warranties that its policies and procedures with respect of its use of autodialing systems for the purposes of telemarketing are designed to be compliant with the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), on a going forward basis. Settlement, ¶6.7.

**4.**    **Notice and Administration**

True and correct copies of Plaintiff's proposed Notice and Claim Form are attached to the Settlement as Exhibits C and D, respectively. The Notice and Claim Form will be mailed by first class mail to the last known address of settlement class members in CCH's records. Settlement, ¶6.3. CCH's records are the best available source of Settlement Class Members' addresses because it maintains an up to date, robust sales force database.

All of the settlement class members' addresses will be run once through the U.S. Post Office's National Change of Address ("NCOA") system by the Settlement Administrator, and, if appropriate, will be updated based on the information obtained prior to mailing. Settlement, ¶6.3. Returned notices will be re-mailed if they are returned with a postmark date that is within twenty-five days of the postmark date of the Notice and contain a forwarding address. *Id*.

In addition to mail notice, the Settlement Administrator will provide a link on its website to a central site maintained by the Settlement Administrator for settlement class members to obtain downloadable and printable copies of the Settlement, the [Proposed] Second Amended Complaint, the Notice and Claim Form. Settlement, ¶6.6. The website will also include a statement of the parties, a list of anticipated frequently asked questions and responses, and such other information as may be agreed to by the parties that will assist settlement class members. *Id*.

5. **Opt Out Opportunity and Right to Object**

After receiving notice, Settlement Class Members will have an opportunity to exclude themselves from the Settlement or to object to its approval. Settlement, ¶7.4.

The deadlines for filing opt out requests and objections will be conspicuously listed in the Notice, as well as on the Settlement Administrator's website. *E.g.*, Notice, pp. 3-4. The process for filing exclusions and objections is also explained in the Notice and on the website. *E.g.*, Notice, pp. 3-4. With regard to objections, the Notice informs settlement class members that the Final Approval Hearing will be the only opportunity for them to appear and have their objections be heard. Notice, pp. 2-3. The Notice also informs settlement class members who choose to

participate in the Settlement that they will be bound by the release. Notice, pp. 3-5.

**6.    Release**

The release is appropriately tailored to the claims raised in the proposed SAC. In exchange for Settlement benefits, Plaintiff and participating settlement class members will release CCH and all of its affiliates from claims relating to or arising out of the allegations asserted in the action styled *Martin v. CCH, Incorporated*, No. 1:10-cv-03494 (N.D. Ill.), under any legal theory (including claims under 47 U.S.C. § 227 and 815 ILCS § 511/1 *et seq*.).  Settlement, ¶5.1.

## IV.    ARGUMENT

**1.    The Settlement Agreement Should Be Preliminarily Approved as Fair, Reasonable and Adequate**

The Settlement represents a fair and reasonable resolution of this dispute and is worthy of notice to, and consideration by, the settlement class members. It will provide financial relief to participating settlement class members and will relieve the parties of the burden of litigation.

In order to begin the approval process, Plaintiff requests, without opposition by CCH, that the Court enter the Proposed Preliminary Approval Order certifying the Settlement Class, preliminarily approving the Settlement Agreement, providing for notice to the class, scheduling the final

approval hearing, and establishing the Settlement Fund. A Proposed

Preliminary Approval Order is attached to the Settlement as Exhibit B and

also submitted with this motion for the convenience of the Court. The

Proposed Preliminary Approval Order also sets suggested deadlines for opt

outs, objections, and the return of claim forms.

### A. The Standard for Preliminary Approval of Class Action Settlement Agreements

Under Fed. R. Civ. P. 23(e)(2), a court may approve a class action

settlement if it is "fair, reasonable, and adequate." There is usually an initial

presumption of fairness when a proposed class settlement "is the product of

arm's length negotiations, sufficient discovery has been taken to allow the

parties and the court to act intelligently, and counsel involved are competent

and experienced." H. Newberg, A. Conte, Newberg on Class Actions §11.41

(4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995

WL 17009594, at *3 (N.D. Ill. Oct. 10, 1995). As the Seventh Circuit

recognizes, courts generally favor settlements of class actions:

> It is axiomatic that the federal courts look with great favor upon
> the voluntary resolution of litigation through settlement. In the
> class action context in particular, there is an overriding public
> interest in favor of settlement. Settlement of the complex
> disputes often involved in class actions minimizes the litigation
> expenses of both parties and also reduces the strain such
> litigation imposes upon already scarce judicial resources.

*Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d

305, 312-13 (7th Cir.1980)(citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Am. Int'l Group, Inc. v. Ace Ina Holdings, Inc.*, 2012 U.S. Dist. LEXIS 25265, at \*14 ("Federal courts naturally favor the settlement of class action litigation.") (*quoting, Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)).

District court review of a class action settlement proposal is a two-step process. *In re Northfield Laboratories, Inc., Securities Litigation*, No. 06 C 1493, 2012 WL 366852, at \*5 (N.D. Ill. Jan. 31, 2012), *citing, In re AT&T Mobility Wireless Data Services Sales Lit'n*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). At the preliminary approval stage, the question for this Court is whether the settlement falls well within the "range of possible approval," and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising class members of the proposed settlement and to establish procedures for a final settlement hearing under Rule 23(e). *Id.*; *City of Greenville, et al. v. Syngenta Crop Protection, Inc., et al.*, No. 3:10-cv-188-JPG-PMF, 2012 WL 1948153, at \*3 (S.D. Ill. May 30, 2012); Newburg, *supra*, at §11.41. If the district court preliminarily approves a class action settlement, it then proceeds to the second step in the review process, the fairness hearing. *In re Northfield Laboratories*, at \*5; Manual for Complex Litigation (Fourth) §21.633 (2004).

In assessing the fairness, reasonableness and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 280 F.R.D. 364, 375 (N.D. Ill. 2011) (*citing Isby*, at 1199). "[T]he Court must not substitute its own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Id.* (*citing Armstrong*, at 315). To evaluate fairness at the preliminary approval stage, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense the litigation; (3) the presence of collusion in reaching a settlement and (4) the stage of the proceedings and the amount of discovery completed. *Id.* (*citing Synfuel Techs., Inc.*, 463 F.3d at 653) (additional citations omitted); *see also*, *Armstrong*, 616 F.2d at 314; *Isby*, at 1199. Of these considerations, the first is most important. *Synfuel Techs., Inc.*, at 653.

**B.    All of the Factors Weight in Favor of Preliminary Approval**

**a.    The $2 Million Settlement Fund and Representations and Warranties of TCPA Compliance Provide Significant Benefits to the Settlement Class**

Payments to settlement class members ranging from a minimum of $74 to $150 per authorized claimant, depending on the number of

individuals who file claims, is a significant benefit. The statutory damages to which Plaintiff would have been entitled under the TCPA had he succeeded at trial would be $500.00. SAC, ¶42. If every one of the 18,024 settlement class members files a claim they would receive approximately 15% of their $500 statutory damages claim. If forty-eight percent of the settlement class or less files claims, they will receive the maximum amount of $150.00., representing 30% of the $500 statutory damages claim.

Settlements providing a percentage of total potential trial recovery are routinely deemed reasonable and approved. As the Court explained in *Schulte v. Fifth Third Bank*, 805, F. Supp. 2d 560, 583-84 (N.D. Ill. 2011) (Dow, J.), "…numerous courts have approved settlements with recoveries around (or below [10% of the class's maximum potential recovery]," *citing*, *e.g. Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D.Pa.1997) (approving settlement amounting to 5.35% of damages for the entire class period, and 25.5% of damages within the limitations period)); *Erie Forge and Steel, Inc. v. Cyprus Minerals Co.*, Civil No. 94–404 (W.D. Pa. Dec. 23, 1996) (approving settlement of $3.6 million where plaintiffs' expert estimated damages at $33 million) *In re Domestic Air Tranp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993); (approving class settlement amount that was 12.7% to 15.3% of the estimated possible recovery); *In re*

*Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement which amounted to 12.2% of damages and citing study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

These payments are particularly significant in light of the risks of ongoing litigation. If CCH were to succeed on one of its defenses – that it had the prior express consent of Plaintiff and settlement class members – it would likely prevail in the litigation and settlement class members would recover nothing. In addition to CCH's defenses on the merits, Plaintiff would have been required to overcome a contested class certification motion, on which success is not guaranteed. *See, Schulte*, at 582.

"Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation. *Id*., at *586 (citation omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [settlement class members] will realize both immediate and future benefits as a result." *Id*. Plaintiff and settlement class members will receive their payments now, in lieu of many years from now – or perhaps never. *See*, *Id*. at 582.

Finally, CCH has represented and warranted that it has implemented policies and practices designed to ensure compliance with the TCPA. Settlement, ¶6.7. This prospective relief benefits Plaintiff and the settlement class members (and others) who may have otherwise experienced the same unsolicited telephone contacts Plaintiff challenged. Such relief is considered in evaluating the overall value of the Settlement to Plaintiff and settlement class members. *See*, *Schulte,* at 568-69.

### b. Voluntary Settlement of this Class Action Serves the Interests of the Parties and the Court

As discussed in Section IV(1)(A), there is an overriding public interest in settling class action litigation. Similarly, settlement of this particular case is appropriate. As detailed above, this two-year long litigation has already been lengthy and expensive. Section II(2), *infra*. Ongoing litigation of this case would involve extensive motion practice, including

major litigation such as class certification and summary judgment. Even if Plaintiff succeeded at class certification, he risked an appeal under Fed. R. Civ. P. 23(f), further lengthening and complicating the case. *See*, *Schulte*, at 582 (discussing the complexity and length of consumer class action litigation).

**c.** **The Settlement Resulted from Extensive Arms-Length Negotiations and is not the Product of Collusion**

The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approving settlement upon finding of no "hanky-panky" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. Newberg, §11.42. The nearly two-year duration of the litigation, followed by five months of highly contested settlement negotiations, the excellent result for the settlement class in spite of the significant procedural and substantive hurdles Plaintiff faced, the hard-fought, arms-length course of negotiations, and the participation of the Honorable Wayne Andersen an experienced mediator, are all testaments to the non-collusive nature of the settlement. The Settlement was the result of arms-length negotiations by experienced

class action lawyers. *See*, Section II (3), *supra*, *e.g*., Burke Decl., ¶¶11.

Kavanagh Decl., ¶¶2-7 and exhibits.

### d. The Factual Record was Well Developed Through Independent Investigation

As discussed in Section II(2) *supra*, the nearly 2-year litigation was

lengthy, hard fought and involved intensive motion practice. The discovery

process was thorough and included both formal and informal discovery. *Id*.

The parties were well apprised of the strengths and weaknesses of their

claims and defenses at the time they entered into settlement negotiations. *See*,

Burke Decl., ¶¶8-9; Kavanagh Decl., ¶9. Plaintiff's counsel continued to

obtain information relevant to their case during the settlement negotiations,

such as information relating to the process by which CCH identified

settlement class members and its implementation of policies and practices

designed to ensure compliance with the TCPA on a forward going basis.

Section IV(2), *supra*.

### C. The Proposed Notice to Class Members is Adequate

Under Fed. R. Civ. P. 23(c)(2), class members are entitled to notice of

any proposed settlement and an opportunity to object or opt out before it is

finally approved by the Court. Manual for Complex Litig. (Fourth) § 21.31

(2004). Notice is adequate if it is "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), *quoting, Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

The Notice the parties propose here is clear and straightforward, providing settlement class members with enough information to evaluate whether to participate in the Settlement, as well as directions on how to seek further information. The Notice contains all of the information required by Rule 23(c)(2)(B)(i)-(vii). Notice, p. 1 (nature of the action); *Id.*, (class definition); *Id.*, (summary of the class claims and defenses); p. 3 (ability to enter an appearance); *Id.*, (exclusion rights); *Id.*, at 3-4, (objection rights); and *Id.*, at 4-5 (binding effect of a class judgment on members under Rule 23(c)(3)). Notice, along with a claim form, will be sent by first class mail postage prepaid to the last known addresses of settlement class members as contained in CCH's records. Settlement, ¶6.3. The Settlement Administrator will promptly re-mail any notices returned by the Post Office with a forwarding address. *Id*. In addition, the Settlement Administrator will provide a link on its website to a central site maintained by the Settlement Administrator to obtain downloadable and printable copies of the Settlement Agreement, the Notice and the Claim Form. Settlement, ¶6.6

The notice scheme the parties propose is consistent with the due

process requirements incorporated in Rule 23(c)(2)(B). Rule 23's advisory

committee note states that the "mandatory notice pursuant to subdivision

(c)(2) . . . is designed to fulfill requirements of due process to which the

class action procedure is of course subject." Fed. R. Civ. P. 23(d)(2)

advisory committee's note. (*citing*, *Mullane v. Central Hanover Bank &*

*Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)) (additional

citations omitted).

**2.      The Settlement Class Meets Rule 23's Criteria and Can Be Preliminarily Certified for Settlement Purposes**

For settlement purposes only, the parties have agreed that the Court

may make preliminary findings and enter an order granting provisional

certification of the Settlement Class and appoint Plaintiff and Plaintiff's

counsel as representatives of the Settlement Class. Settlement, ¶3.1. "The

validity of use of a temporary settlement class is not usually questioned."

Newberg, §11:22. The Manual for Complex Litigation explains the benefits

of settlement classes:

> Settlement classes—cases certified as class actions solely for
> settlement— can provide significant benefits to class members
> and enable the defendants to achieve final resolution of multiple
> suits. (citation omitted). Settlement classes also permit
> defendants to settle while preserving the right to contest the
> propriety and scope of the class allegations if the settlement is
> not approved and, in Rule 23(b)(3) actions, to withdraw from
> the settlement if too many class members opt out. An early
> settlement produces certainty for the plaintiffs and defendants

and greatly reduces litigation expenses.

Manual, §21.612.

For settlement purposes only, the Settlement Class is submitted for
certification pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23 (b)(3)
of the Federal Rules of Civil Procedure. *See*, Settlement, ¶3.1. The
Settlement Class is defined in the Settlement at paragraph ¶3.2; (reiterated in
Section III(1), *supra*). As detailed below, for the purposes of settlement only,
the Settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a)
and Fed. R. Civ. P. 23 (b)(3).

Notably, the Northern District of Illinois has routinely certified TCPA
cases like one, even when contested in the litigation context. *G.M. Sign, Inc.*
*v. Group C Communications, Inc.*, No. 08-cv-4521, 2010 WL 744262, at *4
(N.D. Ill., Feb. 25, 2010) (string-citing cases); Section A(b), *infra*. The class
here is therefore particularly appropriate to certify for settlement purposes.

### A.    Fed. R. Civ. P. 23(a) Factors

#### a.    The Class is Sufficiently Numerous and Joinder is Impracticable

The Settlement Class as defined meets Rule 23(a)'s numerosity
requirement. According to CCH's business records, the class comprises
18,024 individuals. Settlement, ¶3.2. This class clearly is sufficiently
numerous. *Jones v. Risk Management Alternatives, Inc.*, No. 02 C 9392,

2003 WL 21654365, at *2 n.3, (N.D. Ill. Jul. 11, 2003) (certifying class,

noting that defendants did not contest numerosity where the class consisted

of 1,500 individuals); *see also*, *McCabe v. Crawford & Co.*, 210 F.R.D. 631,

643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to

establish numerosity). The number of individuals in the Settlement Class,

coupled with the fact that it is a national class that is geographically

disbursed throughout the country, renders joinder impracticable. *See, e.g.,*

*Randolph v. Crown Asset Mgmt.*, LLC, 254 F.R.D. 513, 517 (N.D. Ill. 2008)

(finding that joinder of hundreds of lawsuits is impractical).

### b. The Settlement Class Shares Many Common Issues of Law and Fact

The settlement class satisfies Rule 23(a)(2)'s commonality

requirement because each member received a telephone call on their cellular

phones from CCH SFS's automatic telephone dialing system and claim that

because they were not prior customers of CCH, this conduct violated the

TCPA. SAC, ¶¶23-25; *see also*, Settlement, ¶3.2 (settlement class

definition). Specifically, the settlement class definition only includes

individuals for whom CCH obtained their cellular phone numbers through

Freedom Of Information Act ("FOIA") requests it made to the Internal

Revenue Service. Settlement, ¶3.2. These common issues of fact and

identical legal claim under the TCPA are sufficient to show commonality

here. Moreover, Plaintiff and settlement class members all suffered the same injury – they received an unsolicited telephone call to their cellular phones in violation of the TCPA. In *Reliable Money Order, Inc., v McKnight Sales Co., Inc.*, 218 F.R.D. 327, 332-33 (E.D. Wis. 2012), the Court certified a TCPA class in the litigation context, finding:

> The class in this action asserts the same injury: faxes sent to the potential class members in violation of the TCPA. The events surrounding the transmission of each of the faxes are identical. Additionally, determining whether the defendant violated the TCPA in relation to one plaintiff will likely answer whether the defendant violate the TCPA with regard to the remaining 3,313 members of the class. There is a possibility of individual defenses, such as a prior existing business relationship or prior express permission. But generally, the answer to the common question will resolve the class claims. Thus, the court finds that the plaintiff has established commonality.

Likewise, in *Bridgeview Heath Care Center Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011), the Northern District of Illinois certified a contested TCPA class, explaining that the same evidence concerning the defendant's advertising campaign applied to the plaintiff's class as well as the claims of the class members. In *Bridgeview*, like this case, the plaintiff had an expert analyze fax logs obtained in discovery to show the persons to whom the defendant sent an unsolicited fax. *Id*. The *Bridgeview* Court found that the case involved common factual questions about the defendant's facsimile campaign and common legal

questions under the TCPA. *Id*. at *4. The settlement class here is based on substantially similar circumstances present in *Reliable Money* and *Bridgeview* and satisfies the commonality requirement.

### c. Mr. Martin's Experience and Claims are Typical of the Settlement Class

Typicality exists where the claim involves the same "event, practice or course of conduct that gives rise to the claim of the other class members, and if the claims are based on the same legal theory." *Parker v. Risk Management Alternatives, Inc*., 206 F.R.D. 211, 213 (N.D. Ill. 2002); *see also*, Fed.R.Civ.P. 23(a)(3). "Typicality is established when there is a 'sufficient relationship . . . between the injury to the named plaintiff and the conduct affecting the class,' and the claims of the named plaintiff and those of the class 'are based on the same legal theory.'" Newberg, §3.13.

For virtually the identical reasons discussed in the preceding section, this element is also met. The Plaintiff has one or more claims that are typical of those of the settlement class members. Like those of settlement class members, the Plaintiff's TCPA claim arises out of the same conduct in which CCH allegedly engaged. The Plaintiff and Settlement Class Members were all affected in the same way by CCH's conduct, as described by the class definition.

### d. Mr. Martin and Plaintiff's Counsel are Adequate Representatives

Adequacy requires the representative of a class to provide fair and adequate representation of the class. Fed. R. Civ. P. 23(a)(4). Courts in the Northern District of Illinois have broken this requirement down into three elements: (1) the representative cannot have interests antagonistic to the class; (2) the representative must have a sufficient interest in the outcome of the litigation; and (3) counsel for the representative must have appropriate experience, qualifications, and competency. *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998); *Gammon v. GC Servs. Ltd. P'ship.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995).

Here, the Plaintiff has no interests that are antagonistic to or in conflict with the settlement class members he seeks to represent and his alleged injuries are identical to those suffered by class members. *See*, *Amchem Products v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2251, 138 L.Ed.2d 689 (1997) (courts look simply at whether the representatives' interests are in any way antagonistic to or in conflict with those of the class members). In addition, it is undisputed that Plaintiff's counsel are active practitioners with substantial experience in consumer law and class action litigation. *E.g.*, Burke Decl., ¶¶1-7; Kavanagh Decl., ¶¶2-7. The requirements of Fed. R. Civ. P. 23(a) are therefore met.

### B.     Fed. R. Civ. P. 23(b)(3) Factors

To determine whether the action meets 23(b)(3)'s requirements the Court must consider: (1) the interest of the individual class members in controlling the litigation; (2) the extent and nature of any pending litigation involving the same matters; (3) the desirability of concentrating the litigation of all the members' claims in the forum in which the class action was commenced; and (4) the management difficulties that may be encountered in a class action. *Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493, at *16 (N.D. Ill. Oct. 19, 2001). As an initial matter, the difficulties of managing a class action are vitiated by this Settlement. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620, *quoted in*, *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 280 F.R.D. 364, 385 (N.D. Ill. 2011); *see also*, *Am. Int'l Group, Inc.*, at *4, *quoting Amchem*, at 521 U.S. 622 ("settlement is a factor in the calculus" in determining whether certification is proper). A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural

fairness or bringing about other undesirable results." *Amchem*, at 521 U.S. 615.

In this case the aggregate claims of the class are comprised of calculable and limited actual damages in amounts that make it uneconomic for individuals to pursue these claims on their own. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (a class action is the superior method of proceeding when it allows the plaintiffs to pool claims that would be uneconomical to litigate individually). It is thus unlikely that individuals would invest the time and expense necessary to seek relief through litigation.

In determining the best available method for resolving a dispute, the Court may consider the "… improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture*, 503 F.2d 1161 1164-65 (7th Cir. 1974). In fact, in this case many class members may be unaware of their claims or may not understand their rights. *See*, *Henry v. Cash Today, Inc*. 199 F.R.D. 566, 574 (S.D. Tex. 2000). Many others may not have access to competent counsel.

Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, ... [since s]uch proof obviates the need to examine each class member's individual position." *Golon v. Ohio Sav. Bank*, 98 C 7430, 1999 WL 965593, at *4

(N.D. Ill. Oct. 15, 1999). The predominance element has clearly been met here because the claims of the class members, the circumstances under which these claims arise, and the method of proving damages are identical.

## V.    CONCLUSION

The proposed class action settlement is fair, reasonable, and adequate. For the foregoing reasons, Plaintiff respectfully requests that the Court approve the Settlement on a preliminary basis so that notice may be sent apprising settlement class members of their rights. Plaintiff further requests that the Court confer with the parties to set a hearing for final approval of the Settlement and to set appropriate deadlines for various settlement requirements.

Respectfully submitted,

*/s/ Alexander H. Burke*
Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729   5288
(312) 729   5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

*/s/ Gary Klein*
Gary Klein (*admitted pro hac vice*)
Shennan Kavanagh (*admitted pro hac vice*)
Klein Kavanagh Costello, LLP
85 Merrimac Street, 4th Floor
Boston, MA 02114

(617) 357-5500
(617) 357-5030 (fax)
klein@kkcllp.com
kavanagh@kkcllp.com
www.kkcllp.com

DATED:     October 15, 2012